IN THE UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ST. CROIX CHIPPEWA INDIANS
OF WISCONSIN
24663 Angeline Avenue,
Webster, Wisconsin 94893

                 Plaintiff,

       v.

DIRK KEMPTHORNE
in his official capacity as SECRETARY OF
INTERIOR
U.S. Department of the Interior
1849 C Street, NW
Room 6156
Washington, DC  20240

and

CARL J. ARTMAN
in his official capacity as ASSISTANT
SECRETARY – INDIAN AFFAIRS
U.S. Department of the Interior
1849 C Street, N.W., Room 4160
Washington, D.C.  20240

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF

## COMPLAINT

The Plaintiff, the St. Croix Chippewa Indians of Wisconsin ("The St. Croix Tribe"), files

this Complaint against the Defendants, Secretary of the Interior Dirk Kempthorne and Assistant

Secretary – Indian Affairs, Carl J. Artman (collectively, the "Defendants") and state and allege

as follows:

# INTRODUCTION

1.      This is an action brought by The St. Croix Tribe, a federally-recognized Chippewa Tribe, located in remote areas of northern Wisconsin.  The St. Croix Tribe, together with the Bad River Band of Lake Superior Chippewa Indians (collectively, the "Tribes) for the past six years have diligently pursued the approval by the Bureau of Indian Affairs ("BIA") to establish a casino in Beloit, Wisconsin.

2.      The St. Croix Tribe, whose reservation lands are located in remote areas of Wisconsin, faces significant challenges to economic development and diversification.  It currently has two casinos (located on Tribal lands).  They produce insufficient revenues to fund badly-needed tribal needs.  The St. Croix Tribe has significant unemployment and a substantial percentage of its employed members earn wages which are below the poverty level.

3.      The St. Croix Tribe's ability to accumulate the resources to meet their substantial unmet needs, to obtain the capital for further economic development, to increase employment for tribal members, and to decrease its dependence on funding from the federal government, is largely dependant on the approval of the Beloit Casino Project.  This would be a large destination resort expected to attract several million visitors a year, principally from the densely populated greater Chicagoland area.  In addition to its casino, the project will include a 500-room hotel, several restaurants, a conference center, a theater and a water park.  The general region anticipates that the casino will generate significant revenues for a wide variety of service industries in the area.  The Beloit Casino Project will involve construction costs of at least $300 million.  Once built, it will provide some 3,000 full-time jobs.  This project dominates the local scene in terms of its future economic planning and hopes for its economic revitalization.  Local

elected officials have repeatedly written BIA officials, as well as attending numerous meetings in

Washington, D.C. with BIA representatives, to express their strong and unequivocal support for

the project.

4.      The Beloit Casino Project was originally the idea of the City of Beloit itself as a

viable course by which it could restore the local economy which had seriously declined due to

the loss of thousands of jobs due to factory closings.  The Beloit Casino Project has been

supported unanimously for many years by resolutions of the Beloit City Council.  It has also

received favorable resolutions of support from Rock County (where Beloit is located) as well as

from other nearby townships.

5.      The Tribes have ancestral and historical ties to the Beloit region.  The Tribes'

ancestors resided in the Beloit area and were parties to peace treaties ceding lands in this area to

the United States.

6.      The Tribes jointly filed in July 2001 an application with the BIA Regional Office

to take 26 acres of land into trust for gaming purposes in Beloit, Wisconsin.  To date, the Tribes

have collectively spent in excess of $2 million in pursuit of the approval of this project, including

consultant costs, legal fees and option payments made to a local developer for the would-be trust

land and adjoining lands necessary for the casino project.  The St. Croix Tribe itself has, to date,

spent well in excess of $1 million on this project.

