**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN, | ) ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| *v.* | )  Civ. No. 1:07-cv-02210-RJL |
| | ) |
| DIRK KEMPTHORNE, et al., | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## FEDERAL DEFENDANTS' MOTION TO DISMISS

Defendants Dirk Kempthorne, in his official capacity as Secretary of the Interior, and

Carl J. Artman, in his official capacity as Assistant Secretary – Indian Affairs, respectfully move

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), to dismiss the Complaint for

Declaratory and Injunctive Relief (Doc. No. 1) filed December 7, 2007, by the St. Croix

Chippewa Indians of Wisconsin (Plaintiff) for lack of subject matter jurisdiction and failure to

state a claim upon which relief can be granted.  At this time, Plaintiff does not suffer any

requisite injury under the U.S. Constitution's Article III case and controversy requirement, and

has failed to identify a final agency action as required to waive sovereign immunity under the

Administrative Procedures Act, 5 U.S.C. § 500, et seq.  Plaintiff's claims are, thus, not ripe for

judicial review and Plaintiff has no standing to assert its claims before this Court.  Dismissal

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is, therefore, appropriate.

Respectfully submitted this 21st day of December, 2007.

RONALD J. TENPAS
Assistant Attorney General

_____/s/ Sara E. Culley_____
SARA E. CULLEY  (KS #20898)
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Fax: (202) 305-0267
Email: sara.culley@usdoj.gov

_____/s/ Kristofor R. Swanson_____
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: 202-305-0248
Fax: 202-305-0506
Email: kristofor.swanson@usdoj.gov

*Attorneys for Federal Defendants*

Of Counsel:

Jonathan Damm
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, the **Federal Defendants' Motion to Dismiss** was filed with the United States District Court for the District of Columbia's electronic filing system, to which the following attorneys are registered to be noticed:

Robert M. Adler
radler@oconnorhannan.com

Gerald H. Yamada
gyamada@oconnorhannan.com


       */s/ Kristofor R. Swanson*       
Kristofor R. Swanson

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
THE ST. CROIX CHIPPEWA INDIANS   )
OF WISCONSIN,   )
   )
      *Plaintiff,*   )
   )
*v.*   )   Civ. No. 1:07-cv-02210-RJL
   )
DIRK KEMPTHORNE, et al.,   )
   )
      *Defendants.*   )
_____)

**FEDERAL DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN RESPONSE TO
PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

SARA E. CULLEY
KRISTOFOR R. SWANSON
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
*Attorneys for Federal Defendants*

Of Counsel:

Jonathan Damm
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs

Date:  December 21, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.      The Indian Reorganization Act (IRA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.     The Indian Gaming Regulatory Act (IGRA) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.      Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.     Preliminary Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.      Plaintiff's Complaint Should be Dismissed Because the Court Maintains
         No Subject Matter Jurisdiction and Plaintiff Has Failed to State a Claim . . . . . . 8

        A.     Plaintiff Cannot Establish The Requisite Waiver Of Sovereign
             Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.     Plaintiff Lacks Standing Because It Has Not Been Injured . . . . . . . . . . 12

        C.     Plaintiff's Claims Are Not Ripe for Judicial Review . . . . . . . . . . . . . . . 15

    II.     Plaintiff Fails to Meet The Standards For A Preliminary Injunction . . . . . . . . 16

        A.     Plaintiff is Unlikely to Succeed on The Merits of Its Claims . . . . . . . . 17

            1.     Because There is No Law to Apply, Any Decision to Make
                 a Part 151 Determination Prior to a Determination Under
                 § 2719(b)(1)(A) is Within the Agency's Discretion and Thus
                 Not an Action Subject to Judicial Review . . . . . . . . . . . . . . . . . . 17

       i.     Given its ministerial nature, any decision by Interior
to make Part 151 determinations prior to determinations
under § 2719(b)(1)(A) is not reviewable . . . . . . . . . . . . 18

      ii.    Given the absence of any statutory, regulatory, or
other binding norms, any decision by Interior to make
Part 151 determinations prior to determinations under
§ 2719(b)(1)(A) is not reviewable . . . . . . . . . . . . . . . . . 19

2.    Any BIA Decision to Make a Part 151 Determination Prior
to a Determination Under § 2917(b)(1)(A) is Within the
Agency's Discretion and Would Thus Be Neither Arbitrary
and Capricious Nor Contrary to Law. . . . . . . . . . . . . . . . . . . 23

3.    Any Interior Decision to a Make Part 151 Determination
Prior to a Determination Under § 2917(b)(1)(A) Would Not
Violate 5 U.S.C. §§ 706(2)(B)–(D) . . . . . . . . . . . . . . . . . . . . . 27

       i.     Any Interior decision would not violate due process
because Plaintiff maintains no property or liberty
interest in the order of decisionmaking . . . . . . . . . . . . . 28

      ii.    Any Interior decision is within the Agency's discretion
and thus not in excess of the Agency's statutory authority,
or without observance of procedures required by law. . . 29

4.    Any Interior Decision to Make a Part 151 Determination Prior
to a Determination Under § 2719(b)(1)(A) Would Not Violate
the United States' Trust Responsibilities Because the
Government Holds No Fiduciary Obligation. . . . . . . . . . . . . . 30

B.    Plaintiff Cannot Prove Irreparable Injury Will Occur . . . . . . . . . . . . . . . 31

C.    An Injunction Would Not Serve the Public Interest . . . . . . . . . . . . . . . 34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## TABLE OF AUTHORITIES

<u>**CASES**</u>

*Abbot Laboratories v. Gardner*, 387 U.S. 136, (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*American Library Association v. FCC*, 401 F.3d 489 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . 12

*American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532 (1970) . . . . . . . 18, 19, 25, 27

*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987) . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Montana
    Board of Oil and Gas*, 792 F.2d 782 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) . . . . . . . . . . . . . . . . . . . . . . 28

*Bennett v. Ridge*, 321 F. Supp. 2d 49 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Benvenuti v. Department of Defense,* 587 F. Supp. 348 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . 9

*Califano v. Sanders*, 430 U.S. 99 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Chiron Corp. v. National Transportation & Safety Board*, 198 F.3d 935 (D.C. Cir. 1999) . . . . 20

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Citizens Exposing Truth About Casinos v. Kempthorne*, 460 F.3d 460 (D.C. Cir. 2007) . . . . . . 22

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402 (1971) . . . . . . . . . . . . . . . . . . . . 17, 23

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*City of Tempe, Arizona v. F.A.A.*, 239 F. Supp. 2d 55 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . 32

*CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738 (D.C. Cir. 1995) . . . . . . 34

*Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*,
   527 U.S. 666 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Commodity Futures Trading Commission v. Nahas*, 738 F.2d 487 (D.C. Cir. 1984) . . . . . . . . . 6

*Community for Creative Non-Violence v. Pierce*, 814 F.2d 663 (D.C. Cir. 1987) . . . . . . . . . . 14

*Connecticut v. Massachusetts*, 282 U.S. 660 (1931) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Department of Energy v. Ohio*, 503 U.S.607 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Diamond Game Enterprises, Inc. v. Reno*, 230 F.3d 365 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . 4

*Doe v. Hampton*, 566 F.2d 265 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Drake v. Federal Aviation Administration*, 291 F.3d 59 (D.C. Cir. 2002) . . . . . . . . 17, 18, 19, 29

*F.T.C. v. Crowther*, 430 F.2d 510 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc*., 528 U.S. 167 (2000) . . . . . 12

*Fund for Animals v. Frizzell*, 530 F.2d 982 (D.C. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . 7, 31

*Fund for Animals v. Norton*, 472 F.3d 872 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fund for Animals v. Norton*, 374 F. Supp. 2d 91 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fund for Animals, Inc. v. U.S. Bureau of Land Management*,
   460 F.3d 13 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423 (1974) . . . . . . . . . . . . . 7

*Haase v. Sessions*, 835 F.2d 902 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Heckler v. Chaney*, 470 U.S. 821 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Independent Equipment Dealers Association v. EPA*, 372 F.3d 420 (D.C. Cir. 2004) . . . . . . . . 10

*Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan v. Ashcroft*,
   360 F. Supp. 2d 64 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lac Courte Oreilles Band of Lake Superior Chippewa Indians of
    Wisconsin v. United States*, 259 F. Supp. 2d 783, 791 (W.D. Wis. 2003) . . . . . . . . . . . 31

*Legal Assistance for Vietnamese Asylum Seekers v. Department of State*,
    104 F.3d 1353 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979) . . . . . . . 31

*Majorica, S.A. v. R.H Macy & Co.*, 762 F.2d 7 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . 32

*McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936) . . . . . . . . . . . . . 6

*Mistick PBT v. Chao*, 440 F.3d 503 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Motor Vehicles Manufacturers Association, v. State Farm Mutual Automobile
    Insurance Company*, 463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Mova Pharmaceutical. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) . . . . . . . . . . . . . . . 7, 8

*Natural Law Party of the United States of America v. Federal Election Commission*,
    111 F. Supp. 2d 33 (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*National Treasury Employees Union v. Yeutter*, 918 F.2d 968 (D.C. Cir. 1990) . . . . . . . . . . . 35

*National Wildlife Federation v. Burford*, 835 F.2d 305 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . 8

*Neitzke v. Williams*, 490 U.S. 319(1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NRDC v. SEC*, 606 F.2d 1031 (D.C. Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726 (1998) . . . . . . . . . . . . . . . . . . . 16

