**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN, | ) ) ) |
| *Plaintiff,* | ) ) |
| *v.* | ) ) |
| DIRK KEMPTHORNE, et al., | ) ) |
| *Defendants.* | ) ) |

Civ. No. 1:07-cv-02210-RJL

---

**FEDERAL DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO DISMISS**

The above-captioned action involves a challenge by the St. Croix Chippewa Indians of

Wisconsin (Plaintiff) to an alleged change in the Department of the Interior's ("Interior" or

"Agency") process for reviewing tribal applications for the United States to take land into trust

for gaming purposes. Plaintiff bases the action on an August 21, 2007, letter from George

Skibine, Acting Deputy Assistant Administrator – Policy and Economic Development. With its

Complaint, Plaintiff also filed a Motion for a Preliminary Injunction. In responding to that

motion, Dirk Kempthorne, in his official capacity as Secretary of the Interior, and Carl J.

Artman, in his official capacity as Assistant Secretary – Indian Affairs (collectively, "Federal

Defendants"), filed a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6). To date, no decision has been issued on Plaintiff's fee-to-trust application. Plaintiff

has failed to show the August 21, 2007, Skibine letter is final agency action, or that the letter

causes a redressible injury. In addition, the present action is not ripe for review. The Complaint

should therefore be dismissed.[1/]

## I.   PLAINTIFF HAS NOT MET ITS BURDEN OF SHOWING THE SKIBINE LETTER CONSTITUTES FINAL AGENCY ACTION.

Plaintiff holds the burden of establishing a waiver of sovereign immunity.  McNutt v.

Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936).  The Administrative

Procedures Act (APA) only constitutes a waiver of sovereign immunity where there is an

identifiable "final agency action."  5 U.S.C. § 702.[2/]  Plaintiff has failed to meet its obligation to

identify a final agency action and the Complaint should therefore be dismissed.

Plaintiff argues that an August 21, 2007, letter from George Skibine (Doc. No. 4-7) is a

final agency action because it is a "consummation" of an agency decision and does not involve

speculation.  Plaintiff's Response Memorandum at 3 (Doc. No. 16) (citing  Bennett v. Spear, 520

U.S. 154, 177–78 (1997)).  But Plaintiff continues to misconstrue the letter's nature.  The August

---

[1/] On January 10, 2007, Plaintiff filed a First Amended Complaint (Doc. No. 18), adding two allegations based on a January 3, 2007, memorandum from Assistant Secretary Artman to the Bureau of Indian Affairs's Regional Directors and the Office of Indian Gaming.  When an amended complaint is filed while the defendant's motion to dismiss the original complaint is being briefed by the parties, as here, the defendant is not required to respond by filing another motion to dismiss where the defects raised in the original motion remain in the amended pleading.  See Wright, Miller and Kane, Federal Practice and Procedure, § 1476 (2d ed. 1990); see also Jordan v. City of Philadelphia, 66 F. Supp. 2d 638, 641 n.1 (E.D. Pa. 1999) (quoting that "the court simply may consider the motion as being addressed to the amended pleading"); Am. Int'l Speciality Lines Ins. Co. v. United States, 71 Fed. Cl. 37, 39 (2006) (noting that "in situations where a motion to dismiss addresses purported defects that remain even after the filing of the amended complaint, it is a waste of resources to require defendant to file a new motion.").  Though the January 3 letter broadens the merits of the case, Federal Defendants' final agency action, standing, and ripeness arguments still apply.  Any change to the Agency's review process has not injured Plaintiff because no decision on its fee-to-trust application has been issued.

[2/] Plaintiff's response memorandum does not challenge the Federal Defendants' assertions that 28 U.S.C. § 1331 and § 1362 do not waive sovereign immunity.

21 Skibine letter was not a reviewable culmination of any agency re-thinking of the fee-to-trust

application process for gaming.  Instead, it was a communication in response to Plaintiff's

request for information on the on-going review process.  For purposes of stating a claim, the

"consummation" of any agency change in internal process here would be a letter or other

declaration issuing a decision on Plaintiff's fee-to-trust application.  See Fund for Animals, Inc.

v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 22 (D.C. Cir. 2006) (noting the D.C. Circuit's long-

standing practice requiring challenges to broad agency policies be made to the policy's specific

implementation).

