UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB 2 2 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

THE ST. CROIX CHIPPEWA )
INDIANS OF WISCONSIN, )
)
Plaintiff, )
) Civil Case No. 07-2210 (RJL)
v. )
)
DIRK KEMPTHORNE, *et al.*, )
)
Defendants. )

MEMORANDUM OPINION
(February 21, 2008) [#4]

Before the Court is a motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) filed by plaintiff, the St. Croix Chippewa Indians of Wisconsin ("St. Croix"), against defendants Dirk Kempthorne, in his official capacity as Secretary of the Department of Interior ("Interior" or "the Department"), and Carl J. Artman, in his official capacity as Assistant Secretary-Indian Affairs at Interior.[1] For the following reasons, the Court DENIES plaintiff's motion for a preliminary injunction.

BACKGROUND

*A. Statutory Background*

Off-reservation fee-to-trust gaming applications, such as the application at issue in this dispute, are governed by (1) Section 5 of the Indian Reorganization Act ("IRA"), 25

---

[1] On January 14, 2008, plaintiff filed a second motion for preliminary injunction. (*See* Pl.'s Second Mot. Prelim. Inj. [Dkt. #20-2].) All briefing on plaintiff's second motion has been stayed until entry of orders on plaintiff's original motion for preliminary injunction, filed on December 10, 2007, and defendants' motion to dismiss, filed on December 21, 2007. (*See* Stipulation and Order [Dkt. # 30].) The only motion addressed in this Opinion and the accompanying Order is plaintiff's original motion for preliminary injunction.

1

U.S.C. § 465, and its implementing regulations at 25 C.F.R. Part 151 and (2) the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701 *et seq*. A request to establish an off-reservation gaming facility must be approved by the Secretary of the Interior ("Secretary") in accordance with IGRA, which provides at 25 U.S.C. § 2719(b)(1)(A) that off-reservation gaming is permitted only if:

> [T]he Secretary, after consultation with the Indian tribe and appropriate State and local officials, including officials of other nearby Indian tribes, determines that a gaming establishment on newly acquired lands [1] would be in the best interest of the Indian tribe and its members, and [2] would not be detrimental to the surrounding community, but only if the Governor of the State in which the gaming activity is to be conducted concurs in the Secretary's determination . . .[2]

The Secretary must also decide whether to exercise his discretion to acquire the land in trust pursuant to IRA and its implementing regulations.[3] The Secretary has delegated decisional authority for off-reservation gaming applications to the Assistant Secretary-Indian Affairs.

**B.  *Factual Background***

In July 2001, St. Croix, together with the Bad River Band of Lake Superior Chippewa Indians, submitted an application to the Midwest Regional Office of the Bureau of Indian Affairs ("BIA") of the Interior for approval of an off-reservation casino to be located in Beloix, Wisconsin. (Am. Compl. ¶¶ 1, 26.) This application (hereinafter "Beloix application") was forwarded to the Central Office of the BIA on January 8, 2007,

---

[2] The Court refers herein to the determination under IGRA as the "two-part determination."
[3] The Court refers herein to the determination under IRA and its implementing regulations as the "Part 151 determination."

2

with a favorable recommendation and remains pending before the BIA. (Am. Compl. ¶ 27.) On July 13, 2007, St. Croix's outside counsel wrote a letter to Assistant Secretary Artman, inquiring when review of the Beloix application would be complete and whether the Part 151 determination would be made before the two-part determination. (Am. Compl. ¶ 28; Adler Aff., Ex. B.) In response, George Skibine, Acting Deputy Assistant Secretary-Policy and Economic Development, wrote in pertinent part:

> The [Beloit] application . . . is currently under review in this office and a decision will be made only after an exhaustive and deliberative review of all relevant criteria, factual information, and legal requirements. We will make a determination on whether to take land into trust pursuant to Part 151 prior to making the two-part secretarial determination under IGRA. We believe that it is the appropriate and logical sequence for the decision-making process. We do not believe that this represents a policy change since the Department has never before specified a particular sequence for making the two decisions involved in this process.

