IN THE UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS ) <br> OF WISCONSIN ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DIRK KEMPTHORNE, et al. ) <br> ) <br> Defendants. ) <br> _____ ) | Civ. No. 1:07-cv-02210-RJL <br> Next Scheduled Court Deadline:  None |

**PLAINTIFF'S MOTION FOR**
**STAY OF THIS COURT'S ORDER OF FEBRUARY 21, 2008**

The Plaintiff, the St. Croix Chippewa Indians of Wisconsin (the "St. Croix Tribe"), by and through counsel, hereby moves this Court, pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, for a stay of its Order dated February 21, 2008 (denying Plaintiff's Motion for a Preliminary Injunction) [#35].  The requested stay is until the D.C. Court of Appeals has issued a decision on Plaintiff's appeal of this Court's Order which Plaintiff will file immediately after this Court rules on the present motion.

The Court's attention is respectfully directed to the Memorandum of Points and Authorities filed in support hereof.  A proposed Order is appended to this motion.

153330

WHEREFORE, for the premises stated, the Plaintiff requests that its Motion be granted.

        Respectfully submitted,

         /s/ Robert M. Adler
Robert M. Adler, Bar #62950
Gerald H. Yamada, Bar #194092
O'CONNOR & HANNAN, L.L.P.
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
(202) 887-1428
Fax:  (202) 785-4047
Radler@oconnorhannan.com
Gyamada@oconnorhannan.com

*Attorneys for the St. Croix Chippewa Indians of Wisconsin*

Of Counsel:
Andrew Adams, III
St. Croix Chippewa Indians of Wisconsin
24663 Angeline Avenue
Webster, WI 54893

Dated:  March 13, 2008

153330

2

IN THE UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS ) <br> OF WISCONSIN ) <br> ) <br>     **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> DIRK KEMPTHORNE, et al. ) <br> ) <br>     **Defendants.** ) <br> ) | Civ. No. 1:07-cv-02210-RJL <br> Next Scheduled Court Deadline: None |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS MOTION FOR
<u>STAY OF THIS COURT'S ORDER DATED FEBRUARY 21, 2008</u>**

The Plaintiff, the St. Croix Chippewa Indians of Wisconsin (the "St. Croix Tribe"), hereby submits this memorandum in support of the above-referenced motion.

**I.      INTRODUCTION**

On December 7, 2007, the St. Croix Tribe filed its Complaint herein against Federal Defendants, Secretary Dirk Kempthorne and Assistant Secretary Carl Artman. On January 10, 2008, the St. Croix Tribe filed its First Amended Complaint.

In its First Amended Complaint, the Plaintiff asserted in ¶¶ 26-39 that the Department of the Interior, in making decisions on pending off-reservation applications, had historically made the two-part IGRA determination first -- and, if that decision gained the concurrence of the Governor, then a determination under Part 151 would then be made. In this litigation, the Federal Defendants have not challenged this assertion as to the prior historical practice or the fact that this practice was changed during the Summer of 2007 by deciding to make the Part 151 decision first. Further, the Federal Defendants have at no point asserted that, after changing its

153330

historical practice, the public was provided with a notice of the change or the reasons leading to the change. Instead, the record in this case is that the only written acknowledgment from the Interior Department that the Part 151 decision by its Central Office would be made prior to the Section 20 IGRA determination appeared in the form of a letter dated August 21, 2007 from George Skibine to Plaintiff's counsel. Complaint, ¶ 29. ("Skibine letter").

Count I of the First Amended Complaint asserted, *inter alia*, that, in violation of 5 U.S.C. § 706(2)(A), the actions by the Federal Defendants were unlawful in that they caused the Department of the Interior to depart from its established practice of making the two-part determination prior to the Part 151 determination without the requisite notice to Indian tribes or the public at large that the Interior Department had changed its practice and procedure. Amended Complaint, ¶ 58. Further, the Department of the Interior likewise failed to offer a reasoned explanation supporting its change in historical practice and procedure. Id. In addition, the Amended Complaint alleged that in deciding to make the Part 151 determination prior to the two-part determination, the Interior Department had acted contrary to Congressional intent expressed in IGRA (and its legislative history) and had failed to publicly articulate its reasoning as to why the new practice and procedure remained consistent with Congressional intent. Id.