7.      Throughout the process of seeking approval from the BIA, the Tribes have

incurred these significant expenses without the financial assistance of an outside

developer/promoter.  The Tribes have taken inordinate measures to ensure that they were fully

complying with all of the BIA's exacting requirements for the approval of the Beloit Casino

Project, including the significant requirements imposed by the National Environmental Policy Act ("NEPA") and the National Historic Preservation Act. This included the substantial expenditure of time and financial resources that went into the preparation of an Environmental Assessment ("EA"). After the completion of the EA, the Tribes were informed by the Department of Justice that it would require an Environmental Impact Statement ("EIS") to be prepared for all off-reservation casino applications. (Otherwise, the Department of Justice indicated it would not defend any lawsuit brought to challenge a Finding of No Significant Impact ("FONSI") issued by the BIA based on an EA.) That, in turn, required the Tribes to start all over again (beginning with the scoping process required for an EIS). That took an additional three years of time, effort and expense. Tribal representatives were informed several weeks ago that the draft filed by the EIS had been approved by the Solicitor's Office of the BIA.

8.      In order to be assured that the Tribes correctly understood the procedures which would be required in order to gain approval for their project, Tribal leaders, staff members and attorneys have had numerous meetings with representatives of the BIA in both its Regional Office located in St. Paul, Minnesota as well as with senior officials of the BIA in its Central Office in Washington, D.C. During these meetings, numerous issues have been addressed and resolved. During the six years of discussions with BIA representatives in the Regional Office, it was continuously represented by the BIA to Tribal representatives that the Section 20 ("IGRA") decision would be made first by the Central Office; and if the Governor concurred, the BIA would then proceed to make the fee-to-trust determination under 25 C.F.R. Part 151 ("Part 151").

9.      The Tribes' application was forwarded (with a favorable recommendation) by the Regional Office to the Central Office in January 2007. From that moment until August 2007, Tribal leaders and their representatives were informed by BIA officials in meetings in the Central

Office that the two-part determination would be made before the Part 151 determination as had

been the practice followed by the BIA. However, in August 2007, the Tribes were first notified

that this process would be reversed and that the Part 151 decision would be made before the

two-part determination required under IGRA. This represented a 100% reversal of the decision-

making process during both the Clinton Administration and, thereafter, the Bush Administration.

10.     Despite all of this, it has recently become apparent that the efforts of the Tribes

and elected officials in Beloit (and the surrounding region) to have the BIA approve this project

will, in all probability, be a futility. This is strictly due, on information and belief, to Secretary

Dirk Kempthorne's personal views opposing off-reservation gaming for reasons which do not

find a basis in either the standards set out by IGRA or for taking fee land into trust pursuant to

Part 151. Secretary Kempthorne's personal animus towards off-reservation gaming is set forth in

a recent Complaint filed in this Court. See St. Regis Mohawk Tribe v. Dirk Kempthorne (Civil

Action No. 07-CV-01958-RWR).

11.     On information and belief, Secretary Kempthorne's negative personal views

toward off-reservation gaming have led the BIA to craft an artifice by which it can plausibly

proceed to deny a number of pending off-reservation casino applications, including Beloit.

12.     The Department of the Interior ("DOI") is unlawfully attempting to carry this out

by making the Part 151 determination first. Upon information and belief, it is doing so because

it is fully aware that if the two-part determination of IGRA were made first, there would be no

realistic way to deny the Beloit application (and a number of other similar pending applications

awaiting decision) in that the Tribal applications fully meet the requirements of IGRA's two-part

determination. Further, on information and belief, senior officials of the DOI have concluded

that once a favorable two-part determination is made (assuming concurrence by the Governor), this would leave no room for the BIA to deny the applications under Part 151 and have any realistic belief that this decision would be upheld by a Federal Court. In other words, the IGRA determinations would effectively require the BIA to make favorable findings under Part 151 on a number of the important issues presented under the regulations such as whether the trust land is needed and whether the trust acquisition would promote self-determination and economic development. 25 C.F.R. § 151.3(a)(3). For these reasons, on information and belief, the DOI has decided to make the Part 151 determination <u>first</u> because it will leave it free to deny a fee-to-trust gaming application under the "self-determination," "economic development," "need" and other factors outlined in Part 151. As set forth below, by adopting this new procedure, the DOI has completely ignored the requirements of the Administrative Procedure Act ("APA") as well as Congressional intent set out in IGRA.