*Padula v. Webster*, 822 F.2d 97 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Pontchartrain Broadcasting Co., v. FCC*, 15 F.3d 183 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . 26

*Pueblo of Taos v. Andrus*, 475 F. Supp. 359 (D.D.C. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . 31

*Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284, 1298 (D.N.M. 1996). . . . . . . . . . . . . . . . . 31

*Quince Orchard Valley Citizens Association, Inc. v. Hodel,*
    872 F.2d 75 (4th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*Ramaprakash v. Federal Aviation Administration,* 346 F.3d 1121 (D.C. Cir. 2003) . . . . . . . . 26

*Rasul v. Bush,* 542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Renne v. Geary,* 501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sabella v. United States,* 863 F. Supp. 1 (D.D.C. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sandoz, Inc. v. Food and Drug Administration,* 439 F. Supp. 2d 26 (D.D.C. 2006) . . . . . . . . . 32

*Scholder v. United States,* 428 F.2d 1123 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Seminole Tribe of Fla. v. Florida,* 517 U.S. 44 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Shaffer v. Globe Protection,* 721 F.2d 1121 (7th Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Smith, Bucklin & Association. v. Sonntag,* 83 F.3d 476 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . 33

*Sokaogan Chippewa Community, v. Babbitt,* 929 F.Supp. 1165 (W.D. Wis. 1996) . . . . . . . . . . 21

*Sorono Laboratories, Inc. v. Shalala,* 158 F.3d 1313 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . 7, 8

*Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135 (8th Cir. 1974) . . . . . . . . . . . . . . 9

*Texas v. United States,* 523 U.S. 296 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568 (1985) . . . . . . . . . . . . . . . . . . . . . 15

*Tozzi v. U.S. Department of Health & Human Services,* 271 F.3d 301 (D.C. Cir. 2001) . . . 13,14

*United States v. Mitchell,* 445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Mitchell,* 463 U.S. 206 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Nordic Village, Inc.,* 503 U.S. 30 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Vitarelli v. Seaton,* 359 U.S. 535 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Vizenor v. Babbitt,* 927 F. Supp. 1193, 1201 (D. Minn. 1996).) . . . . . . . . . . . . . . . . . . . . . . . . 31

*Warth v. Seldin*, 422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Webster v. Doe*, 486 U.S. 592 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Weinberger v. Romero Barcelo*, 456 U.S. 305 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Wisconsin Gas Co. v. Fed. Energy Regulatory Commission,*
    758 F.2d 669 (D.C. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

*Yakus v. United States*, 321 U.S. 414 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Yale-New Haven Hospital v. Leavitt*, 470 F.3d 71 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . 26

## **STATUTES**

5 U.S.C. § 551 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 25

5 U.S.C. § 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 29

5 U.S.C. §§ 701-706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 10

5 U.S.C. § 701(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

5 U.S.C. § 702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

5 U.S.C. § 706(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

25 U.S.C. § 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 19, 30

25 U.S.C. §§ 2701–2721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. § 2703(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25 U.S.C. § 2719 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 30

25 U.S.C. § 2719(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

25 U.S.C. § 2719(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

vii

28 U.S.C § 1362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**<u>FEDERAL RULES</u>**

Federal Rule of Civil Procedure 12(b)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rule of Civil Procedure 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rule of Civil Procedure 65(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**<u>REGULATIONS</u>**

25 C.F.R. Part 151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

40 C.F.R. § 1501.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**<u>LEGISLATIVE MATERIALS</u>**

S. Rep. No. 100-466 at 8, 20 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 3071, 3090 . . . . . . . . 20

# INTRODUCTION

The St. Croix Chippewa Indians of Wisconsin (Plaintiff) filed the Complaint (Doc. No. 1) in the above-captioned action on December 7, 2007. Plaintiff simultaneously filed a Motion For a Preliminary Injunction (Doc. No. 4). In response to this motion, Federal Defendants Dirk Kempthorne, in his official capacity as Secretary of the Interior, and Carl J. Artman, in his official capacity as Assistant Secretary–Indian Affairs, respectfully request the Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and failure to state a claim. Additionally, Plaintiff's motion for a preliminary injunction should be dismissed, as Plaintiff has failed to show an irreparable injury or likelihood of success on the merits.

# FACTUAL BACKGROUND

The St. Croix Chippewa Indians of Wisconsin and the Bad River Band of Lake Superior Chippewa Indians (Tribes) have been included on the Secretary of the Interior's Federal Register list of federally-recognized tribes since 1979.[1] Federally-recognized tribes are entitled to

---

[1] Since their listing as Federally-recognized tribal entities in 1979, the St. Croix Chippewa Indians of Wisconsin and Bad River Band of Lake Superior Chippewa Indians have been eligible to receive services from the U.S. Bureau of Indian Affairs. *See* Indian Entities Recognized and Eligible to Receive Services From the United States Bureau of Indian Affairs, 72 Fed. Reg. 13648, 13648, 13650 (Mar. 22, 2007); 70 Fed. Reg. 71194, 71194, 71196 (Nov. 25, 2005); 68 Fed. Reg. 68180, 68180, 68182 (Decl. 5, 2003); 67 Fed. Reg. 46328, 46328, 46330 (Jul. 12, 2002); 65 Fed. Reg. 13298, 13299, 13301 (Mar. 13, 2000); 63 Fed. Reg. 71941, 71942, 71944 (Decl. 30, 1998); 62 Fed. Reg. 55270, 55271, 55273 (Oct. 23, 1997); 61 Fed. Reg. 58211, 58211, 58214 (Nov. 13, 1996); 60 Fed. Reg. 9250, 9251, 9253 (Feb. 16, 1995); 58 Fed Reg. 54364, 54366, 54368 (Oct. 21, 1993); 53 Fed. Reg. 52829, 52829, 52831 (Decl. 29, 1988); 51 Fed. Reg. 25115, 25115, 25117 (July 10, 1986); 50 Fed. Reg. 6055, 6055, 6057 (Feb. 13, 1985); 48 Fed. Reg. 56862, 56863, 56864 (Decl. 23, 1983); 47 Fed. Reg. 53130, 53131, 53133 (Nov. 24, 1982); 46 Fed. Reg. 35360, 35360, 35362 (July 8, 1981); 45 Fed. Reg. 27828, 27828, 27839 (April 24, 1980); 44 Fed. Reg. 7235, 7235, 7236 (Jan. 31, 1979).

petition the Secretary to have land taken into trust pursuant to the Indian Reorganization Act (IRA), 25 U.S.C. § 465.

On July 30, 2001, the Tribes submitted to the Midwest Regional Office of the Bureau of Indian Affairs (BIA) an application to take twenty-six acres of land ("Parcel" or "Beloit Parcel") in Beloit, Wisconsin, into federal trust. Pl.'s Compl. ¶ 6. Prior to submitting their application, the Tribes and the BIA engaged in government-to-government consultations regarding the Tribes' desire to develop a casino resort in Beloit on lands the United States would first acquire into trust. *See, e.g.,* 40 C.F.R. § 1501.2.

On January 9, 2007, the Office of Indian Gaming (OIG) received a copy of the Midwest Regional Director's findings and recommendations (dated January 8, 2007) regarding whether the Tribes' joint application to take the Beloit Parcel into trust for gaming complied with the requirements of 25 C.F.R. Part 151, which implements the Secretary's authority under 25 U.S.C. § 465, and 25 U.S.C. § 2719(b)(1)(A) of the Indian Gaming Regulatory Act (IGRA). Declaration of George Skibine ¶ 6 (attached as Defs.' Ex. 1.) (Skibine Decl.).

The Tribes propose to construct a gaming resort on the Beloit Parcel that will include a Class III gaming facility, a 100,000 square foot casino, a convention and entertainment center, numerous restaurants, a child-care facility, a teen video arcade, and a gift shop. The Parcel is located adjacent to and west of Interstate Highway 90 (I-90) in the southeast portion of Beloit, Wisconsin. OIG continues to review the application. Skibine Decl. ¶ 7.

## STATUTORY BACKGROUND

### I.    The Indian Reorganization Act (IRA)

Section 5 of the IRA authorizes the Secretary of the Interior (Secretary) to take lands into trust "for the purpose of providing land for Indians." 25 U.S.C. § 465. The Department of the Interior's ("Interior" or "Agency") regulations implementing § 5 are found at 25 C.F.R. Part 151. The regulations set forth the policies and procedures governing the Secretary's decision-making on tribal applications to have land transferred into trust. *See generally* 25 C.F.R. Part 151. The overarching policy provides that the Secretary may acquire land into trust "when the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing." § 151.3(a)(3).

The regulations distinguish between on-reservation acquisitions, § 151.10, and off-reservation acquisitions, § 151.11, and require consideration of, *inter alia*, the tribe's need for the land, the proposed uses, the impacts to State and political subdivision tax rolls, potential jurisdictional problems and conflicts over land use, the BIA's ability to discharge additional responsibilities attendant to Indian trust land, and compliance with the National Environmental Policy Act. § 151.10(b)-(d), (f)-(h). The regulations direct that "as the distance between the tribe's reservation and the land to be acquired increases, the Secretary shall give greater scrutiny to the tribe's justification of anticipated benefits from the acquisition." § 151.11(b).

A tribe seeking to have land taken into trust by the United States must first file a written request with the Secretary. § 151.9. Upon receiving such a request, the Secretary must notify the State and local governments with regulatory jurisdiction over the land in question so that

they may provide written comments on the potential impacts on jurisdiction, taxes, and assessments.  § 151.10

The Assistant Secretary-Indian Affairs holds delegated authority to review and discretionarily approve applications for off-reservation trust acquisitions for gaming.  The OIG makes a recommendation to the Assistant Secretary-Indian Affairs on whether the transaction complies with the requirements of IGRA and the land acquisition regulations in 25 C.F.R. Part 151.  The Regional Director also makes a recommendation as to whether the property should be accepted into trust.