  In addition to being a "consummation" of an agency decision, an agency action must

have legal consequences to be considered "final" for purposes of waiving sovereign immunity.

Bennett, 520 U.S. at 177–78.  The agency action must command an act or refrainment; grant

withhold, or modify a legal licence, power, or authority; subject an entity to criminal or civil

liability; or create a legal right or obligation.  See Fund for Animals, 460 F.3d at 22 (citing Ohio

Forestry Ass'n, Inc. v. Sierra Club, 523 U.S. 726, 733 (1998)).  Plaintiff's response

memorandum does not attempt to distinguish Fund for Animals, which closely mirrors the

present action in underscoring that agency action is not final if it only adversely affects a party's

rights "on the contingency of some *future administrative action*."  460 F.3d at 22.  The plaintiff

in Fund for Animals challenged a Congressional budget request as final agency action.  Id. at 19.

In determining the request did not constitute final agency action, the D.C. Circuit noted the

request was "very unlike a substantive rule that, as a practical matter, requires the parties

affected to adjust their conduct as soon as possible" and that, rather than action, the request was

"a statement about what [the agency] plans to do." Id. at 20, 21–22 (citation omitted).  Similarly, the Skibine letter merely states that agency *plans* to review the application under Part 151, and it requires no change in Plaintiff's conduct.  In fact, Plaintiff has done nothing to show how the letter impacts its legal rights.  Plaintiff has not shown that the letter commands any action, or requests a refrain from action.  Plaintiff has not shown the letter grants or withholds legal power or authority.  Nor has Plaintiff shown that the letter creates any legal right or obligation for the Tribe.

This is a stark contrast to Bennett, where the Court determined that a biological opinion under the Endangered Species Act was final agency action because it allowed the agency to "take" endangered species.  Bennett, 520 U.S. at 178.  By allowing an otherwise illegal act, the opinion "altered the legal regime" under which the agency was acting.  Id.  Nothing in the Skibine letter, on the other hand, alters the legal regime for review of fee-to-trust applications for gaming.  An applicant still must surpass the requirements of both the Indian Reorganization Act (via the 25 C.F.R. Part 151 implementing regulations) and the Indian Gaming Regulatory Act before gaming can commence.

The other cases Plaintiff cites do not contradict the requirement that agency action have some impact on a party's legal rights to be considered "final".  In fact, Tarbell v. Department of the Interior, a case upon which Plaintiff relies (Pl.'s Resp. at 3) exemplifies the distinction.  See 307 F. Supp. 2d 409 (N.D.N.Y. 2004).  The case dealt with the validity and proper recognition of tribal leadership and court authority.  Id.  In finding two letters from the Solicitor's Division of Indian Affairs constituted final agency action, the court made clear the letters "were expected to

have concrete legal significance to the plaintiffs." Id. at 427. By issuing the letters, the agency

had implicated "funds for infrastructure, health services and education[,]" and potential wealth

from development of casino-style gaming. See id. at 423. Here, the Skibine letter alone has no

similar implications.

In addition, Plaintiff's arguments continue to be based on the assumption that the

Skibine letter holds the same weight of "agency action" as agency rules issued pursuant to 5

U.S.C. § 551(4). Pl.'s Resp. at 2.[3] Plaintiff's reliance on challenges to published regulations for

the proposition that the Skibine letter constitutes final agency action is inappropriate, however,

for the simple fact that final publication of changes or additions to the Code of Federal

Regulations is clearly final agency action. American Federation of Labor v. Chertoff, for

example, holds no significance here because it involved the Department of Homeland Security's

issuance of a final rule redefining statutory terms and creating a safe harbor under the

Immigration Control and Reform Act. See generally No. C 07-04472, 2007 U.S. Dist. LEXIS

75233 (N.D. Cal. Oct. 10, 2007). Whether the published amendment to the Code of Federal

Regulations was a final agency action was not at issue. Defining statutory terms and creating

safe harbors are clearly agency actions from "which legal consequences flow." See Bennett, 520

U.S. at 177–78.