(Adler Aff., Ex. C (hereinafter "Skibine Letter").) It is Interior's decision to make the Part 151 determination *prior* to making the two-part determination, as described in the Skibine Letter, that plaintiff now challenges. St. Croix contends that this decision is a change in historical practice at Interior and reflects Secretary Kempthorne's alleged personal animus towards off-reservation gaming applications. As a result, plaintiff contends that it is more likely than not that the Beloix application will ultimately be denied.

Accordingly, plaintiff seeks a preliminary injunction to enjoin the defendants from implementing, enforcing or otherwise carrying out Interior's decision to make the Part

3

151 determination first, and from making any decision or determination with respect to the Beloix application (and similar off-reservation gaming applications filed by other Indian tribes) unless Interior makes the two-part determination first. In short, plaintiff contends that Interior's actions are violative of the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), (C), (D).[4]  (Am. Compl. ¶¶ 57-59, 62-66.)

## ANALYSIS

To prevail in a request for a preliminary injunction, a plaintiff "must demonstrate 1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995). The four factors are balanced on a sliding scale, and a party can compensate for a lesser showing on one factor by making a very strong showing on another factor. *Id.* at 747. However, "[i]f the plaintiff makes a particularly weak showing on one factor . . . the other factors may not be enough to compensate." *Dodd v. Fleming*, 223 F. Supp. 2d 15, 20 (D.D.C. 2002) (citations omitted). Indeed, "if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." *Id.* (citing *CityFed Fin. Corp.*, 58 F.3d at 747). For the following reasons, the Court concludes that St. Croix has neither demonstrated irreparable harm nor a likelihood of success on the merits.

---

[4] For purposes of the motion for preliminary injunction presently before the Court, plaintiff does not rely on its due process and trust responsibilities claims alleged in its Amended Complaint. (*See* Pl.'s Reply Mem. [Dkt. #16] 19.)

*A. Irreparable Harm*

To obtain injunctive relief, St. Croix must demonstrate that it will otherwise suffer irreparable harm. Our Circuit Court has set a high standard for irreparable injury. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). While not easily defined, certain factors aid in determining whether the requirement of irreparable harm has been met. *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). First, the injury must be both "certain and great" and "actual not theoretical." *Id.* Indeed, "the threatened injury must be of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm, because injunctions are not intended to prevent injuries neither extant nor presently threatened, but only merely feared." *Ass'n of Flight Attendants-CWA, AFL-CIO v. Pension Benefit Guar. Corp.*, 372 F. Supp. 2d 91, 101 (D.D.C. 2005) (quotations and citations omitted). "Even more important, the plaintiffs must show that the injury will be impossible to correct or redress after it occurs: the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Found. Health Fed. Services v. United States*, 1993 WL 738426, at *2 (D.D.C. 1993) (quotations and citations omitted); *see also Wis. Gas Co.*, 758 F.2d at 674. Finally, economic loss does not, in and of itself, constitute irreparable harm. *Wis. Gas Co.*, 758 F.2d at 674 ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough.").

Here, St. Croix alleges that it will suffer "irreparable harm" if Interior is permitted to make the Part 151 determination first because doing so presumably will somehow

cause Interior to proceed thereafter to "deny the Beloit application as well as a number of other pending off-reservation casino applications submitted by other Tribes." (Pl.'s Mem. Supp. [Dkt. #4] 11.) Such a denial, plaintiff contends, would mean the loss of "approximately $1 million which the St. Croix has spent to date in its efforts to have a Beloit casino" and the revenue that the St. Croix anticipated generating from the Beloit casino. (*Id.* at 25.)