On December 10, 2007, the Plaintiff filed its Motion for a Preliminary Injunction. It was supported by the Declaration of St. Croix Tribal Chairwoman Hazel Hindsley and the Affidavit of its lead counsel, Robert M. Adler. The Motion sought to enjoin the Federal Defendants from implementing or otherwise carrying out the Department of the Interior's recently announced procedure of making the Part 151 determination prior to the two-part determination with respect to the Plaintiff and the Bad River Band's pending off-reservation fee-to-trust application for gaming purposes in Beloit, Wisconsin ("Beloit Application"), as well as with respect to pending

off-reservation fee-to-trust applications for gaming purposes submitted by other Indian tribes. It also sought to enjoin the Federal Defendants from making any decision or determination with respect to the Beloit Application (as well as for making any decisions or determinations with respect to similar off-reservation applications filed by other Indian tribes to take land into trust for gaming purposes) unless the Department of the Interior first made the required two-part determinations appearing in 25 U.S.C. § 2719(b)(1)(A) (IGRA).

The Plaintiff's Motion for a Preliminary Injunction was based on the <u>uncontroverted</u> facts that: (1) the Department of the Interior historically had made the two-part determination prior to the Part 151 determination; (2) this practice was changed during the Summer of 2007 so that the Part 151 determination was to be made prior to the two-part determination; (3) there was no statement to the Plaintiff, to other Indian tribes or the public at large that this change in procedure had taken place; and, (4) similarly, there was no statement to the Plaintiff, other Indian tribes or the public at large of the reasons for this change in procedure. These uncontroverted facts were supported by the Declaration of St. Croix Tribal Chairwoman Hazel Hindsley and the Affidavit of its counsel, Robert M. Adler, together with the exhibits appended to the Affidavit of Mr. Adler. The Federal Defendants at no point offered any affidavit to counter any of these facts.

Despite these established facts, and the clear holdings by the D.C. Circuit, this Court denied Plaintiff's Motion for a Preliminary Injunction by its Memorandum Opinion of February 21, 2008 ("Memorandum Opinion") [#34]. It did so on two grounds: (1) the Plaintiff had not shown irreparable injury; and, (2) there was no substantial likelihood of success because there had not been final agency action. The Plaintiff submits that these holdings are contrary to

the well established case law in this circuit. Its counsel will file an appeal immediately upon this Court's ruling on the present motion.

## ARGUMENT

The four factors which govern whether a stay should be granted are the same as those the Court considered when assessing the Plaintiff's Motion for a Preliminary Injunction:

> (1) Has the petitioner made a strong showing that it is likely to prevail on the merits of its appeal?...(2) Has the petitioner shown that without such relief, it will be irreparably injured…(3) Would the issuance of a stay substantially harm other parties interested in the proceedings?...(4) Where lies the public interest?....

Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977) (citing Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921, 925 (D.C. Cir. 1958)). Just as courts in this Circuit employ a "sliding scale" when analyzing these factors in light of a request for a preliminary injunction, they take the same analytic approach when assessing a request for a stay. Sociedad Anonima Vina Santa Rita v. United States Dep't of the Treasury, 193 F.Supp.2d 6, 13 (D.D.C. 2001); see also Holiday Tours, Inc., 559 F.2d at 843 ("when confronted with a case in which the other three factors strongly favor interim relief [we hold a court] may exercise its discretion to grant a stay if the movant has made a substantial case on the merits.") Thus, a "stay may be granted with either a high probability of success and some injury, or vice versa." Cuomo v. United States Nuclear Regulatory Commission, 772 F.2d 972, 974 (D.C. Cir. 1985) (emphasis added). The relief afforded by a stay pending appeal is "preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit." Holiday Tours, Inc., supra at 844. A stay herein will ensure the maintenance of the status quo.

A.      **The Plaintiff Has a Substantial Likelihood of Success on Appeal.**

In order to justify a stay pending appeal, a movant need not demonstrate a "mathematical probability" of prevailing on the merits. Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977). This Circuit has held that when the other three factors irreparable injury to movant, no substantial harm to other interested parties and the public interest) strongly favor interim relief, a stay may be granted "if the movant has made a substantial case on the merits." Id. at 843. A court may grant a stay "even though its own approach may be contrary to [the] movant's view of the merits." Id. More recently, this Circuit has ruled:

> To justify the granting of a stay, a movant need not always establish a high probability of success on the merits. Probability of success is inversely proportional to the degree of irreparable injury evidenced. A stay may be granted with either a high probability of success and some injury, or *vice versa.*

Cuomo v. U.S. Nuclear Regulatory Comm'n, supra at 974 (emphasis added).

**(1)     There has been final agency action.**

In its supporting memorandum filed in support of its motion for a preliminary injunction [#4], the Plaintiff asserted at 16-21 that the Department of the Interior had failed to comply with the requirements set out by the Supreme Court in Motor Vehicle Manufacturers Association of the United States, Inc  v. State Farm Mutual Automobile Insurance Company, 463 U.S. 29 (1983). The present record herein conclusively establishes that the Federal Defendants violated State Farm. In State Farm, the Court held that an agency's change of direction in policy is "arbitrary and capricious" if it fails to supply a reasoned analysis for the change or if the agency relied on factors which Congress had not intended it to consider. Two decisions from the Second Circuit Court of Appeals followed State Farm. See Yale-New Haven Hospital et al. v. Leavitt,

470 F.3d 71 (2nd Cir. 2006) and Fox TV Stations v. Federal Communications Commission, 489 F.3d 444, 457 (2nd Cir. 2007), petition for cert. filed (U.S. Nov. 1, 2007) (07-582). The D.C. Circuit, in a number of decisions, similarly interpreted the strict requirements of State Farm. See Ramaprakash v. Federal Aviation Administration, et al., 346 F.3d 1121, 1124 (D.C. Cir. 2003); New York Cross Harbor Railroad v. Surface Transportation Board, et al., 374 F.3d 1177, 1183 (D.C. Cir. 2004); and Owner-Operator Independent Drivers Association, Inc. v. Federal Motor Carrier Safety Administration, 494 F.3d 188, 203 (D.C. Cir. 2007), reh'g. en banc. denied, 2007 U.S. App. Lexis 23114 (D.C. Cir. Sept. 28, 2007).

It is clear, starting with State Farm and continuing with cases from the D.C. Circuit following it, that if an agency fails to comply with the requirement that a public statement be made that a policy or procedural change had taken place, accompanied by a satisfactory statement of the reasons for the change, the action is "arbitrary and capricious" under the APA. There has never been any suggestion by the D.C. Circuit in any of the above cited decisions that an action cannot be brought (or is premature) because the agency has not actually proceeded to made decisions or taken actions under the new policy or procedure. This pre-condition to there being final agency action was the stated rationale of the Memorandum Opinion. The Plaintiff submits that the D.C. Circuit does not share this view.

That final agency action may exist prior to economic injury of an aggrieved party was also made clear by the D.C. Circuit in James V. Hurson Associates v. Dan Glickman, Secretary of the United States Department of Agriculture, et al., 229 F.3d 277, 284 (D.C. Cir. 2000). There, the Court held that an action could properly be asserted under a State Farm theory at the time the agency had changed procedures. There was no suggestion by the Court that there was

153330                                    6


no "final agency action" until the plaintiff actually suffered monetary damages as a result of the procedural change.

The same rationale is evident in several cases decided by the D.C. Circuit where there has been a challenge under the APA to an agency's guidance memorandum or directive. In none of these cases did the Court hold or even suggest that there was no "final agency action" because the guidance memorandum or directive in question had not actually been used to make an actual decision in implementation of the new policy. See General Electric Company v. Environmental Protection Agency, 290 F.3d 377 (D.C. Cir. 2002) (guidance memorandum invalid in that the agency promulgated it without going through rule making); Croplife America, et al. v. Environmental Protection Agency, et al., 329 F.3d 876 (D.C. Cir. 2003) (EPA directive in a press release invalid because it did not comply with the APA's rule making requirements); and, Cement Kiln Recycling Coalition v. Environmental Protection Agency, et al., 493 F.3d 207 (D.C. Cir. 2007) (guidance document was valid because it was not binding on its face on decision makers).

A very recent decision demonstrating there has been final agency action herein is John Chiang v. Dirk Kempthorne, 503 F.Supp.2d 343 (D.D.C. 2007). The plaintiff therein challenged guidelines issued by the Interior Department's Mineral Management Service. The Interior Department argued that the guidelines were merely an explanatory policy statement and did not bind the Department in any way. Chiang, supra at 349. However, the Court found that the guidelines were both binding on their face and had been applied by the agency in a binding fashion. Chiang, supra at 350. In determining these "definitive pronouncements," the Court found that the language within the guidelines was mandatory. The District court began its analysis of "final agency action" by starting with the Supreme Court's decision Bennett v. Spear,

520 U.S. 154, 177-78 (1997). Chiang, supra at 350. Under Bennett, in order for an agency action to be "final" there are two prongs which must be satisfied. The first is that it must mark the "consummation" of the agency's decision making process. Id. The second is that rights or obligations have been determined or from which legal consequences will flow. Id. The Skibine letter clearly demonstrates decision making process had clearly been consummated and the Federal Defendants do not contend otherwise. Thus, the first prong has been satisfied. With regard to the second prong, the Court in Chiang, supra at 350, looked to the D.C. Circuit's decision in General Electric Company v. EPA, supra as well as to its decision in National Association of Home Builders v. United States Army Corps of Engineers, 417 F.3d 1272, 1279 (D.C. Cir. 2005) (which discussed Croplife in conducting its finality analysis). According to the Court in Chiang, judicial reviewability turns on the ultimate question of whether the agency action bound the private parties or the agency itself with the "force of law." Id. The letter, in turn, depended on whether the agency's action appeared on its face to be binding or is applied by the agency in a way that indicated it was binding. Id. This factor alone makes the Department of the Interior's decision to make the Part 151 determination first a final agency action. However, for some reason, the Memorandum Opinion failed to consider or apply it. Instead, the Court's Memorandum Opinion at 8 focused exclusively on Bennett's "rights and obligations" test (for the St. Croix Tribe). Ignored was the alternative test (applied by Chiang and the D.C. Circuit cases decided therein) of whether "legal consequences will flow" to the agency itself. The Plaintiff respectfully submits it was in error for this Court to have ignored that test.

In addition, although no decision has been made on the Beloit Application, the decision to make the Part 151 determination first had legal consequences which will flow for the Plaintiff. Bennett, supra at 177-78. That decision meant that Congressional intent was thwarted. As a

result, the Plaintiff (and other Indian tribes) no longer had the rights and protection of having their off-reservation casino applications determined under IGRA with respect to the issue of whether the proposed casino was in the best interests of the St. Croix Tribe and the Bad River Band. The D.C. Circuit has held, in similar circumstances, that there is final agency action. In National Association of Home Builders v. United States Army Corps of Engineers, et al., supra, there was an APA challenge to several nationwide permits issued under the Clean Water Act. Home Builders, supra at 1276. No particular permit had been granted or denied. The District Court first held, in granting summary judgment to the Corps, that the issuance of the nationwide permits and general conditions, ". . .while constituting the completion of a decisionmaking process, does not constitute a 'final' agency action because no legally binding action has taken place as to any given project until either an individual permit application is denied or an enforcement action is instituted." Home Builders, supra at 1277. The District Court further based its decision on the premise that a party "is not legally denied anything until [his] individual permit is rejected." Home Builders, supra at 1278. This rationale is strikingly similar to the approach of this Court in its Memorandum Opinion.

  On appeal, the D.C. Circuit acknowledged that before it was the question of whether the Corps had taken "final agency action" subject to challenge under the APA and, if so, whether appellant's challenge was ripe for review. Home Builders, supra at 1278. The Court held that there was final agency action. Id. The Court reasoned that even though no action had been taken on any specific application, the challenged nationwide permits carried "easily identifiable legal consequences" for would-be developers. Home Builders, supra at 1279. In so holding, the Court relied on Bennett v. Spear, 520 U.S. 154, 177-78 and Reliable Automatic Sprinkler Co. v. Consumer Product Safety Commission, 324 F.3d 726, 731 (D.C. Cir. 2003). The Plaintiff

submits that Home Builders and the other above-cited cases from the D.C. Circuit, make it abundantly clear that there has been final agency action (in deciding to make the Part 151 determination first) even though no decision has been made on the pending Beloit casino application.

The cases this Court relied on in its Memorandum Opinion in support of its holding that there was no "final agency action" are all distinguishable, and indeed, ignore the D.C. Circuit's own articulation of "final agency action" in circumstances similar to those presented herein. In Reliable Automatic Sprinkler Co., Inc. v. Consumer Product Safety Commission, 324 F.3d 726 (D.C. Cir. 2003) (Memorandum Opinion at 8), the Consumer Product Safety Commission ("Commission") informed Reliable that it intended to make a preliminary determination that its sprinkler heads presented a substantial product hazard. The Commission also requested Reliable to undertake voluntary corrective action. It was undisputed that the Commission had yet to issue a complaint, had not authorized or conducted a hearing, or determined conclusively that it had jurisdiction to regulate. The Commission also not determined whether sprinkler heads in fact presented a "substantial product hazard." Reliable, supra at 729. Instead, according to the court, the Commission had ". . .merely conducted an investigation and issued a letter requesting voluntary compliance." Id. The court held that this did not constitution "final agency action." This decision is fundamentally distinguishable from the case at bar wherein, with finality, the Department of the Interior has adopted a new procedure for making off-reservation casino determinations. Reliable, on the other hand, presented the situation where the party was at the initial stages of an administrative proceeding brought or which might have been brought by the Commission.

153330                                                    10

The Memorandum Opinion at 8 also relied on <u>Beverly Enterprises, Inc. v. Herman</u>, 50 F.Supp.2d 7, 12 (D.D.C. 1999). In that case, the plaintiff, owners and operators of a number of health care facilities, asserted that regulations promulgated by the Department of Labor exceeded its authority under the statute (the Immigration Nursing Relief Act of 1989). The Court held that three counts of the Complaint did not implicate final agency action in that the plaintiff had undertaken an administrative appeal of the Administrator's determination that it had violated both the Department of Labor regulations and the underlying statute. This case is totally dissimilar to the facts herein where the Plaintiff has not initiated an administrative proceeding.

Finally, the Memorandum Opinion at 8 placed reliance on <u>DRG Funding Corp. v. Secretary of Housing and Urban Development, et al.</u>, 76 F.3d 1212 (D.C. Cir. 1996). In that case, DRG invoked HUD's administrative review procedures. <u>DRG Funding</u>, <u>supra</u> at 1213. After the ALJ denied the corporation's demand for dismissal (and request for reconsideration), the motion was certified for review by the Secretary of HUD. <u>DRG Funding</u>, <u>supra</u> at 1213-1214. A designee of the Secretary issued a "determination" affirming the ALJ's decision and directing the ALJ to proceed with the administrative process in accordance with HUD's regulations. <u>DRG Funding</u>, <u>supra</u> at 1214. However, rather than proceeding at the administrative level, the corporation filed suit in the District Court. The D.C. Circuit held that the ruling of the Secretary did not constitute final agency action in that the administrative proceedings had not been completed. <u>DRG Funding</u>, <u>supra</u> at 1214-1215. Once again, this decision is distinguishable from the case at bar wherein the Plaintiff has not undertaken any administrative proceedings. Instead, the agency action complained of herein has been fully consummated.

The Plaintiff submits that the decisions relied on by this Court in the Memorandum Opinion for its determination that there was no "final agency action" are not in accord with the prevailing law in this circuit and that there is therefore a substantial likelihood of success with respective Plaintiff's contention that there has been final agency action.

**(2)     There has been irreparable harm to the Plaintiff.**

In the Memorandum Opinion at 5-7, the Court determined that the Plaintiff had failed to demonstrate that, absent injunctive relief, it will suffer irreparable harm. In so holding, the Court has incorrectly characterized the Plaintiff's position as being premised on how the Department of the Interior will rule on the Part 151 determination which the Court views as being ". . .based entirely on pure speculation. . . ." Memorandum Opinion at 6. Following from this incorrect premise, the Court then relied on two decisions, Association of Flight Attendants-CWA v. Pension Benefit Guar. Corp., 372 F.Supp.2d 91, 101 (D.D.C. 1005) and Power Mobility Coalition v. Leavitt, 2005 WL 3312962, at *11 (D.D.C. Dec. 7, 2005). Id. Neither of those decisions, however, has any bearing on the issues presented herein.

In Association of Flight Attendants, supra at 101, no "irreparable harm" was found for a number of reasons, including, ". . .whether an injunction would have any effect on union members' decisions whether to quit their jobs at United"; and the asserted anticipated economic injuries (such as the forced sale of a house, boat or stock) do not rise to the level of required "irreparable harm." In Power Mobility Coalition, supra, the Court held that there was no irreparable harm because the plaintiffs' claim that enforcement of the new regulations would force them out of business was, at best, remote and speculative. Power Mobility Coalition, supra at *12.

The Court has misconstrued Plaintiff's claim of irreparable injury. It is <u>not</u> the anticipated economic loss associated with the denial of its application. As set forth in its Memorandum filed in Reply to the Federal Defendants' Memorandum of Points and Authorities response to the Plaintiff's Motion for a Preliminary Injunction at 22 [#16], the Plaintiff specifically pointed out that the Federal Defendants had misperceived that anticipated economic harm was the irreparable injury claimed by the Plaintiff for purposes of the requested preliminary injunction. However, as the Plaintiff pointed out in this Memorandum, its irreparable injury claim was based on the <u>procedural harm</u> which had occurred -- the violation of <u>State Farm</u>, and that any further determinations under it are contrary to the APA. The Plaintiff proceeded in its Memorandum at 22 to discuss, in support of this proposition, the D.C. Circuit's decision in <u>National Wildlife Federation v. Burford, et al.</u>, 835 F.2d 305, 325 (D.C. Cir. 1987).

In <u>National Wildlife Federation</u>, the plaintiff challenged the Department of the Interior's lifting of protective restrictions pertaining to some 180 million acres of Federal land. The plaintiff asserted that, in lifting these protective restrictions, the Department of the Interior improperly ignored statutory provisions which subjected the release of land from the public reserve to careful procedural protections. <u>National Wildlife Federation</u>, <u>supra</u> at 306. The plaintiff sought an injunction prohibiting the Department of the Interior from taking any action inconsistent with these restrictions. <u>Id</u>. The District Court granted the injunction finding that, unless enjoined, the Department of the Interior's actions in lifting protective land restrictions would irreparably injure the plaintiff's members. <u>National Wildlife Federation</u>, <u>supra</u> at 310. On appeal, one of the appellants (Mountain States) asserted that the plaintiff must demonstrate, as a

matter of fact, that its members had <u>already</u> suffered irreparable injury from the Department of the Interior's actions.[1]

The Court of Appeals' response to this assertion was: "This contention is absurd. A preliminary injunction is designed to <u>prevent</u> irreparable injury; its value would be totally eviscerated if the plaintiff had to show that the harm had already occurred before the court could issue the injunction." (emphasis in original).  <u>National Wildlife Federation</u>, <u>supra</u> at 325.

Mountain States also asserted that the plaintiff could not show irreparable injury because the potential irreparable harm was too remote -- with the exception of local mining claims, according to Mountain States, all other forms of injury were dependent on the Secretary actually exercising his discretion to permit injury. <u>Id</u>. Once again, the Court rejected this argument, stating at 325:

> Mountain States appears to misunderstand the purpose of the preliminary injunction; it is designed precisely to prevent the Secretary from exercising his discretion in circumstances in which it likely would lead to irreparable injury.

The Plaintiff submits that this decision is controlling herein. Injunctive relief should properly be granted so that the Interior Department is prohibited to exercise its discretion ". . .in circumstances in which it would likely lead to irreparable injury."

While the Court in its Memorandum Opinion did not reach this issue, there can be no real doubt but that the Department of the Interior's decision to make the Part 151 decision first (without publicly stating it and providing reasons for its change in procedure) was not in compliance with the requirements set out in <u>State Farm</u>. Accordingly, the procedural harm to the

---

[1] This contention is similar to that made by the Federal Defendants herein and is in line with this Court's Memorandum Opinion holding that the Plaintiff's economic injury was speculative.

Plaintiff (and other Indian tribes) has already taken place. The recent holding by the First Circuit Court of Appeals in <u>Nulankeyutmonen Nkihtaqmikon v. Impson</u>, 503 F.3d 18, 28 (1st Cir. 2007) is instructive on this point. It held, following an earlier decision in that Circuit (<u>Sierra Club v. Marsh</u>, 872 F.2d 497, 500 (1st Cir. 1989)) that the "irreparable harm" consists of the "added risk" to the environment which takes place when governmental officials make up their minds without having complied with the procedural requirements.. So too in the circumstances presented herein. The Plaintiff, and other Indian tribes, have suffered procedural injury which has created "the added risk" that the Department of the Interior will deny pending off-reservation casino applications using an unlawful process. Indeed, this has already taken place with respect to the eleven applications denied under Part 151 by the Interior Department on January 4, 2008.

The Plaintiff submits that there is a great likelihood that the D.C. Circuit will find, contrary to this Court's decision, that the Plaintiff has and will continue to suffer irreparable harm by the failure to grant the requested injunctive relief.

**(3)** **<u>Without a Stay of This Court's Order, the Plaintiff Will Be Irreparably Injured</u>.**

As set forth above, the Plaintiff submits that it is likely to prevail an appeal of this Court's denial of its Motion for a Preliminary Injunction. As described above, without a stay, the Plaintiff submits that it will be irreparably injured. The Department of the Interior will, in all probability, proceed to deny the Plaintiff's application under its legally flawed procedure making the Part 151 determination first. The denial of the Plaintiff's application is not (unfortunately) "speculative" as this Court suggests. Instead, the eleven denials of similar applications to date forecast the destiny of the Beloit Application. As set forth in the Amended Complaint, and in the Plaintiff's First and Second Motions for a Preliminary Injunction, the Department of the Interior

has created, and is using, a legally flawed process from beginning to end. A stay of this Court's Order of February 21, 2008 should be entered until the D.C. Circuit has had an opportunity to review and decide the issues presented.

**(4)    The Issuance of a Stay Will Not Substantially Harm Other Parties Interested in the Proceedings.**

The Plaintiff submits that the issuance of a stay will not substantially harm the Department of the Interior. While it has already issued eleven denial letters, a stay until the D.C. Circuit can rule on whether or not the Department of the Interior has complied with State Farm cannot be said to harm the Federal Government. There is no pressing need to issue additional denial letters. And it is evident that the Indian tribes which have not, to date, received denial letters would presumably prefer to have the legal issues first resolved by the D.C. Circuit before having to contend with receiving denial letters and thereafter filing lawsuits contesting them.

**(5)    The Public Interest Would Be Best Served by the Issuance of a Stay.**

The Plaintiff submits that the public interest will be best served by the issuance of a stay so that the D.C. Circuit can decide whether injunctive relief should have been granted. Contrariwise, the public interest would be ill-served by allowing the Department of the Interior to continue to make determinations or decisions under a legally-flawed process so that the Plaintiff and other Indian tribes will be left to incurring the significant costs of litigation to contest both the substantive result and the legality of the process used by the Department of the Interior in making negative determinations.

## CONCLUSION

For the foregoing reasons, the Plaintiff submits that this Court should enter a stay of its Order of February 21, 2008.

                                                Respectfully submitted,

                                                /s/ Robert M. Adler
                                              Robert M. Adler, Bar #62950
                                              Gerald H. Yamada, Bar #194092
                                              O'CONNOR & HANNAN, L.L.P.
                                              1666 K Street, N.W., Suite 500
                                              Washington, D.C. 20006-2803
                                              (202) 887-1428
                                              Fax: (202) 785-4047
                                              Radler@oconnorhannan.com
                                              Gyamada@oconnorhannan.com

                                              *Attorneys for the St. Croix Chippewa*
                                              *Indians of Wisconsin*

                                              Of Counsel:
                                              Andrew Adams, III
                                              St. Croix Chippewa Indians of Wisconsin
                                              24663 Angeline Avenue
                                              Webster, WI 54893

Dated: March 13, 2008

IN THE UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN )<br><br>Plaintiff, )<br><br>v. )<br><br>DIRK KEMPTHORNE, et al. )<br><br>Defendants. ) | Civ. No. 1:07-cv--02210-RJL |

**[PROPOSED] ORDER**

Upon consideration of the Plaintiff's Motion for a Stay of this Court's Order dated February 21, 2008 filed pursuant to Rule 62(c) of the Federal Rules of Civil Procedure, and any opposition thereto, and the entire record herein, it is this _____ day of _____, 2008

HEREBY ORDERED that the Plaintiff's Motion be and is hereby granted. This Court's Order of February 21, 2008 is hereby stayed pending a decision by the D.C. Circuit Court of Appeals on the Plaintiff's appeal of that Order (which Plaintiff's counsel has represented will immediately be filed upon receipt of this Court's decision on Plaintiff's Motion to Stay).

SO ORDERED.

---

RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

153331