13.    The Tribes seek Declaratory and Injunctive Relief from this Honorable Court in order to prevent the DOI from denying the Beloit fee-to-trust and similar applications by using its newly adopted unlawful procedure to make the Part 151 decision prior to the two-part IGRA determinations. Unless Injunctive relief is entered, on information and belief, the DOI will proceed in the next several weeks to deny the Beloit application as well as a number of other pending off-reservation casino applications submitted by other Tribes.

## Jurisdiction and Venue

14.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1362 and 5 U.S.C. §§ 701-706. This Court has authority to issue Declaratory and Injunctive Relief pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. §§ 555(b) and 701-706.

15.     Venue is proper in this District Court pursuant to 28 U.S.C. § 1391(e) because this is an action in which the Defendants are officers and employees of the United States acting in their official capacities, and a substantial part of the events or omissions giving rise to the claims herein have occurred or will occur in this judicial district.

## Parties

16.     The St. Croix Tribe is a federally recognized Indian tribe whose reservation is located in Burnett, Polk and Barron counties in northwestern Wisconsin.  The Tribe qualifies under IGRA, 25 U.S.C. § 2701 *et seq.* to operate class III gaming in the proposed Beloit Casino.

17.     Dirk Kempthorne is the Secretary of the Interior and is charged by law with carrying out the duties and responsibilities of the United States as a trustee for the Tribes.  In his official capacity, Secretary Kempthorne is authorized to make the required determinations under IGRA, § 2719(b)(1)(A), that the proposed Beloit Casino is in the best interest of the Tribes and is not detrimental to the surrounding community.  Thereafter, if the Governor concurs in a favorable determination, Secretary Kempthorne is authorized to acquire the proposed land in trust for the Beloit Casino Project in the name of the United States and to hold such land in trust for the Tribes, and to take all necessary action on the Tribes' request to acquire such lands.

18.     Carl J. Artman is the Assistant Secretary – Indian Affairs and is charged by law with carrying out the duties and responsibilities of the United States as a trustee for the Tribes.  In his official capacity, Assistant Secretary Artman is authorized to make the required determinations under IGRA, § 2719(b)(1)(A), that the proposed Beloit Casino is in the best interests of the Tribes and is not detrimental to the surrounding community.  Thereafter, if the Governor concurs in this determination, Secretary Kempthorne is authorized to acquire the

proposed land in trust for the Beloit Casino Project in the name of the United States and to hold

such land in trust for the Tribes, and to take all necessary action on the Tribes' request to acquire

such lands.

## BACKGROUND

### A. Statutory and Regulatory Requirements

19.     Section 5 of the Indian Reorganization Act, 25 U.S.C. § 465, enacted in 1934, and

its implementing regulations at 25 C.F.R. Part 151 (promulgated in 1980) authorize the Secretary

of the Interior to acquire lands for Indian tribes in the name of the United States to hold such

lands in trust for Indian tribes and to take action on a tribe's request to acquire such lands.  This

statute and the Part 151 regulations apply to all tribal requests to take land into trust for any

purpose.

20.     In 1988, Congress enacted the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701

*et seq.* ("IGRA").  Congress intended IGRA "to provide a statutory basis for the operation of

gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency,

and strong tribal governments[,] ... to ensure that the Indian tribe is the primary beneficiary of

the gaming operation, . . . and to protect such gaming as a means of generating tribal revenue."

25 U.S.C. § 2702.  The Senate Committee on Indian Affairs Report, in describing IGRA's

exceptions, made it clear that they were meant to set "forth policies with respect to lands

acquired in trust after [IGRA's] enactment.  S. Rep. No. 100-446, at 20 (1988), *reprinted in* 1988

U.S.C.C.A.N. 3071, 3090.

21.     Under Section 20 of IGRA, 25 U.S.C. § 2701, tribes are prohibited from engaging

in any gaming on land acquired after the date of IGRA's enactment, October 17, 1988, unless

certain exceptions are satisfied. The exception, pertinent herein, is § 2719(b)(1)(A), which

provides that the prohibition of gaming on post-1988 land does not apply when:

> the Secretary, after consultation with the Indian tribe and
> appropriate State and local officials, including officials of other
> nearby Indian tribes, determines that a gaming establishment on
> newly acquired lands [1] would be in the best interest of the Tribe
> and its members, and [2] would not be detrimental to the
> surrounding community, but only if the Governor of the State in
> which the gaming activity is to be conducted concurs in the
> Secretary's determination …

This exception is commonly referred to as the "two-part determination."

22.    Thus, Section 5 of the Indian Reorganization Act, 25 U.S.C. § 465 (and its

regulations falling under Part 151) and IGRA, § 2719 (b)(1)(A), both apply to the acquisition of

trust lands for gaming purposes. Section 5 of the Indian Reorganization Act is very general in

nature in that it, together with the Part 151 regulations, apply to the determination as to whether

fee land will be taken into trust for any purpose, whether that be for grazing, Indian housing, a

grocery store or a casino. They authorize the Secretary of the Interior to acquire lands that are

either "within or without existing reservations," for Indian tribes in the name of the United States

to hold those lands in trust for Indian tribes. The criteria governing when land will be taken into

trust for an Indian tribe under this statute were promulgated by Interior in regulations at 25

C.F.R. Part 151. The criteria relevant to this case appear at 25 C.F.R., §§ 151.3, 151.10 and

151.11.

23.    25 C.F.R., § 151.3, provides, in pertinent part, that:

> land not held in trust … may only be acquired for an individual
> Indian or a tribe in trust status when such acquisition is
> authorized by an act of Congress. No acquisition of land in trust
> status … shall be valid unless the acquisition is approved by the
> Secretary.
>     (a)  Subject to the provisions contained in the acts of
> Congress which authorize land acquisitions, land may be acquired
> for a tribe in trust status:

\*     \*     \*

(3)  When the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing.

24.     25 C.F.R., § 151.10, provides that for on-reservation trust acquisitions:

The Secretary will consider the following criteria in evaluating requests for the acquisition of land in trust status when the land is located within or contiguous to an Indian reservation, and the acquisition is not mandated:
(a)  The existence of statutory authority for the acquisition and any limitations contained in such authority;
(b)  The need of the individual Indian or the tribe for additional land;
(c)  The purposes for which the land will be used;
(d)  [*provision relating to acquisition for individual Indian, not applicable to tribal application*];
(e)  If the land to be acquired is in unrestricted fee status, the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls;
(f)  Jurisdictional problems and potential conflicts of land use which may arise; and
(g)  If the land to be acquired is in fee status, whether the Bureau of Indian Affairs is equipped to discharge the additional responsibilities resulting from the acquisition of the land in trust status.
(h)  The extent to which the applicant has provided information that allows the Secretary to comply with 516 DM 6, appendix 4, National Environmental Policy Act Revised Implementing Procedures, and 602 DM 2, Land Acquisitions: Hazardous Substances Determinations.

25.     25 C.F.R, § 151.11, which governs off-reservation trust acquisitions, provides, in

pertinent part, that:

The Secretary shall consider the following requirements in evaluating tribal requests for the acquisition of lands in trust status, when the land is located outside of and noncontiguous to the tribe's reservation, and the acquisition is not mandated:
(a)  The criteria listed in Sect. 151.10(a) through (c) and (e) through (h);

(b) The location of the land relative to state boundaries, and its distance from the boundaries of the tribe's reservation, shall be considered as follows: as the distance between the tribe's reservation and the land to be acquired increases, the Secretary shall give greater scrutiny to the tribe's justification of anticipated benefits from the acquisition.  The Secretary shall give greater weight to the concerns raised pursuant to paragraph (d) of this section.

(c) Where land is being acquired for business purposes, the tribe shall provide a plan which specifies the anticipated economic benefits associated with the proposed land.

(d) Contact with state and local governments pursuant to Sect. 151.10(e) and (f) shall be completed as follows:  Upon receipt of a tribe's written request to have lands taken in trust, the Secretary shall notify the state and local governments having regulatory jurisdiction over the land to be acquired.  The notice shall inform the state and local government that each will be given 30 days in which to provide written comment as to the acquisition's potential impacts on regulatory jurisdiction, real property taxes and special assessments.

### B. The Tribes' Application for Land To Be Taken Into Trust for Gaming Purposes in Beloit

26.    In July 2001, the Tribes submitted an application to the BIA's Regional Office in St. Paul, Minnesota for the Secretary of the Interior to acquire a 26-acre parcel in trust for gaming purposes in Beloit, Wisconsin.

27.    On January 8, 2007, Regional Director Terry Virden, wrote the Tribes' Chairmen, informing them that their application had been forwarded to the Central Office in Washington, D.C. with a favorable recommendation.  Almost immediately thereafter, Tribal leaders and representatives, together with elected officials from the Beloit area, met in Washington, D.C. with George Skibine, Director of the BIA's Indian Gaming Management Staff.  At that time, Mr. Skibine informed the numerous individuals present that the BIA would complete its staff review of the Tribes' application within sixty days.  However, after that meeting, it became apparent that the review process (other than for the ongoing review of the draft EIS) had

essentially become frozen in that it was clear that this application, and other similar applications, were not going to be favorably approved by virtue of Secretary Kempthorne's strong negative views towards off-reservation fee-to-trust gaming applications.  It was also apparent to the Tribes that Secretary Kempthorne's views found no basis in either IGRA or Part 151 and that he was nonetheless determined not to approve these applications, including Beloit, whether that meant making no decision at all during the remainder of his term as Secretary or crafting some artifice by which to deny the applications.  This reality, on information and belief, led to an informal freeze within the BIA of taking various interim steps in the decision-making process for pending off-reservation casino applications such as failing to take the necessary steps to permit Notices of Availability to be published in the *Federal Register* for draft or final EIS's.  This, in fact, was the subject of testimony and critical comments made by Senator Dorgan at a recent Oversight hearing of the Senate Indian Affairs Committee in which Assistant Secretary Artman appeared.

28.    After little or no progress was perceived by the Tribes and their representatives in the review of the Beloit application, the St. Croix Tribe's outside counsel, Robert M. Adler, wrote to Assistant Secretary Artman by letter dated July 13, 2007.  In that letter, he:  (a) requested (in view of the delay by the BIA in reviewing the application) that Assistant Secretary Artman inform him when the staff review of the application would be completed; and, (b) asked Assistant Secretary Artman to inform him whether rumors were accurate that the Part 151 determination would be made before the two-part IGRA determination.  Mr. Adler also expressed serious concerns about the use of Part 151 as the appropriate standards to be applied in making decisions to approve (or deny) off-reservation casino applications.  Mr. Adler pointed out that to do so would be contrary to Congressional intent.

29.    By letter dated August 21, 2007, a response was sent to Mr. Adler by George

Skibine, Acting Deputy Assistant Secretary-Policy and Economic Development.  Mr. Skibine

indicated that he had been asked to respond to Mr. Adler's letter of July 13, 2007.  This letter

proceeded to state, in pertinent part:

> We will make a determination on whether to take land into trust
> pursuant to Part 151 prior to making the two-part secretarial
> determination under IGRA.  We believe that it is the appropriate
> and logical sequence for the decision-making process.  We do not
> believe that this represents a policy change since the Department
> has never before specified a particular sequence from making the
> two decisions involved in this process.  (emphasis supplied).

On information and belief, the DOI has not informed other Indian tribes or the public at

large (whether through publication in the *Federal Register* or otherwise) that for fee-to-trust

off-reservation gaming applications pending in the Central Office, the DOI will make the Part

151 determination prior to the two-part determination under IGRA.

30.    Despite the representation in Mr. Skibine's letter of August 21, 2007 that "the

Department has never before specified a particular sequence from making the two decisions",

this has not actually been the case.  During the Clinton Administration and later during the Bush

Administration, it was made quite clear to the public that the two-part determination would be

made first.  And, in point of fact, during the past six years, the two-part determination has been

made prior to the Part 151 decision in at least two instances.

31.    In a letter dated December 21, 2006 from James E. Cason, the Associate Deputy

Secretary of the Department of the Interior, to the then-Governor of New York, George Pataki,

Mr. Cason wrote that he was providing him with an opportunity to concur in the two-part

determination which had been made on the St. Regis Mohawk application for an off-reservation

casino.  (A favorable decision under the two-part IGRA determination had previously been

made.)  Mr. Cason stated, in pertinent part:

> Your affirmative written concurrence is required before the
> Department will proceed with the consideration of the St. Regis
> Mohawk Tribe's application to take a portion of the Monticello
> Raceway in trust pursuant to the Department's land acquisition
> regulations in 25 U.S.C. Part 151.  Please be mindful that your
> concurrence and its two-part determination under Section
> 20(b)(1)(A) of IGRA should not be construed as a future
> commitment from the Department to take the land into trust.
> That decision has yet to be made and will be made only after
> consideration of all of the regulatory requirements contained in
> 25 C.F.R. Part 151.  (emphasis supplied).

32.    A similar letter was sent on February 20, 2001 to Wisconsin Governor Scott

McCallum by James H. McDivitt, Deputy Assistant Secretary-Indian Affairs (Management).

This letter pertained to the pending application of three Wisconsin Tribes to take land into trust

in Hudson, Wisconsin for the purpose of operating an off-reservation casino.  Deputy Assistant

Secretary McDivitt made it crystal clear that the two-part determination preceded the Part 151

determination which would be made if the Governor concurred in the IGRA decision.  Deputy

Assistant Secretary McDivitt wrote, in pertinent part:

> Pursuant to Section 20(b)(1)(A) of the IGRA, before the
> Hudson parcel can be acquired in trust for gaming purposes,
> I must determine that a gaming facility on the land would
> be in the best interests of the Tribes and their members and
> not detrimental to the surrounding community and then you
> must concur in that determination.  If you concur in this
> determination, the land can be acquired by the United States
> in trust for the Tribes for gaming purposes, provided all the
> requirements of the Bureau of Indian Affairs' land
> acquisition regulations found in 25 CFR Part 151 are met.
> (emphasis supplied).

Deputy Assistant Secretary McDivitt then stated:

> The Department has completed its review of the Tribes'
> application for the two-part determination.  Based on this
> application and its supporting documentation, including
> the comments received from the State and local
> government officials, and officials of nearby Indian tribes,

the Department has made findings of fact supporting the
two-part determination.

Mr. McDivitt proceeded to inform Governor McCallum that this letter was

being sent to him in order to seek his concurrence on the BIA's favorable two-part

determination.

33.     An action had been filed several years before by the three Tribal applicants for the

Hudson casino against then-Secretary of the Interior Babbitt. Sokaogon Chippewa Community,

et al. v. Bruce C. Babbitt, Secretary, in the United States District Court for the Western District

of Wisconsin (Civil Action No. 2000-1137). Significantly, in a brief filed on March 9, 2000 in

that action by the Department of Justice, in which attorneys in the Solicitor's Office of the

Department of the Interior appeared "Of Counsel," the Government stated, in pertinent part at 2-

3:

> Pursuant to guidelines issued on September 28, 1994, by the
> Acting Deputy Commission of the Indian Affairs, area offices of
> the Bureau of Indian Affairs must make the initial determination
> of whether an applicant tribe has satisfied their requirements of
> § 2719(b)(1)(A) (emphasis supplied).

The Government's brief further stated at 22:

> As explained above (p. 5), the Department may not exercise its
> authority under 25 U.S.C. Section 465 to acquire land in trust if it
> will be used for gaming purposes unless an applicant tribe can
> show that a proposed gaming operation will be in its best interest
> and that the operation will not be detrimental to the surrounding
> community. 25 U.S.C. § 2719(b)(1)(A).

34.     The District Court in the Hudson litigation issued a decision which clearly

recognized that the two-part determination was made by the BIA prior to the Part 151 decision.

Sokaogon Chippewa Community, et al. v. Bruce C. Babbitt, Secretary, et al., 929 F.Supp. 1165,

1169-1170 (USDC for the Western District of Wisconsin, 1996). The Court stated:

> A request to establish an off-reservation gaming facility must be approved by the Secretary of the Interior in accordance with the Indian Gaming Regulatory Act, which provided at 25 U.S.C. § 2719(b)(1)(A) that off-reservation is permitted only if [the two-part determination is favorably decided by the Secretary]. Even if the secretary finds that the proposed off-reservation gaming establishment is in the best interest of the applicant tribes and would not be detrimental to the surrounding community and the governor concurs in that determination, the secretary must decide whether to exercise his discretion to acquire the land in trust pursuant to the Indian Reorganization Act, 25 U.S.C. § 465.

35.    On September 21, 2007, Assistant Secretary Artman, issued a memorandum to all of the BIA Regional Directors.  In this memorandum, Assistant Secretary Artman explained that attached to it was a September 2007 revision of the "checklist for gaming acquisitions." Assistant Secretary Artman further stated that the newly revised checklist differed from the earlier (March 2005) checklist in only two respects.  The first, which is pertinent to the purposes herein, was that the first page of the checklist contained a modification "… to clarify that an application for two-part secretarial determination pursuant to § 20(b)(1)(A) of IGRA should not be processed until the land is already in trust or, if not in trust, until after the publication of a notice to take the land in trust has been published pursuant to 25 C.F.R. 151.12." (emphasis supplied).  Despite Assistant Secretary Artman's representation that this was a clarification, this was, in fact, a complete reversal of the practice followed by the BIA for many years.

### Count I
### Violation of 5 U.S.C. § 706(2)(A)

36.    The Plaintiff incorporates by reference Paragraphs 1 through 35 as if more fully set forth herein.

37.    The actions by the Defendants, both taken to date and likely to occur in the near future, are arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law.

They are or will be in violation of 5 U.S.C. § 706(2)(A).  Herein, the Defendants, in their respective positions, have caused the DOI to depart from its established practice of making the two-part determination prior to the Part 151 determination without the requisite notice to Indian Tribes or the public at large that the DOI had changed its practice and procedure.  The DOI likewise failed to offer a reasoned explanation supporting its change in procedure and practice. Finally, in deciding to make the Part 151 determination prior to the two-part determination, the DOI has acted contrary to Congressional intent expressed in IGRA and its legislative history and has further failed to publicly explain why the DOI is of the view that its new practice and procedure is consistent with Congressional intent.

### Count II
### Violation of 5 U.S.C. § 706 (2)(B)

38.    The Plaintiff incorporates by reference Paragraphs 1 through 37 as if more fully set forth herein.

39.    The Defendant's actions, both taken to date and likely to occur in the near future, in deciding to make the Part 151 determination prior to the two-part determination, and thereafter planning to deny the Tribes' off-reservation gaming application (and similar ones submitted by other Indian Tribes) constitute *ultra vires* actions which violate the Due Process clause of the United States Constitution; and, therefore, are contrary to The St. Croix Tribe's Constitutional rights, power or privilege and are therefore unlawful to 5 U.S.C. § 706(2)(B).

### Count III
### Violation of 5 U.S.C. § 706(2)(C)

40.    The Plaintiff incorporates by reference Paragraphs 1 through 39 as if more fully set forth herein.

41.    The Defendant's actions, both taken to date and likely to occur in the near future, in deciding to make the Part 151 determination prior to the two-part determination, and thereafter planning to deny the Tribes' off-reservation gaming application (and similar ones submitted by other Indian Tribes) constitute *ultra vires* actions which are in excess of the agency's statutory jurisdiction, authority or limitations, or short of statutory right and are therefore unlawful pursuant to 5 U.S.C. § 706(2)(C).

### Count IV
### Violation of 5 U.S.C. § 706(2)(D)

42.    The Plaintiff incorporates by reference Paragraphs 1 through 41 as if more fully set forth herein.

43.    The Defendant's actions, both taken to date and likely to occur in the near future, in deciding to make the Part 151 determination prior to the two-part determination, and thereafter planning to deny the Tribes' off-reservation gaming application (and similar ones submitted by other Indian Tribes) constitute *ultra vires* actions which are without observance of procedure required by law and are therefore unlawful pursuant to 5 U.S.C. § 706(2)(D).

### Count V
### Violation of Trust Responsibilities

44.    The Plaintiff incorporates by reference Paragraphs 1 through 43 as if more fully set forth herein.

45.    The Defendant's actions, both taken to date and likely to occur in the near future, in deciding to make the Part 151 determination prior to the two-part determination, and thereafter planning to deny the Tribes' off-reservation gaming application (and similar ones submitted by other Indian Tribes) are violations of the trust responsibilities owed by the Defendants to Indian tribes.

## Count VI
### Declaratory Judgment (28 U.S.C. §§ 2201 and 2202)

46.    The Plaintiff incorporates by reference Paragraphs 1 through 45 as if more fully set forth herein.

47.    Upon hearing the merits, this Court should enter a Declaratory Judgment that the Department of the Interior's decision to make the Part 151 determination prior to the two-part determination under IGRA is invalid and unlawful.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Honorable Court:

1.    Enter a Temporary Restraining Order and a Preliminary Injunction, pending a decision on the merits, that enjoins the Defendants and those persons in active concert or participation with them receive actual notice of this Order by personal service or otherwise:

(a)    implementing or otherwise carrying out the Department of Interior's recently announced policy and procedure that it will make the Part 151 determination prior to the two-part determination under IGRA (25 U.S.C. § 2719(b)(1)(A)) with respect to Plaintiff and the Bad River Band's pending off-reservation fee-to-trust application for gaming purposes in Beloit,

Wisconsin, as well as with respect to pending off-reservation fee-to-trust applications for gaming

purposes submitted by other Indian tribes; and

(b)    making any decision or determination with respect to the Plaintiff and the Bad

River Band's pending application to take land into trust for gaming purposes in Beloit,

Wisconsin (as well as from making any decisions or determinations with respect to similar

off-reservation applications filed by other Indian tribes to take land into trust for gaming

purposes) unless it first makes the required two-part determinations appearing in 25 U.S.C.

§ 2719(b)(1)(A).

2.    Upon hearing the merits, enter a Declaratory Judgment that the Department of the

Interior's decision to make the Part 151 determination prior to the two-part determination under

IGRA is invalid and unlawful; and, enter a Permanent Injunction which prohibits the Defendants,

or anyone working with or associated with them, from implementing or otherwise carrying out

this decision, by way of making any decisions or determinations on fee-to-trust applications, for

either the pending Beloit fee-to-trust application or other similar off-reservation fee-to-trust

applications for gaming purposes submitted by other tribes.

3.    Award the Plaintiff its cost and expenses, including reasonable attorney's fees;

and

4.    Award such other and further relief as is just and proper.

Respectfully submitted,

Robert M. Adler, Bar #62950
Gerald H. Yamada, Bar #194092
O'CONNOR & HANNAN, L.L.P.
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
(202) 887-1400
Fax:  202-887-6186
Radler@oconnorhannan.com
Gyamada@oconnorhannan.com

*Attorneys for the St. Croix Chippewa
Indians of Wisconsin*

Of Counsel:
Andrew Adams, III
St. Croix Chippewa Indians of Wisconsin
24663 Angeline Avenue
Webster, WI 54893

Dated:  December 7, 2007

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN<br>24663 Angeline Way<br>Webster, Wisconsin 94893 | DIRK KEMPTHORNE in his official capacity as SECRETARY OF INTERIOR<br>U.S. Department of Interior, 1849 C St., N.W., Room 6156, Washington, D.C. 20240<br><br>CARL J. ARTMAN in his official capacity as ASSISTANT SECRETARY<br>U.S. Department of Interior, 1849 C St., N.W., Room 4160, Washington, D.C. 20240 |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br>Robert M. Adler<br>O'Connor & Hannan, LLP<br>1666 K Street, N.W., Ste. 500<br>Washington, D.C.  20006 | ATTORNEYS (IF KNOWN) |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☒ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)**        OR        **○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC  7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
Administrative Procedure Act, 5 U.S.C. §702; Declaratory Judgment Act, 28 U.S.C. §2201 and §2202. Taking actions under an unlawful procedure.

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint    JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE  12/7/07    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.