If the Agency decides to accept a tribal fee-to-trust application, notice must be published in the Federal Register or in a newspaper of general circulation serving the affected area. § 151.12(b).  The notice must state the Secretary's intent to acquire title in the name of the United States no sooner than thirty days after the notice is published.  *Id.*  This notice requirement provides opportunity for legal challenge under the Administrative Procedures Act (APA), 5 U.S.C. §§ 701-706.  *Id.*

## II.     The Indian Gaming Regulatory Act (IGRA)

The Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721, was enacted in 1988 to "provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments."  § 2702(1); *see also Diamond Game Enters., Inc. v.  Reno*, 230 F.3d 365, 366-67 (D.C. Cir. 2000).  The Act applies only to federally recognized tribes, § 2703(5), which may conduct gaming only on

"Indian lands" within their jurisdiction.[2] § 2710(b)(1); § 2710(d)(3).[3]  The Act defines "Indian

lands" as:

> (A) all lands within the limits of any Indian reservation; and
> (B) any lands title to which is either held in trust by the United States for the
> benefit of any Indian tribe or individual or held by any Indian tribe or individual
> subject to restriction by the United States against alienation and over which an
> Indian tribe exercises governmental power.

§ 2703(4).

Section 2719(a) of IGRA bars gaming on property taken into trust after October 17,

1988.  There are, however, limited exceptions to that rule.  The pertinent exception in this case is

commonly referred to as the "two-part Secretarial determination."  The general prohibition of

gaming on lands acquired in trust by the Secretary after October 17, 1988, shall not apply when:

> [T]he Secretary, after consultation with the Indian tribe and appropriate State, and
> local officials, including officials of other nearby Indian tribes, determines that a
> gaming establishment on newly acquired lands would be in the best interest of the
> Indian tribe and its members, and would not be detrimental to the surrounding
> community, but only if the Governor of the State in which the gaming activity is
> to be conducted concurs in the Secretary's determination[.]

§ 2719(b)(1)(A).

---

[2] Under IGRA, gaming is divided into three classes.  Tribes have exclusive authority over Class I
social and traditional games with prizes of minimal value.  25 U.S.C. §§ 2703(6), 2710(a)(1).
Class II gaming, which includes bingo and certain non-banking card games, § 2703(7), can occur
if the State allows such gaming for other groups.  § 2710(b).  The Tribes and the National Indian
Gaming Commission (NIGC) share regulatory duties over Class II gaming.  § 2710(b).  Class III
gaming, which includes more traditional "casino" games, including slot machines, roulette,
poker, blackjack, can occur lawfully only pursuant to a tribal-State compact.  §§ 2703(8),
2710(d).  Regulatory and enforcement oversight of Class III gaming activities is also provided
by the NIGC.  §§ 2706(b), 2710(b).

[3] Some portions of 25 U.S.C. § 2710 have been held to be unconstitutional.  *See, e.g., Seminole
Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).

**STANDARD OF REVIEW**

I.      <u>**Motion to Dismiss**</u>

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim if the court

lacks subject matter jurisdiction over a claim.  A party seeking federal court jurisdiction bears

the burden of demonstrating that jurisdiction exists.  *McNutt v. Gen. Motors Acceptance Corp. of*

*Ind.*, 298 U.S. 178, 189 (1936); *Commodity Futures Trading Com'n v. Nahas*, 738 F.2d 487, 492

n.9 (D.C. Cir. 1984).  The Supreme Court presumes that federal courts lack jurisdiction unless

the contrary appears affirmatively from the record.  *See Dep't of Energy v. Ohio*, 503 U.S. 607,

615 (1992); *Renne v. Geary*, 501 U.S. 312, 316 (1991).  As courts of limited jurisdiction, federal

courts may only decide cases after the party asserting jurisdiction demonstrates that the dispute

falls within the court's Constitutional and statutory jurisdiction.  *Rasul v. Bush*, 542 U.S. 466,

489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)

(federal courts "possess only that power authorized by Constitution and statute")).  "[I]n

deciding a 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the

allegations in the complaint but may consider material outside of the pleadings in its effort to

determine whether the court has jurisdiction in the case."  *Bennett v. Ridge*, 321 F. Supp. 2d 49,

52 (D.D.C. 2004); *Haase v. Sessions*, 835 F.2d 902, 905–906 (D.D.C. 1987) (holding that a

court's consideration of materials outside the pleadings in deciding a 12(b)(1) motion does not

require that the court treat the motion as one for summary judgment).

Federal Rule of Civil Procedure 12(b)(6) also forms a basis for dismissal of a plaintiff's

claims.  Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of

law.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citing *Hishon v. King & Spalding*, 467 U.S.

-6-

69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41 (1957)).  "[I]f as a matter of law 'it is clear that no

relief could be granted under any set of facts that could be proved consistent with the

allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish

legal theory or on a close but ultimately unavailing one." *Neitzke*, 490 U.S. at 327 (quoting

*Hishon*, 467 U.S. at 73).  Thus, claims should be dismissed under Rule 12(b)(6) where "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his legal claim

which would entitle him to relief."  *Conley*, 355 U.S. at 45-46.

## II.    <u>Preliminary Injunction</u>

A preliminary injunction is an extraordinary remedy for which the plaintiff bears the

burden of proving the prerequisites by clear and convincing evidence.  *Granny Goose Foods,*

*Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 441 (1974); *Fund for Animals v. Frizzell*, 530 F.2d 982,

986 (D.C. Cir. 1976).

In order to sustain a motion for preliminary injunction pursuant to Federal Rule of Civil

Procedure 65(a), Plaintiffs bear the burden of proving four requisite factors are met.  *Granny*

*Goose Foods, Inc.*, 415 U.S. at 442-43; *Mova Pharms. Corp. v. Shalala*, 140 F.3d 1060, 1066

(D.C. Cir. 1998).  First, Plaintiffs must demonstrate a substantial likelihood of success on the

merits.  *Sorono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317 (D.C. Cir. 1998); *Mova Pharms.*, 140

F.3d at 1066.  Second, Plaintiffs must demonstrate that they will be irreparably injured if the

Court does not issue a preliminary injunction.  *Sorono Labs.*, 158 F.3d at 1317; *Mova Pharms.*,

140 F.3d at 1066.  Third, Plaintiffs must demonstrate that a preliminary injunction will not

substantially injure another party.  *Sorono Labs.*, 158 F.3d at 1317; *Mova Pharms.*, 140 F.3d at

1066.  This is a reflection of the fact that the Court is balancing the relative hardships of different

parties in determining whether to issue a preliminary injunction. *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305, 318-19 (D.C. Cir. 1987). Finally, Plaintiffs must demonstrate that a preliminary injunction would be in the public interest. *Sorono Labs.*, 158 F.3d at 1317-1318; *Mova Pharms.*, 140 F.3d at 1066.

## ARGUMENT

### I.     Plaintiff's Complaint Should be Dismissed Because the Court Maintains No Subject Matter Jurisdiction and Plaintiff Has Failed to State a Claim.

In this case, Plaintiff has not met its burden of establishing the requisite waiver of sovereign immunity. Plaintiff also lacks standing to pursue its claims. In addition, Plaintiff's claims are not yet ripe for review. This Court, therefore, lacks subject matter jurisdiction and Plaintiff's Complaint should accordingly be dismissed.

### A.     Plaintiff Cannot Establish The Requisite Waiver Of Sovereign Immunity.

The Administrative Procedures Act (APA) provides the only waiver of sovereign immunity available to Plaintiff for its challenge to the letter, dated August 21, 2007, from the Director of OIG to Plaintiff's counsel. Plaintiff's Memorandum of Points and Authorities at 6, 15-16 (arguing that the letter constitutes final agency action) (Pl.'s Mem.). Before the APA can be used as a basis for judicial review, Plaintiff bears the burden of identifying a final agency action taken by Defendants. Because the August 21, 2007, letter does not constitute final agency action, Plaintiff has not met the requisite burden.

It is elementary that "'[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting

*United States v. Sherwood*, 312 U.S. 584, 586 (1941)).  In determining when such consent is present, the Supreme Court has long held that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"  *Mitchell*, 445 U.S. at 538 (quoting *United States v. King*, 395 U.S. 1, 4 (1969)); *accord College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) and *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992).  Moreover, waivers of sovereign immunity must be narrowly construed in favor of the sovereign.  *Nordic Village, Inc.*, 503 U.S. at 34.

Plaintiff's Complaint cites 28 U.S.C § 1331 (federal question jurisdiction), 28 U.S.C § 1362 (civil actions brought by an Indian tribe), and 5 U.S.C. §§ 701-706 (APA).  Pl.'s Compl. ¶ 14.  Section § 1331, however, does not waive the United States' sovereign immunity.  *Benvenuti v. Dep't of Def.*, 587 F. Supp. 348, 352 (D.D.C. 1984).  Likewise, § 1362 does not provide a waiver of sovereign immunity.  *Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation v. Mont. Bd. of Oil and Gas*, 792 F.2d 782, 792 (9th Cir. 1986); *Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1140 (8th Cir. 1974) ("[T]here is nothing in 28 U.S.C. § 1362 to suggest that the United States intended to waive its own sovereign immunity by this enactment . . . ."); *Scholder v. United States*, 428 F.2d 1123, 1125 (9th Cir. 1970), *cert. denied,* 400 U.S. 942 (1970) (§ 1362 was not intended to waive the federal government's immunity from suit with respect to a matter related to Indian affairs).[4]  Thus, the APA, 5 U.S.C. §§ 701-706 provides the only potential waiver of sovereign immunity available to Plaintiff.

---

[4]*But see Pueblo of Taos v. Andrus*, 475 F. Supp. 359, 364 (D.D.C. 1979) (suggesting in *dictum* that § 1362 was not intended to waive sovereign immunity for declaratory and injunctive claims, but analyzing claims pursuant to the APA).

Courts are not authorized to review agency policy choices in the abstract.  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18-22 (D.C. Cir. 2006).  In the absence of a specific statutory review provision the APA provides a cause of action to "[a] person suffering legal wrong because of an *agency action*, or adversely affected or aggrieved by *agency action*." *Id.* at 18; *see also* 5 U.S.C. § 702 (emphasis added).  "Review under the APA is further limited to a '*final agency action'* for which there is no other adequate remedy in a court.'" *Fund for Animals*, 460 F.3d at 18 (quoting 5 U.S.C. §704) (emphasis added).  "Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Id.*  The APA defines an "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof."  5 U.S.C. § 551(13).  While this list is expansive, the D.C. Circuit has "long recognized that the term [agency action] is not so all-encompassing as to authorize [the court] to exercise judicial review over everything done by an administrative agency." *Fund for Animals*, 460 F.3d at 19; *see also Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 427 (D.C. Cir. 2004).  "Much of what an agency does is in anticipation of agency action." *Fund for Animals*, 460 F.3d at 19-20.  "Agencies prepare proposals, conduct studies, meet with Members of Congress and interested groups, and engage in a wide variety of activities that comprise the common business of managing government programs." *Id.*

Here, Plaintiff challenges the August 21, 2007, letter from the Director of OIG to Plaintiff's counsel.  Pl.'s Mem. at 6, 15-16 (arguing that the letter constitutes final agency action).  The letter, written in response to an inquiry from Plaintiff's counsel, states: "We will make a determination on whether to take land into trust pursuant to Part 151 prior to making the

two-part secretarial determination under IGRA." Pl.'s Mem. at 6. The August 21, 2007, letter, however, does not constitute final agency action. It does not "command anyone to do anything or to refrain from doing anything; [it does] not grant, withhold, or modify any formal legal license, power, or authority; [it does] not subject anyone to any civil or criminal liability; [it] create[s] no legal rights or obligations." *Fund for Animals*, 460 F.3d at 22 (citation omitted). The D.C. Circuit has consistently refused to review agency orders "that do[] not [themselves] adversely affect complainant[s] but only affect [their] rights adversely on the contingency of *future* administrative action." *Id*. (emphasis added) (citation omitted). *See also Lac Vieux Desert Band of Lake Superior Chippewa Indians of Michigan v. Ashcroft*, 360 F. Supp. 2d 64, 68 (D.D.C. 2004) (because advisory letters from the General Counsel of NIGC and a Department of Justice official did not constitute final agency action, the "Court lack[ed] jurisdiction to review the actions of the NIGC to date and to order pre-emptive declaratory and injunctive relief regarding possible enforcement action . . . ."); *Sabella v. United States*, 863 F. Supp. 1, 6 (D.D.C. 1994) (opinion letter of the National Oceanic Atmospheric Administration General Counsel not final agency action subject to review).

Moreover, the long-standing practice of the D.C. Circuit is "to require the complaining party to challenge the specific implementation of the broader agency policy." *Fund for Animals*, 460 F.3d at 22. Defendants have not yet issued a final decision regarding Plaintiff's application to take land into trust for gaming and, as such, Plaintiff's rights or obligations have not matured to the point at which *any* legal consequences will flow. Because Plaintiff cannot establish the requisite waiver of sovereign immunity, this Court lacks subject matter jurisdiction and the Complaint should be dismissed.

-11-

**B.    Plaintiff Lacks Standing Because It Has Not Been Injured.**

Plaintiff also lacks standing to pursue its claims.  Standing is a jurisdictional issue deriving from the requirement of a live case or controversy pursuant to Article III of the Constitution.  *Am. Library Ass'n v. F.C.C.*, 401 F.3d 489, 492 (D.C. Cir. 2005); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),* 528 U.S. 167, 180 (2000).  In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), the Supreme Court explained that "the irreducible constitutional minimum of standing contains three elements."  First, the plaintiff must have suffered an "injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical."  504 U.S. at 560 (quotations omitted); *see also Friends of the Earth*, 528 U.S. at 180-81 (2000).  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant.  *Lujan*, 504 U.S. at 560-61.  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  *Id.* at 561  As the Supreme Court noted in *Lujan*, the elements of standing are "not mere pleading requirements but rather an indispensable part of [Plaintiffs'] case . . . ."  *Id*. at 561.  "Standing is determined at the time the complaint is filed."  *Natural Law Party of the United States of Am. v. Fed. Election Comm'n*, 111 F. Supp. 2d 33, 40 (D.D.C. 2000).

Here, Plaintiff has failed to allege any injury that is more than speculative.  Plaintiff's allegations of injury are based on the prediction, rather than the certainty, that if a decision regarding its pending application is made pursuant to 25 C.F.R. Part 151 prior to making the two-part Secretarial determination pursuant to § 2719(b)(1)(A) of IGRA, it will be to Plaintiff's detriment.  Moreover, Plaintiff predicts that its application to take land into trust for gaming will

be denied in the near future.  Pl.'s Mem. at 25 (alleging certain financial injuries would occur if Plaintiff's application is denied).  As noted above, Plaintiff's application to take land into trust for gaming is still currently under review at the OIG.  Skibine Decl. ¶ 7.  Long-established Supreme Court precedent expressly requires a showing of harm that is actual, specific and concrete.  No such specificity can be derived from Plaintiff's conjectural allegations of harm regarding the possible outcome of the decision on the application.  The mere imminence of an Agency decision does not meet the requirement for actual injury.  Plaintiff has not alleged any facts in its Complaint sufficient to confer standing under Article III.  *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983); *Tozzi v. U.S. Dept. of Health & Human Servs.*, 271 F.3d 301, 307 (D.C. Cir. 2001) ("The plaintiff's allegations must not be purely speculative - the ultimate label for injuries too implausible to support standing.") (internal quotation omitted).  Therefore, Plaintiff fails the first prong of the standing test.

Plaintiff also fails the remaining two prongs of the standing test.  Plaintiff alleges that "[t]he denial of this application would mean the loss of approximately $1 million which the St. Croix Tribe has spent to date in its efforts to have a Beloit casino."  Pl.'s Mem. at 25.  Plaintiff further alleges it "would be deprived of the anticipated revenues from the Beloit casino, its planned hotel and other related Tribal-owned businesses."  *Id*.  Plaintiff, however, cannot satisfy the causation requirement because its allegations of financial injury are not traceable to the August 21, 2007, letter.  Such injuries are connected to Plaintiff's prediction that its application will be denied.  But this event has not occurred.  Moreover, the August 21, 2007, letter clearly did not address the merits of Plaintiff's application to take land into trust for gaming, nor did it make a final decision regarding Plaintiff's request.  *See* Pl.'s Ex. C.

-13-

Plaintiff also fails the third prong of the standing test. Plaintiff must offer more than mere speculation to support a finding of redressability. *Cmty. for Creative Non-Violence v. Pierce*, 814 F.2d 663, 669-70 (D.C. Cir. 1987). Plaintiff assumes that if Defendants make the two-part Secretarial determination under IGRA prior to making a decision pursuant to 25 C.F.R. Part 151, it would lead to a favorable decision on the Tribe's application. Plaintiff, however, provides little support for such an assumption. Moreover, both requirements must be satisfied before Plaintiff could construct and operate its planned gaming facility. A favorable two-part Secretarial determination alone does not necessitate the land be taken into trust under Part 151. The Part 151 regulations require separate analyses that may independently result in an unfavorable decision for the Tribe. In short, Plaintiff has not alleged actual, redressable injury that is causally connected to the August 21, 2007, letter. As such, Plaintiff lacks standing to bring this lawsuit and its Complaint should be dismissed.

Furthermore, a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Here, Plaintiff requests that Defendants be enjoined from "making any decisions or determinations with respect to similar off-reservation applications filed by other Indian tribes to take land intro trust for gaming" unless Defendants first make the two-part Secretarial determination under IGRA. Pl.'s Proposed Order 3 (Doc. No. 4-12). Plaintiff, however, offers nothing to establish that it has the ability to represent other Indian Tribes. Plaintiffs should not be permitted standing to seek relief on the behalf of other Indian Tribes without any evidence that they act in the interest of such Tribes.

-14-

C.    **Plaintiff's Claims Are Not Ripe for Judicial Review.**

Likewise, Plaintiff's suit is not ripe for review because the existence of the dispute itself hangs on future contingencies that may or may not occur. *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (claim not ripe where it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all")). The Supreme Court in *Abbott Laboratories v. Gardner*, explained that the "basic rationale" of the ripeness doctrine as applied to review of administrative action:

> [I]s to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also *to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.*

387 U.S. 136, 148-49 (1967) (emphasis added), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). Indeed, a claim is never ripe where the "possibility that further consideration [by the agency] will actually occur . . . is not theoretical, but real." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998).

As stated above, Plaintiff's application to take land into trust for gaming is currently under review at the OIG. Skibine Decl. ¶ 7. Despite this fact, Plaintiff seeks to involve the Court in speculation and ask for judicial intervention prior to the issuance of a final agency decision by Defendants. Furthermore, Plaintiffs' current suit contemplates that it will be dissatisfied with the result of any future actions taken by Defendants in regard to its application. At this juncture, no one can predict if these events will actually occur. Accordingly, Plaintiff's suit is premised upon "contingent future events that may not occur as anticipated, or indeed may

not occur at all" and should be dismissed. *Texas*, 523 U.S. at 300 (internal quotation omitted).

In any event, Plaintiff will experience no hardship if judicial review of its claims is delayed.

Once a decision is issued regarding Plaintiff's application to take land into trust for gaming, it

will have ample opportunity to seek judicial review under the APA. Plaintiff's claims are,

therefore, not yet ripe for review. Additionally, Plaintiff fails to meet the standing requirements

of Article II, or show that sovereign immunity has been waived. Plaintiff's claims should

therefore be dismissed.

## II.     Plaintiff Fails to Meet The Standards For A Preliminary Injunction.

Plaintiff also fails to meet the requisite standards to obtain the extraordinary relief of a

preliminary injunction. Thus, Plaintiff's motion for a preliminary injunction should be denied.

*See Fund for Animals v. Norton*, 374 F. Supp. 2d 91, 98 (D.D.C. 2005), *aff'd,* 472 F.3d 872

(D.C. Cir. 2006), ("[B]ecause interim injunctive relief is an extraordinary form of judicial relief,

courts should grant such relief sparingly.") (citations omitted).

### A.     Plaintiff is Unlikely to Succeed on The Merits of Their Claims.

The administrative action Plaintiff challenges is a decision left to agency discretion by

law, and thus not subject to judicial review nor violative of the APA. Additionally, Plaintiff's

claim that the United States has breached its trust obligations is without merit.

> 1)     Because There is No Law to Apply, Any Decision to Make a Part 151 Determination Prior to a Determination Under § 2719(b)(1)(A) is Within the Agency's Discretion and Thus Not an Action Subject to Judicial Review.

The APA grants a presumption of reviewability to any individual "suffering a legal

wrong because of agency action." 5 U.S.C. § 701(a). The presumption, however, does not hold

where judicial review is precluded by statute, 5 U.S.C. § 701(a)(1), or where the agency action in question is committed to agency discretion by law, 5 U.S.C. § 701(a)(2).  The Supreme Court has read this latter provision to bar review where "statutes are drawn in such broad terms that in a given case there is no law to apply."  *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410 (1971) (citation omitted), *overrruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977).

The "no law to apply" statements in *Overton Park* now equate to a search for "substantive legal criteria" that a court can use to evaluate an agency's conduct.  *See Drake v. F.A.A.*, 291 F.3d 59, 70 (D.C. Cir. 2002).  Without substantive legal criteria, "meaningful judicial review is impossible, and agency action is shielded from the scrutiny of the courts."  *Id.* (citing *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) and *Webster v. Doe*, 486 U.S. 592, 599-600 (1988)).  In searching for substantive legal criteria, courts are to consider both the nature of the administrative action at issue, and the language and structure of the statute that would supply the applicable legal standards.  *Drake*, 291 F.3d at 70 (citing *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)).

> i)    Given its ministerial nature, any decision by Interior to make Part 151 determinations prior to determinations under § 2719(b)(1)(A) is not reviewable.

As a threshold matter, courts have been hesitant to review several classes of administrative actions.  These include actions regarding national security or foreign affairs, *see, e.g.*, *Legal Assistance for Vietnamese Asylum Seekers*, 104 F.3d at 1353, and agency refusals to take enforcement actions, *see, e.g., Heckler*, 470 U.S. at 830.  Federal Defendants are unaware of any case law creating a per se preclusion to judicial review of agency decisions on which of two

-17-

required statutory review processes to undertake first.  Judicial review is nonetheless

unwarranted given the ministerial nature of such a decision.

In *American Farm Lines v. Black Ball Freight Service, et al.*, 397 U.S. 532, 539 (1970),

the Supreme Court held judicial review was not available for departure from a procedural rule

designed to benefit the Interstate Commerce Commission (ICC) in carrying out its functions.

The rules at issue required certain information be included in statements filed in support of

applications seeking motor carrier operating authorizations.  *Id.* at 533-34.  The Court upheld the

ICC's departure from the rule because, *inter alia*, the rule was not intended to grant procedural

benefits to applicants.  *Id.* at 538-39 (citing *Vitarelli v. Seaton*, 359 U.S. 535 (1959)).

A similar statement can be made about Interior's review of land-into-trust applications

for gaming.  Regardless of which order Interior reviews a Tribe's application under Part 151 and

§ 2719(b)(1)(A), the Tribe receives no procedural benefit.  The application still must pass

scrutiny under both review processes.  Additionally, unlike the rule in *American Farm Lines*,

397 U.S. at 533-34, the Interior process at issue is not a process delineated in the Code of

Federal Regulations.  The Interior review of fee-to-trust application for gaming is the Agency's

chosen internal approach for meeting its statutory duties under 25 U.S.C. § 465 and §

2917(b)(1)(A).  By its very nature as an internal, ministerial management tool, review of that

process is not subject to judicial review.

> ii)    Given the absence of any statutory, regulatory, or other binding
> norms, any decision by Interior to make Part 151 determinations
> prior to determinations under § 2719(b)(1)(A) is not reviewable.

The Interior review process at issue is also unreviewable because the language and

structure of the applicable statutes fail to provide any legal standards.  *See Drake*, 291 F.3d at 70.

Neither IGRA nor the IRA put forth substantive legal criteria for determining whether a Part 151 or § 2719(b)(1)(A) determination should be made first.

Section 465 of the IRA simply grants the Secretary of Interior discretionary authority to acquire lands "for the purpose of providing lands for Indians." 25 U.S.C. § 465. Section 2917 is also facially silent as to the order of review. *See generally* 25 U.S.C. § 2719. In search of a requirement, Plaintiff stretches IGRA's legislative history to argue Congress intended § 2719(b)(1)(A) determinations be made before a Part 151 review. Pl.'s Mem. at 22-23. Given the tense of both § 2719(b)(1)(A) and the related Senate report, however, it is not implausible to argue—contrary to Plaintiff's position—that the statute contemplates the opposite—that Part 151 review should come first. *See* 25 U.S.C. § 2719(a) ("[G]aming regulated by this chapter shall not be conducted on lands *acquired* by the Secretary in trust . . . .") (emphasis added); *see also* S. Rep. No. 100-466, at 8, 20 (1988), *as reprinted in* U.S.C.C.A.N. 3071, 3090 ("Gaming on *newly acquired* tribal lands outside of reservations is not generally permitted . . . .") (emphasis added); *id.* at 20 ("Sets forth policies with respect to lands *acquired* in trust after enactment . . . .") (emphasis added). That point aside, neither IGRA nor the IRA put forth any substantive legal criteria by which to judge Interior's order of review.

Substantive legal criteria also may be found in "formal and informal policy statements." *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987). Whether an agency's statements are binding norms depends on the statements' present effect and whether the agency intended to be bound. *Id.* Relative to effects, statements that impose no rights or obligations are not treated as binding norms. *Id.* Determinations regarding agency intent are made by examining the statement's language, context, and any available extrinsic evidence. *Id.* (quoting *Doe v.*

*Hampton*, 566 F.2d 265, 281-82 (D.C. Cir. 1977)).  In *Pedula*, these criteria were used to

determine that FBI letters in response to questions on the agency's hiring policy were not enough

to create a binding norm.  *Id.* at 101; *see also Chiron Corp. & Perspective Biosystems v. Nat'l*

*Transp. & Safety Bd.*, 198 F.3d 935, 943-45 (D.C. Cir. 1999) (holding an agency guidance for

parties involved in an investigation does not create a binding norm).

      In arguing that prior Agency practice has created a binding norm for the order of review

under Part 151 and § 2719(b)(1)(A), Plaintiff relies on several documents.  Plaintiff first relies

on two letters issued by the Agency to meet the Governor concurrence requirements of §

2719(b)(1)(A).  *See* Pl.'s Ex. D; Pl's. Ex. E.  Neither of these letters, however, can be read to

establish a binding norm on the Agency to make a § 2719(b)(1)(A) determination before a

determination under Part 151.

      First, neither of these letters impose any rights or obligations on any tribe relative to the

Agency's review of fee-to-trust applications for gaming.  Both letters simply state the Agency is

seeking concurrence as required under § 2719.  Secondly, no language indicates an Agency

intent to bind itself to any specific review.  Rather, both letters merely state the current status of

the review process relative to the respective application.  Thirdly, the context of the letters is

important.  Here, neither letter was sent as part of any ongoing discussions with a tribe about the

review process.  In fact, neither letter was even directed at the applying tribe.  As neither letter

imposes any rights or obligations, and the language and context do not indicate an agency intent

to create a binding norm, neither establishes such a norm.  *See Pedula*, 822 F.2d at 100-01.

      Plaintiff next relies on a brief and two court opinions.  *See* Pl.'s Ex. F; Pl.'s Compl. ¶ 34;

Pl.'s Mem. at 21-22.  But these documents also fail to establish binding norms.  First, the two

court opinions fail for the simple reason that they are not statements from the Agency. And, while court opinions could potentially provide evidence—or declare—that an agency did have an established policy, Plaintiff misinterprets factual information in the opinions as applicable legal conclusions. In *Sokaogan Chippewa Community, et al., v. Babbitt*, 929 F.Supp. 1165, 1169-1170 (W.D. Wis. 1996), the court was simply recognizing that an application must meet two separate statutory thresholds before gaming can be conducted on acquired land. Nowhere in the opinion does the court state any requirement that the § 2719(b)(1)(A) determination be made prior to the Part 151 determination. Plaintiff's manipulation of the opinion in *Citizens Exposing Truth About Casinos v. Kempthorne* goes even further. There, a two-part determination under § 2719(b)(1)(A) was not even at issue. *See* 492 F.3d 460, 465 (D.C. Cir. 2007). The statement to which Plaintiff cites, Pl.'s Mem. at 21-22, simply recognized the Agency's determination that the lands in question were "initial reservation" lands as final agency action, and that *Chevron* analysis was therefore the appropriate standard by which to judge BIA's interpretation of "reservation." *See Citizens Exposing Truth*, 492 F.3d at 466-67.

Plaintiff similarly misreads Defendant's Brief in Opposition to Plaintiff's Appeal in the *Sokaogan Chippewa* case. Pl.'s Ex. F. Plaintiff correctly quotes the Government as stating, "the Department may not exercise its authority under 25 U.S.C. § 465 to acquire land into trust if it will be used for gaming purposes unless an applicant tribe can show that a proposed gaming operation will not be detrimental to the surrounding community [under the two-part analysis]." *See* Pl.'s Ex. F at 22. The quote says nothing about sequence, nor can it be inferred that the Agency somehow views itself as compelled to make the two-part determination first. The brief simply states the facts: as a practical matter, land cannot be acquired into trust for gaming until

-21-

both the Part 151 and § 2719(b)(1)(A) thresholds have been surpassed.  The requirement to

surpass the Part 151 analysis is separate and apart from § 2719(b)(1)(A).  An exercise of Agency

discretion not to take land into trust for gaming under Part 151 would render moot a §

2719(b)(1)(A) analysis, and vice-versa.

Thus, none of the documents relied upon by the Plaintiff have created binding norms

upon the Agency.  Similarly, the applicable statutes include no substantive legal criteria by

which to judge any Interior decision to make Part 151 determinations prior to determinations

under § 2719(b)(1)(A).  This reality, combined with the decision's ministerial nature, make any

such decision unreviewable in the courts.

> 2) <u>Any BIA Decision to Make a Part 151 Determination Prior to a
> Determination Under § 2917(b)(1)(A) is Within the Agency's Discretion
> and Would Thus Be Neither Arbitrary and Capricious Nor Contrary to
> Law.</u>

Section 706 of the APA sets the standard of review for agency action.  The Act requires

courts to hold unlawful any action that is, inter alia, "arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  A court's inquiry under §

706(2)(A) should be "searching and careful," but the agency's actions are "entitled to a

presumption of regularity."  *Overton Park*, 401 U.S. at 415-16.  Plaintiff essentially makes two

arguments under § 706(2)(A)—that the August 21, 2007, Skibine letter was a change in the

review process contrary to IGRA, and that the change was announced without proper

explanation.  *See* Pl.'s Mem. at 16-21.  Neither conclusion is correct.

First, for the reasons noted above in Section A.1.ii., any change to the review process at

issue would not be contrary to law.  The IRA and IGRA are both silent with regard to the relative

order in which the Department of Interior fulfills its statutory authority for reviewing Tribal

requests for gaming on fee-to-trust lands.[5]  Any decision by BIA to make Part 151

determinations prior to determinations under § 2917(b)(1)(A) is within the agency's discretion

and therefore not arbitrary and capricious.

Plaintiff also argues that a change in the review process violates the legal principles set

forth in *Motor Vehicles Manufacturers Association of U.S., et al., v. State Farm Mutual*

*Automobile Insurance Company, et al.*, 463 U.S. 29 (1983).  Pl.'s Mem. at 16-21.  *State Farm*

involved a challenge to a National Highway Traffic Safety Administration (NHTSA) order

rescinding a requirement to equip new motor vehicles with passive safety restraints.  463 U.S. at

34-38.  The NHTSA had years earlier formally proposed the requirement and, after much back

and forth, eventually revised (via Federal Register notice and subsequent inclusion in the Code

of Federal Regulations) the safety standards to include the requirement.  *Id.* at 35-37.  With a

new Administration in 1981, however, the Secretary of Transportation proposed and then

finalized an order rescinding the requirement.  *See id.* at 38.  The Supreme Court found, *inter*

*alia*, the rescission to be arbitrary and capricious because the explanation given for the rescission

was not adequate.  *See id.* at 34.

---

[5] Plaintiff also argues that a *Chevron* analysis is appropriate to determine whether BIA has
properly interpreted IGRA.  The D.C. Circuit, however, in a case Plaintiff cites in its Complaint,
acknowledges that *Chevron* analysis is not appropriate where, as here, the challenge does not
involve a formal adjudication or notice-and-comment rulemaking.  *See Citizens Exposing Truth
About Casinos v. Kempthorne*, 492 F.3d 460, 466 (D.C. Cir. 2007) (citing *Christensen v. Harris
County*, 529 U.S. 576, 587 (2000)).  Even if *Chevron* analysis were applicable, IGRA is, at best,
ambiguous as to its relationship with the IRA, and agency deference would therefore be
appropriate in defining that relationship.  *See Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-
45 (1984).

The applicability of *State Farm* to the present dispute, however, is limited.  First, Plaintiff claims that *State Farm* stands for the proposition that an agency must supply a reasoned analysis whenever it changes a *policy*.  *See* Pl.'s Mem. at 17 (emphasis added).  But this reads the case too broadly.  *State Farm*, in fact, dealt only with an informal rulemaking, complete with decades of notice and comment.  *See* 462 U.S. at 40-41.  The Court did not, as Plaintiff seems to argue, address the applicability of its holding to anything other than the rescission of a regulation.  *See id.* at 42 (holding that "an agency changing its course by rescinding a *rule* is obligated to supply a reasoned analysis for the change") (emphasis added).[6]

Secondly, unlike the August 21, 2007, Skibine letter, the *State Farm* rescission was clearly a final agency action.  The National Traffic and Motor Vehicle Safety Act specifically identified orders revoking safety standards as reviewable final agency actions under the APA. *Id.* at 34.  By contrast, neither IGRA nor the IRA makes reviewable a decision to consider applications under one set of statutory factors before the other.

Finally, *State Farm* dealt with an agency action to directly regulate the plaintiffs and other parties in the regulated class.  *Id.* at 34-35.  An Interior decision to make a Part 151 determination prior to a determination under § 2917(b)(1)(A), on the other hand, would be an internal, management-oriented decision completely within the agency's discretion.  *See Am. Farm Lines*, 397 U.S. at 539.

---

[6] Plaintiff claims the internal review process for fee-to-trust gaming applications is a "rule" under 5 U.S.C. § 551(4), yet cites to no authority including the process here, or any similar process, within that definition.  *See* Pl.'s Mem. at 15 n.1.  The lack of authority aside, however, any BIA decision to make Part 151 determinations prior to a determinations under § 2719(b)(1)(A) clearly does not rise to the level of the regulation at issue in *State Farm*.  *See* 5 U.S.C. § 553(b)(A) (excluding certain agency actions from notice-and-comment requirements).

As Plaintiff alludes to (*See* Pl.'s Mem. at 17-21), courts have taken *State Farm* to read that a departure from a longstanding policy does require an explanation from the agency. *See, e.g., NRDC v. SEC*, 606 F.2d 1031, 1050 n.23 (D.C. Cir. 1979) (suggesting the presumption of regularity may be rebutted where "an agency has departed from its longstanding precedents or policies") (citations omitted). But the use of the term "policy" in these and similar situations should also not be read too broadly. Federal Defendants have not found or been made aware of any court decision requiring a reasoned explanation for an alleged departure from an internal process for review. Rather, the "policies" at issue in the *State Farm* progeny are directed, as is the policy in *State Farm* itself, at regulation or enforcement of an outside party. *See, e.g., Mistick PBT v. Chao*, 440 F.3d 503 (D.C. Cir. 2006) (addressing the Department of Labor's failure to conform a decision on plaintiff's application with classifications identified in regulations); *Pontchartrain Broadcasting Co., v. F.C.C.*, 15 F.3d 183 (D.C. Cir. 1994) (finding an FCC decision to deny the opportunity to amend an application was not inconsistent with prior precedent); *F.T.C. v. Crowther*, 430 F.2d 510 (D.C. Cir. 1970) (addressing FTC's departure from a subpoenas duces tecum policy it had identified in a recently comparable case).

The two other cases Plaintiff cites in support of its "departure from longstanding policy" argument do not contradict this pattern. *Yale-New Haven Hospital v. Leavitt*, 470 F.3d 71, 72 (2d Cir. 2006), involved a determination by the FDA to categorically deny Medicare coverage for certain medical procedures. In finding that the categorical exclusion was an unlawful departure from prior agency rule, *id.* at 79, the court noted the change "operated with nearly undiminished force on beneficiaries because it was binding on the [insurance agents] who paid for treatment." *Id.* at 81. Similarly, *Ramaprakash v. F.A.A.*, 346 F.3d 1121, 1122-23 (D.C. Cir.

2003), challenged the National Transportation and Safety Board's failure to follow its codified "stale complaint rule" in revoking the plaintiff's pilot's license.

By contrast, any Interior decision to make Part 151 determinations prior to determinations under § 2917(b)(1)(A) does not impact the rights or obligations of any outside party. The decision would merely involve internal, ministerial management fully within the agency's discretionary powers to decide how to best manage the programs Congress has asked it implement. *Cf. Am. Farm Lines*, 397 U.S. at 539 (holding judicial review not available where rule in question is designed to benefit the agency in carrying out its functions). Regardless of which review factors the agency undertakes first, a tribe's application still must meet the requirements of both Part 151 and § 2917(b)(1)(A) before the land can be taken into trust and gaming commenced.

Thus, any Interior decision regarding the process for making determinations on applications for gaming on fee-to-trust land are a matter of agency discretion, and not the type of administrative action that requires explanation for departure from practice. Any decision to make a Part 151 determination prior to a determination under § 2719(b)(1)(A) is therefore not arbitrary and capricious or contrary to law.

> 3)    Any Interior Decision to Make a Part 151 Determination Prior to a Determination Under § 2917(b)(1)(A) Would Not Violate 5 U.S.C. §§ 706(2)(B)–(D).

Plaintiff next alleges that any decision by Interior to make Part 151 determinations prior to determinations under § 2917(b)(1)(A) would be an *ultra vires* action in violation of the Due Process Clause. *See* Pl.'s Compl. ¶¶ 38-39 (citing § 706(2)(B)). Plaintiff further alleges that any decision by BIA to make a Part 151 determination prior to a determination under §

2917(b)(1)(A) would be an *ultra vires* action in excess of the agency's statutory jurisdiction or authority, and without observance of procedure required by law.  *See* Pl.'s Compl. ¶¶ 40-43 (citing 5 U.S.C. §§ 706(2)(C), 706(2)(D)).  These claims also fail.

                    i)       Any Interior decision would not violate due process because Plaintiff maintains no property or liberty interest in the order of decisionmaking.

As the Supreme Court has noted, "[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the [Constitution's] protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  Thus, Plaintiff's allegation under § 706(2)(B) amounts to an argument that the Tribe has a liberty or property interest in the order by which Interior considers a tribe's application under Part 151 and § 2917(b)(1)(A).  This argument is without merit as Plaintiff holds no such Constitutional interest.

The liberty interest extends to such things as the right to contract, to marry, or to worship God.  *Id.* at 572 (citations omitted).  By no means does an agency's decision on how to manage an internal review process rise to this level.  Property interests, on the other hand, include those things in which a person has already acquired a specific benefit—for example, welfare benefits or contractual public employment.  *Id.* at 576 (citations omitted).  Protected property interests are those in which an individual has a claim of entitlement, not just a unilateral expectation.  *Id.* at 577.  These interests are created and defined by statutory terms.  *Id.* at 577-78.  Here, however, neither the IRA nor IGRA grant Plaintiff any discernable right in Interior's internal order of review under Part 151 and § 2719(b)(1)(A).  An application for lands to be taken into trust for gaming must meet the factors in both Part 151 and § 2719(b)(1)(A) before the Secretary can grant the request.  It is difficult to imagine how an agency's decision to evaluate the application

-27-

under one threshold prior to the other would unconstitutionally deprive the applicant of any Constitutional interest. Therefore, any Interior decision to make a Part 151 determination prior to a determination under § 2719(b)(1)(A) would not deprive the Plaintiff of due process.

ii)     Any Interior decision is within the Agency's discretion and thus not in excess of the Agency's statutory authority, or without observance of procedures required by law.

Relative to Plaintiff's § 706(2)(C) and § 706(2)(D) claims, the Complaint does not clearly identify what authority or legally required procedures the agency has violated. The only statutory authorities cited in Plaintiff's Complaint and memorandum supporting the requested preliminary injunction are the IRA and IGRA. As detailed above in Section A.1.ii., however, the IRA and IGRA do not require Interior's determination under § 2719(b)(1)(A) precede a decision under Part 151, or vice-versa. There is thus no law to apply and the decision is left to agency discretion. *See Drake*, 291 F.3d at 70.

Similarly, neither the IRA nor IGRA put forth any required procedures that the agency must follow in making a decision on whether to undertake Part 151 or § 2719(b)(1)(A) review first. The notice-and-comment requirements of 5 U.S.C. § 553 also do not apply to internal management decisions. *See* 5 U.S.C. § 553(b)(A). Thus, absent any applicable statutory authority or legally required procedures, any Interior decision to make a Part 151 determination prior to a determination under § 2719(b)(1)(A) is left to the Agency's discretion and does not violate §§ 706(2)(C) or (D).

4)      Any Interior Decision to Make a Part 151 Determination Prior to a
Determination Under § 2719(b)(1)(A) Would Not Violate the United
States' Trust Responsibilities Because the Government Holds No
Fiduciary Obligation.

Plaintiff's final claim alleges that any decision by Interior to make a Part 151

determination prior to a § 2719(b)(1)(A) determination is a violation of the United States'

fiduciary obligations to Tribes.  *See* Pl.'s Compl. ¶¶ 44-45; Pl.'s Mem. at 24-25.  No such trust

obligation exists, however, under 25 U.S.C. § 465 or 25 U.S.C. § 2719.

The trust responsibilities owed by the Federal Government to Tribes do not exist as a

matter of common law.  Instead, those obligations are created via statute or treaty.  *See Cobell v.*

*Norton*, 240 F.3d 1081, 1099 (D.C. Cir. 2001) ("[T]he government's obligations are rooted in

and outlined by the relevant statutes and treaties . . . .").  Additionally, a fiduciary obligation may

exist where the Government exercises elaborate control over Tribal money or properties.  *See id.*

at 1098 (quoting *United States v. Mitchell*, 463 U.S. 206, 225 (1983) ("Mitchell II")).

Here, however, the management of Tribal money or property is not at even at issue.

Secondly, nothing in the language of 25 U.S.C. § 465 or § 2719 establishes a fiduciary obligation

to grant a Tribe's fee-to-trust application, let alone a fiduciary obligation to conduct application

-29-

review under either Part 151 or § 2719(b)(1)(A) prior to the other.[7]  Thus, Plaintiff is not likely

to succeed as its claim of breached trust responsibilities, nor its claims under the APA.

## B.    Plaintiff Cannot Prove Irreparable Injury Will Occur.

Plaintiff also fails to show that it would be irreparably injured if its Motion for

Preliminary Injunction was denied.  When a party seeks preliminary injunctive relief, it must

demonstrate an immediate and irreparable harm that justifies the exercise of a court's equitable

powers prior to a trial on the merits.  *Wisconsin Gas Co. v. Fed. Energy Regulatory Comm'n*,

758 F.2d 669, 674 (D.C. Cir. 1985).  If, however, the same party delays in seeking preliminary

relief, that "failure to act sooner undercuts the sense of urgency that ordinarily accompanies a

motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  *Citibank,*

*N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (quoting *Le Sportsac, Inc. v. Dockside*

*Research, Inc.*, 478 F. Supp. 602, 609 (S.D.N.Y. 1979)).  The movant's delay, therefore, is a

factor courts should consider in determining whether the claimed injury is actually irreparable.

*Frizzell*, 530 F.2d at 987 (considering delay of 44 days and finding that "our conclusion that an

injunction should not issue is bolstered by the delay of the appellants in seeking one"); *Quince*

*Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 79-80 (4th Cir. 1989) (holding the

district court properly denied emergency injunctive relief to party who had failed to proceed

---

[7] Notably, Plaintiff has not provided any valid authority for a specific trust responsibility the
Defendants may have breached.  In particular, the suggestion that IGRA creates a fiduciary duty
of some sort has been explicitly rejected by the courts.  "Nothing in [IGRA] indicates any
intention by Congress to recognize or create a fiduciary duty. The Act does not create a situation
in which the federal government holds resources in trust for the Indians."  *Lac Courte Oreilles*
*Band of Lake Superior Chippewa Indians of Wis. v. United States*, 259 F. Supp. 2d 783, 791
(W.D. Wis. 2003) (citations omitted); *see also Pueblo of Santa Ana v. Kelly*, 932 F. Supp. 1284,
1298 (D.N.M. 1996), *aff'd*, 104 F.3d 1546 (10th Cir. 1996); *Vizenor v. Babbitt*, 927 F. Supp.
1193, 1201 (D. Minn. 1996).

expeditiously to prevent its alleged irreparable harm from highway construction of which it had

been aware for several months); *Majorica, S.A. v. R.H Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985)

("Lack of diligence, standing alone may . . . preclude the granting of preliminary injunctive

relief, because it goes primarily to the issue of irreparable harm."); *Shaffer v. Globe Protection*,

721 F.2d 1121, 1123 (7th Cir.1983) (preliminary injunction denied where plaintiff waited two

months); *Sandoz, Inc. v. Food and Drug Admin.*, 439 F. Supp. 2d 26, 31 (D.D.C. 2006) (the

court agreed that "plaintiff's claims fall short because of Sandoz's delay in seeking relief and the

nature of the harm asserted."); *City of Tempe, AZ v. F.A.A.*, 239 F. Supp. 2d 55, 64 n.13 (D.D.C.

2003) ("Further undermining plaintiffs' case is the fact that they have not been diligent in

seeking a preliminary injunction.").

     In this case, Plaintiff challenges a letter dated August 21, 2007.  Plaintiff, however, chose

not to file suit for over three months after its receipt of the August 21, 2007, letter.  Plaintiff's

failure to promptly seek injunctive relief is "quite relevant to balancing the parties' potential

harms" and should cause the Court to examine Plaintiff's claims of irreparable harm

"skeptically" and deny this motion for extraordinary relief.  *Quince Orchard Valley Citizens*

*Ass'n*, 872 F.2d at 79-80.

     Furthermore, Plaintiff fails to show that irreparable injury will occur without an

injunction.  The burden of justifying interim relief lies with the movant, and threatened,

speculative harm does not amount to irreparable injury for purposes of justifying an injunction.

*Wisconsin Gas Co.*, 758 F.2d at 674 (the alleged injury "must be both certain and great; it must

be actual and not theoretical.  Injunctive relief 'will not be granted against something merely

feared as liable to occur at some indefinite time.'") (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931)).

Plaintiff claims that an injunction is necessary, because the denial of its application "would mean the loss of approximately $1 million which [it] has spent to date in its efforts to have a Beloit casino." Pl.'s Mem. at 25. Plaintiff also claims that such an event would deprive it of "anticipated revenues from the Beloit casino, its planned hotel and other related Tribal-owned businesses." Pl.'s Mem. at 25. In making these allegations, Plaintiff has completely failed to offer any evidence that demonstrates that they will actually suffer any harm. It is clear that no presumption of irreparable injury exists. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987). Accordingly, Plaintiff must come forward with proof of harm; it cannot merely rest on unsubstantiated allegations. Here, Plaintiff fails to provide the requisite proof, because its claims are based on multiple speculative assumptions. For example, Plaintiff predicts that its application will be denied. Plaintiff also assumes that if Defendants make the two-part Secretarial determination under IGRA prior to making a decision pursuant to Part 151, it would lead to a favorable decision regarding its application. Moreover, there is little risk of irreparable harm if this Court does not issue an injunction. The impacts Plaintiff alleges will occur are related to the denial of its application. If Plaintiff disagrees with the eventual decision regarding its application, it will have ample opportunity to seek judicial review.

Plaintiff's failure to demonstrate irreparable harm is sufficient grounds by itself for the Court to deny Plaintiff's motion. *Smith, Bucklin & Assoc. v. Sonntag*, 83 F.3d 476, 477 (D.C. Cir. 1996) (affirming district court refusal to issue preliminary injunction where plaintiff failed to demonstrate irreparable harm); *CityFed Financial Corp. v. Office of Thrift Supervision*, 58

F.3d 738, 747 (D.C. Cir. 1995) ("Because CityFed has made no showing of irreparable injury here, that alone is sufficient for us to conclude that the district court did not abuse its discretion by rejecting CityFed's request [for a preliminary injunction]."). Because Plaintiff has not established that there is a concrete threat of irreparable harm in the absence of a preliminary injunction, its motion should be denied.

**C.    An Injunction Would Not Serve the Public Interest**.

Finally, the balance of harms, especially given Plaintiff's delay, weighs heavily in favor of Defendants and the public interest. The Supreme Court has explained that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero Barcelo*, 456 U.S. 305, 312 (1982) (citation omitted). The public interest standard is a separate consideration in determining whether to grant equitable relief. *Amoco Prod. Co.*, 480 U.S. at 545. When injunctive relief would harm the public interest, the Court may withhold the relief, even if doing so would burden or cause irreparable injury to the movant. *Weinberger*, 456 U.S. at 312-13; *Yakus v. United States*, 321 U.S. 414, 440 (1944).

As explained above, the APA prohibits the premature review of agency decisions. In this case, Plaintiff fails to identify any final agency action taken by Defendant. Thus, an injunction would further pointless litigation and disrupt the processes established by Defendant for review of applications to take land into trust for gaming. Moreover, if the preliminary injunction Plaintiff requests is issued, it will negatively impact Indian tribes who are not a party to this litigation. Plaintiff requests that Defendants be enjoined from "making any decisions or determinations with respect to similar off-reservation applications filed by other Indian tribes to

-33-

take land intro trust for gaming" unless Defendants first make the two-part Secretarial

determination under IGRA.  Pl.'s Proposed Order at 3.  Plaintiff's request for a preliminary

injunction is entirely too broad and will delay the processing of the applications of other Indian

tribes.  *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990)

("[I]njunctions issued by federal courts should be narrowly tailored to remedy the harm shown.")

(citation omitted).  Issuance of such an extraordinary injunction would be highly disruptive to

the government-to-government relationship between such Indian tribes and the United States and

would be without justification.[8]  Accordingly, the public interest and the balance of harms favors

denial of Plaintiff's Motion For a Preliminary Injunction.

---

[8] In a recently filed case, the St. Regis Mohawk Tribe of New York alleges that the Department of the Interior has failed to act on its fee-to-trust application in violation of the APA.  *St. Regis Mohawk Tribe of New York v. Kempthorne*, Civil Action No. 07-1958 (RWR).  Accordingly, it is clear that there is not a consensus that delaying the processing of fee-to-trust applications would be beneficial to the public.

**CONCLUSION**

Based on the aforementioned, Defendants respectfully request that their Motion to Dismiss be granted and Plaintiff's Motion For a Preliminary Injunction be denied.

Respectfully submitted this 21st day of December, 2007.

RONALD J. TENPAS
Assistant Attorney General

    */s/ Sara E. Culley*
SARA E. CULLEY  (KS #20898)
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
Tel: (202) 305-0466
Fax: (202) 305-0267
Email: sara.culley@usdoj.gov

    */s/ Kristofor R. Swanson*
KRISTOFOR R. SWANSON
(Colo. Bar No. 39378)
U.S. Department of Justice
Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663
Tel: 202-305-0248
Fax: 202-305-0506
Email: kristofor.swanson@usdoj.gov

*Attorneys for Federal Defendants*

Of Counsel:

Jonathan Damm
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2007, the **Federal Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss and in Response to Plaintiff's Motion For a Preliminary Injunction** was filed with the United States District Court for the District of Columbia's electronic filing system, to which the following attorneys are registered to be noticed:

Robert M. Adler
radler@oconnorhannan.com

Gerald H. Yamada
gyamada@oconnorhannan.com

    _/s/ Kristofor R. Swanson_
Kristofor R. Swanson

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | |
| DIRK KEMPTHORNE, In his official capacity as SECRETARY OF INTERIOR ) ) ) ) ) | Case No. 1:07-CV-02210 |
| and ) ) ) | |
| CARL J. ARTMAN In his official capacity as ASSISTANT SECRETARY – INDIAN AFFAIRS ) ) ) ) | |
| Defendants. ) ) | |

## DECLARATION OF GEORGE T. SKIBINE

I, GEORGE T. SKIBINE, declare as follows:

1. I am the Director of the Office of Indian Gaming (OIG) within the Office of the Assistant Secretary – Indian Affairs in the Department of the Interior (Department).

2. I have held this position since 1997.

3. I am also the Acting Deputy Assistant Secretary for Policy and Economic Development within the Office of the Assistant Secretary – Indian Affairs in the Department of the Interior.

4. I have held this position since it was created in 2003.

5.   The OIG is responsible for the development of policies and procedures used for the implementation of gaming-related activities authorized by the Indian Gaming regulatory Act of 1988 (IGRA), and for coordinating development of all related policies and procedures with affected offices.  Areas of responsibilities include:  review and approval of class III tribal/state gaming compacts; review and approval of revenue allocation plans that authorize per capita distribution of net gaming revenues; review and approval of requests to take land into trust for gaming or gaming-related purposes; review and approval of two-part determinations pursuant to 25 U.S.C. 2719(b)(1)(A) of IGRA; and review and approval of class III gaming procedures pursuant to 25 U.S.C. 2710(d)(7)(B)(vii) and 25 C.F.R. Part 291.

6.   On January 9, 2007, the OIG received a copy of the Regional Director, Midwest Region, findings and recommendations, dated January 8, 2007, regarding whether the joint application of the St Croix and Bad River Chippewa Indian tribes ("Tribes"), to place a parcel of land into trust in Beloit Wisconsin, for gaming purposes, complied with the requirements of 25 C.F.R. Part 151, and Section 2719(b)(1)(A) of IGRA

7.   OIG continues to review the Tribes' application to take land into trust for gaming under 25 C.F.R. Part 151.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 20ᵗʰ, 2007

George T. Skibine
Acting Deputy Assistant Secretary
For Policy and Economic Development

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN, | ) ) ) |
| *Plaintiff*, | ) ) |
| *v.* | )        Civ. No. 1:07-cv-02210-RJL ) |
| DIRK KEMPTHORNE, et al., | ) ) |
| *Defendants*. | ) ) |

**[PROPOSED] ORDER**

Before the Court are Plaintiff's Motion for a Preliminary Injunction and Defendants'

Motion to Dismiss.  Upon consideration of the motions and the memoranda in support thereof, it

is hereby:

ORDERED that Plaintiff's Motion for a Preliminary Injunction is DENIED; and

ORDERED that Defendants' Motion to Dismiss is GRANTED.

Dated this _____ day of _____, 2008.

_____
Richard J. Leon
United States District Judge

Attorneys to be Noticed:

*Plaintiff's Counsel*

Robert M. Adler
Gerald H. Yamada
O'CONNOR & HANNAN, LLP
1666 K Street, NW

Suite 500
Washington, DC 20006-1218
radler@oconnorhannan.com
gyamada@oconnorhannan.com

*Defendants' Counsel*

SARA E. CULLEY
KRISTOFOR R. SWANSON
U.S. Department of Justice
Natural Resources Section
P.O. Box 663
Washington, DC 20004
sara.culley@usdoj.gov
kristofor.swanson@usdoj.gov