---

[3] It is by no means clear that the August 21 Skibine letter is an "agency action" under the APA.
The APA defines agency action as "an agency rule, order, license, sanction, relief, or the
equivalent denial thereof." 5 U.S.C. § 551(13). Plaintiff, without authority, claims that the
Skibine letter is an "agency rule." See, e.g., Pl.s' Resp. at 2 (citing 5 U.S.C. § 551(4)). Case law,
however, has interpreted the definition of "agency rule" to include only those actions that
purport to bind the agency. See, e.g., Amoco Prod. Co. v. Watson, 410 F.3d 722, 732 (D.C. Cir.
2005).

Despite Plaintiff's contentions, <u>Hurson Associates v. Glickman</u>, 229 F.3d 277 (D.C. Cir 2000), is also not "on point." <u>See</u> Pl.'s Resp. at 5–7. <u>Hurson Associates</u> involved the U.S. Department of Agriculture's elimination of one method in which commercial food producers could seek approval for food labels. <u>Id.</u> at 279. The case holds no factual similarities to Plaintiff's present action. First, a Federal Register notice had been issued in the case, which is no doubt a final agency action under the APA. <u>See id.</u> at 279–80. Secondly, the issues before the court were whether public comment had been required and whether the lower court had properly allowed an amended complaint. <u>Id.</u> 279–83. No dispute existed as to whether there had been a final agency action. Thirdly, the case involved a "procedural rule" under 5 U.S.C. § 553(b)(3)(A). <u>Id.</u> at 280. As noted in <u>Hurson Associates</u> itself, a "procedural rule" is one issued by the agency that "alter[s] the manner in which the parties present themselves or their viewpoints to the agency." <u>Id.</u> (quoting <u>JEM Broad. Co. v. FCC</u>, 22 F.3d 320, 326 (D.C. Cir. 1994)) (internal citations omitted). Plaintiff here makes no challenge to the fee-to-trust application procedures, but rather the agency's internal review process.

Plaintiff has failed to show that the Skibine letter is a final agency action. The letter is not a consummation of agency decision-making, and Plaintiff has not demonstrated any legal consequences that flow from its drafting. Absent a final agency action, the APA does not waive sovereign immunity and the Complaint should be dismissed. <u>See generally</u> <u>Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Ashcroft</u>, 360 F. Supp. 2d 64 (D.D.C. 2004).[4]

---

[4] If Plaintiff is unsatisfied with any agency decision on its fee-to-trust application, Plaintiff can easily bring the present claims as part of a challenge to that determination.

## II.    PLAINTIFF HAS NO STANDING BECAUSE IT HAS FAILED TO SHOW HOW THE SKIBINE LETTER CREATES AN INJURY.

To establish standing, a party must show injury-in-fact, a causal link between agency action and that injury, and a likelihood that the injury will be redressed.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).  Plaintiff has failed to show the Skibine letter causes an injury, let alone a redressible injury.  First, no statute has conferred any procedural right on plaintiff that could be injured.   Second, if there were a right to certain process, no substantive result of that process has occurred that can be redressed.  The Complaint should therefore be dismissed.[5/]

### A.    Plaintiffs fails to establish the existence of any statutorily conferred procedural right.

Plaintiff attempts to exempt its claim from the normal standing requirements of imminent injury, causation, and redressibility by asserting protection of some "procedural right."  Pl.'s Resp. at 9 (quoting Lujan, 504 U.S. at 572 n.7).  But a "procedural right" does not accrue simply because Plaintiff is challenging an agency process.  Rather, an individual must be "*accorded* a procedural right to protect his concrete interests," and can act to enforce that right "so long as the procedures in question are designed to protect some threatened concrete interest."  Lujan, 504 U.S. at 572 n.7, 573 n.8 (emphasis added).

_____

[5/] Plaintiff's response memorandum does not challenge the Federal Defendants' assertion that Plaintiff's claim also lacks the requisite causation between the challenged agency action and claimed injury.  See Federal Defendant's Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 13 (Doc. No. 14-2).  The Government reiterates that there is no connection between the alleged unlawful action (a change in the internal review process for fee-to-trust applications declared in the Skibine letter) and the claimed injury (financial loss from a negative Part 151 determination).

In <u>Lujan</u>, for example, the right at issue was contained in the Endangered Species Act's (ESA) citizen suit provisions. <u>Id.</u> at 571–73. The provision, it was claimed, effectively created a procedural right to review the agency action in question regardless of direct injury.[6] <u>Id.</u> In the <u>Lujan</u> Court's example of a neighbor's procedural right to have an environmental impact statement completed for a dam project, the right-according mechanism would be the National Environmental Policy Act (NEPA). <u>See id.</u> at 572 n.7; 42 U.S.C. § 4332(C). Similarly, <u>Nulankeyutmonen Nkihtaqmikon v. Impson</u>, 503 F.3d 18, 27 (1st Cir. 2007), involved challenges under statutory procedures guaranteed by NEPA, ESA, and the National Historic Preservation Act. <u>Massachusetts v. EPA</u> was based on a procedural right conferred by the Clean Air Act. <u>See</u> 127 S. Ct. 1438, 1453 (2007).[7] Plaintiff here has not identified anything, statute or otherwise, that clearly grants it a "right" to have its application considered under 25 U.S.C. § 2719(b)(1)(A) prior to consideration under 25 C.F.R. Part 151. <u>See</u> Federal Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 19–22 (Doc. No. 14-2). The Tribe's only injury would thus be a negative determination on its fee-to-trust application. This injury has yet to occur, and Plaintiff therefore lacks standing under

---

[6] Plaintiff fails to mention the fact the Court in <u>Lujan</u> found that this "procedural right" was not sufficient for standing. <u>See Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 573 (1992).

[7] These "procedural rights" all involve access to or input on an agency action. None involve a "right" to challenge an internal agency review process, or a right to a certain form of that process, particularly not when that process has yet to culminate in a decision. Plaintiff alleges that Federal Defendants' have violated its procedural right to review of agency action under the APA. <u>See</u> Pl.'s Resp. at 10. But Plaintiff's challenge here does not allege that Federal Defendants have blocked Plaintiff's access to federal court review. In fact, it is difficult to imagine how any administrative agency could violate such a right.

Article III.

**B.      The Process in Question is not Linked to Plaintiff's Potential Injury, and the Injury Therefore Cannot be Redressed.**

Plaintiff also has not shown how its alleged "injury" could be redressed if this case were to proceed.  Plaintiff relies on <u>Wisconsin Public Power, Inc. v. FERC</u>, 493 F.3d 239, 269 (D.C. Cir. 2007), for the proposition that a party alleging a deprivation of a procedural protection does not have to show the substantive result would be changed to meet redressibility requirements.[9]

Federal Defendants' again note that there is no procedural right to consideration of an application under § 2719(b)(1)(A) prior to consideration under Part 151.  But, even if there were such a right, Plaintiff's reliance on <u>Wisconsin Public Power</u> fails because *there is not yet a substantive result*.  As the D.C. Circuit makes clear—in the sentence immediately following the one Plaintiff cites—"a petitioner asserting a procedural right must nonetheless show [that] it *has itself suffered* personal or particularized injury because of the substantive result."  <u>Wis. Public Power</u>, 493 F.3d at 269 (internal quotations omitted) (emphasis added).  The Department of Interior has not yet issued a decision on Plaintiff's fee-to-trust application.  Plaintiff's application has thus not yet been denied, and Plaintiff has not yet been injured.  There is no action the Court could order the Agency to take that would redress a non-existent injury.

---

[9] Plaintiff claims <u>Massachusetts v. EPA</u>, 127 S. Ct. 1438 (2007), changes <u>Lujan</u>'s redressibility requirements.  <u>See</u> Pl.'s Resp. at 10.  This assertion fails because the Supreme Court's explicit limitation of its <u>Massachusetts</u> holding on standing to "the special position and interests of . . . a sovereign State," 127 S. Ct. at 1454, has questionable application to the present situation.  Here, distinct from the Court's sovereignty arguments in <u>Massachusetts</u>, the subject lands of Plaintiff's application are not yet within tribal sovereignty.  Regardless, any injury to Plaintiff here would be a negative determination on its application.  As that has yet to happen, there is no substantive result that the Agency could "possibly reconsider."

Furthermore, Plaintiff continues to offer no support for its assumption that review of its

application under § 2710(b)(1)(A) prior to review under Part 151 would result in an outcome

different than one it fears.  In fact, Plaintiff includes, as an exhibit to its response memorandum,

a letter from the Associate Deputy Secretary of the Interior to the St. Regis Mohawk Tribe.  See

Pl.'s Ex. C (Doc. No. 16-6).  The letter communicates a negative Part 151 determination to St.

Regis Mohawk. Pl.'s Ex. C at 4.  As Plaintiff acknowledges, a two-part Secretarial determination

under § 2719 had previously been made in favor of gaming on the land in question.  See

Plaintiff's Notice of Filing (Doc. No. 17).  The Associate Deputy Secretary nonetheless found

the St. Regis Mohawk application did not adequately meet the Part 151 factors. Pl.'s Ex. C.  The

finding only confirms that review under § 2719(b)(1)(A) and Part 151 are independent legal

thresholds.  Thus, there is no connection whatsoever between the order of review and Plaintiff's

desired substantive result.  See 25 U.S.C. § 2719(c) (stating that nothing in § 2719 "shall affect

or diminish the authority and responsibility of the Secretary to land into trust.").  Plaintiff's

claim is therefore not redressible.  Cf. Wis. Public Power, 493 F.3d at 269 (noting it is necessary

"to show that the procedural step was connected to the substantive result").  Because Plaintiff

has failed to show an injury or possible redressibility, it has no standing to proceed in the present

action.[9]

---

[9] Plaintiff's response memorandum does not dispute that the Tribe lacks standing to seek a
preliminary injunction barring review of fee-to-trust applications submitted by other Tribes.

### III.    PLAINTIFF'S CLAIM IS NOT YET RIPE FOR REVIEW

Plaintiff also relies on its "procedural right" arguments to rebuff problems with the

current action's ripeness.  See Pl.'s Resp. at 11.  For the reasons noted above, this argument is

without merit.  Plaintiff's quoting of Ohio Forestry Assocation, Inc. v. Sierra Club exemplifies

the problem: "[A] person with standing who is injured by a failure to comply with *[statutory]*

*procedure* may complain of that failure at the time the failure takes place, for the claim can never

get riper."  Pl.'s Resp. at 11 (emphasis added).  Here, there is no statutorily required procedure

that Interior review fee-to-trust applications under § 2719(b)(1)(a) prior to review under Part

151.  This is in contrast to the referenced statements in Ohio Forestry Association, where the

Court was speaking of NEPA's statutorily anchored environmental review process.  See 523

U.S. at 737.  Plaintiff's claims will become ripe once a decision on its application is issued.

Plaintiff's reliance on Nulankeyutmonen Nkihtaqmikon is also unfounded. Though

Plaintiff is correct that the First Circuit found the action ripe for review, it based it decision on

the agency's concession that the challenged action was final agency action.  503 F.3d at 32–33.

Here, any claimed violation of legally required process—assuming legal principles even

exist—requires some final action for which the process taken can be reviewed.  As that action

has yet to occur, adjudication of Plaintiff's alleged violations of law is premature.  And, in

allowing the Agency review process for fee-to-trust applications to come to fruition, the Court

would in no way be hindering Plaintiff's ability to challenge any forthcoming decision on its

application.  See 25 C.F.R. § 2.6(c);  see also Ohio Forestry Ass'n, Inc, 523 U.S. at 734 (finding

"no hardship where plaintiff would 'have ample opportunity later to bring its legal challenge at a

time when harm is more imminent and more certain'").

## VI.    CONCLUSION

Plaintiff has failed to show a final agency action or the requisite injury, causation, and

redressibility to establish standing.  The present claims are not yet ripe review and Plaintiff's

Complaint should be dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Respectfully submitted this 11th day of January, 2008.

<div style="margin-left: 40%;">

RONALD J. TENPAS
Assistant Attorney General

_/s/ Kristofor R. Swanson_

SARA E. CULLEY  (KS #20898)
KRISTOFOR R. SWANSON (Colo. # 39378)
United States Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C.  20044-0663
(202) 305-0466
(202) 305-0248
Fax: (202) 305-0267
sara.culley@usdoj.gov
kristofor.swanson@usdoj.gov

*Attorneys for Federal Defendants*

</div>

Of Counsel:

Jonathan Damm
U.S. Department of the Interior
Office of the Solicitor
Division of Indian Affairs