Unfortunately for plaintiff, however, its position is based entirely on pure speculation about how the Department will rule on the Part 151 determination, and ultimately, its application. Such speculation is legally insufficient to constitute the irreparable harm necessary to warrant injunctive relief. *See, e.g., Ass'n of Flight Attendants-CWA*, 372 F. Supp. 2d at 101 (where plaintiff's alleged injuries were dependent upon termination proceedings that had not yet occurred, the court held that "none of the [alleged] injuries is sufficiently imminent to warrant a preliminary injunction"); *Power Mobility Coalition v. Leavitt*, 2005 WL 3312962, at *11 (D.D.C.) (where plaintiff's injuries were based on the prediction that its claims would be denied under newly promulgated regulations, court found no irreparable harm). Moreover, St. Croix has made no showing that its injuries cannot be redressed in the ordinary course of litigation.[5] Indeed, because plaintiff's injuries are purely economic in nature, St. Croix can be made whole at a later time if and when the defendants' conduct is determined to

---

[5] St. Croix has presented no explanation – beyond the possible additional cost of litigating the ultimate denial of the Beloix application – why it would be any worse off if the review of its claims were to proceed along an ordinary litigation schedule. (*See* Hr'g Tr. 19:6-20:9.)

6

be invalid. Accordingly, the Court finds that plaintiff has failed to demonstrate a substantial likelihood of irreparable injury.

**B.  *Likelihood of Success on the Merits***

A preliminary injunction is additionally unwarranted in this case because St. Croix is unlikely to succeed on the merits. Indeed, plaintiff has failed to even demonstrate that the Court has the necessary authority under the APA to reach the merits of this dispute. How so?

A district court's authority to review the conduct of an administrative agency is limited to cases challenging "final agency action." *See* 5 U.S.C. § 704. An agency action is deemed final if it is "definitive" and has a "direct and immediate . . . effect on the day-to-day business" of the party challenging the agency action. *F.T.C. v. Standard Oil Co.*, 449 U.S. 232, 239 (1980) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967)). Final agency action "mark[s] the consummation of the agency's decisionmaking process" and is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotations and citations omitted). Here, St. Croix contends that the Skibine Letter constitutes a final agency action because it reflected Interior's decision to make the Part 151 determination prior to the two-part determination and "was expected to have concrete legal significance to the Tribes." (Pl.'s Mem. Supp. 16.) Plaintiff's claims that the Skibine Letter amounts to a final agency action, however, are unsubstantiated and without merit.

The Skibine Letter clearly does not "mark the consummation of the agency's decisionmaking process," *Bennett*, 520 U.S. at 178 (quotations and citations omitted), as

7

Interior "has not yet made any determination or issued any order imposing any obligation on [St. Croix], denying any right of [St. Croix], or fixing any legal relationship." *Reliable Automatic Sprinkler Co. v. Consumer Product Safety Com'n*, 324 F.3d 726, 732 (D.C. Cir. 2003). Simply stated, the Skibine Letter does not make an ultimate determination on the Beloix application, nor does it impose any additional procedures or obligations on St. Croix. (*See* Hr'g Tr. 39:24-40:8.) Additionally, the fact that judicial review may be completely obviated when Interior completes its review of the Beloix application further emphasizes the prematurity of plaintiff's claim. *See Beverly Enterprises, Inc. v. Herman*, 50 F. Supp. 2d 7, 12 (D.D.C. 1999) ("When completion of an agency's processes may obviate the need for judicial review, it is a good sign that an intermediate agency decision is not final.") (quoting *DRG Funding Corp. v. Secretary of Hous. & Urban Dev.*, 76 F.3d 1212, 1215 (D.C. Cir. 1996)). In fact, St. Croix conceded as much at oral argument when it acknowledged that this case will be entirely moot if its application is granted, and, on the other hand, if it is denied, St. Croix will be back in federal court seeking judicial review of Interior's decision. (*See* Hr'g Tr. 42:17-18; 49:21-50:11.) Accordingly, the Court concludes that St. Croix is unlikely to succeed on the merits because the Skibine Letter is not a final agency action that warrants judicial review at this time.

## CONCLUSION

For the foregoing reasons, this Court DENIES plaintiff's Motion for Preliminary Injunction. An appropriate Order will issue with this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge