IN THE UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS ) OF WISCONSIN ) ) Plaintiff, ) ) v. ) ) DIRK KEMPTHORNE, et al. ) ) Defendants. ) ) | Civ. No. 1:07-cv--02210-RJL<br><br>Next Scheduled Court Deadline: None |

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR A
<u>STAY OF THIS COURT'S ORDER OF FEBRUARY 21, 2008</u>**

The Plaintiff, the St. Croix Chippewa Indians of Wisconsin (the "St. Croix Tribe" or the "Plaintiff"), by and through counsel, hereby submits its Reply to the Defendants' Response to Plaintiff's Motion for a Stay of This Court's Order of February 21, 2008.

**I.  THE SKIBINE LETTER REFLECTS AND STATES THE CONSUMMATION
OF THE INTERIOR DEPARTMENT'S DECISION MAKING PROCESS.**

The Defendants argue that the Plaintiff misconstrues the Skibine letter in that it "was not a reviewable culmination of any agency re-thinking of the fee-to-trust application process for gaming." Defendants' Opposition ("Opposition") at 3-4.

In so asserting, the Defendants continue to ignore the pertinent issue. Plaintiff is challenging the decision to make the Part 151 determination first. It is clear, and indeed uncontested by the Defendants, that this decision had been made at some date prior to the August 21, 2007 Skibine letter. For reasons which are unclear, the Interior Department decided not to provide Indian tribes or the public at large with written notice of this policy change. The

153811

Skibine letter is the earliest known confirmation of it.[1]  Thus, there is no doubt that by August 21, 2007, there had been a final decision by the Interior Department to make the Part 151 determination first.  The decision was not tentative or preliminary -- it had been made and the Defendants do not claim otherwise.  What obviously had not, and has not, taken place is any decision by the Interior Department on the Beloit application itself.  The Plaintiff submits that under the clearly established case law in this circuit, there has nonetheless been final agency action under the APA.

In attempting to escape the holding in Chiang v. Dirk Kempthorne, 503 F. Supp.2d 343, 350 (D.D.C. 2007), Defendants argue that "Nothing in the Skibine Letter alters the legal regime for review of fee-to-trust applications for gaming."  Opposition at 4.  Defendants' statement is significant in that by it they have, for the first time in this litigation, correctly acknowledged that this is the real issue posed -- and which must be answered by this Court or the D.C. Circuit -- in determining whether there was final agency action.  If there was a change in the legal regime, there was final agency action.  If there was no legal regime change, there was no final agency action.

The record herein is conclusive that there was a change in the legal regime.  Prior to the summer of 2007, the Interior Department made the two-part determination first.[2]  Its decision to make the Part 151 decision first was of monumental proportions in that the Interior Department

---

[1] This was followed by the September 21, 2007 memorandum from Assistant Secretary Artman to the Regional Directors stating that the Part 151 decision would be made first and later by the eleven denial letters based on Part 151.

[2] The Plaintiff has filed as exhibits to the Affidavit of Robert M. Adler letters from the Interior Department to the Governors of Wisconsin and New York confirming this as well as briefs filed by the Government in federal district court lawsuits describing the decision making process whereby the two-part (IGRA) determination was made first.

decided to ignore the standards mandated by Congress in IGRA (25 U.S.C. § 2719(b)(1)(A)) and substituted instead the standards under Part 151. This is not lessened, as the Defendants argue, by the fact that tribal applications must still gain affirmative approvals under both Part 151 and IGRA. Opposition at 4.[3] It was the Interior Department's decision to reverse its historical policy and procedure which is crucial.

Further, the Defendants are simply incorrect when asserting that the Skibine letter does not bind the Department of Interior. Opposition at 4-5. The point is that the Interior Department has made a final and binding decision to change its procedures. The case law in this Circuit is that such a decision becomes challengeable at that point as final agency action and need not wait until a decision is <u>made</u> on an application.

The Defendants' attempted dismissal of <u>Hurson</u> is noteworthy. (Opposition at 6, n.2). Clearly, the D.C. Circuit believed there had been final agency action. That turned on whether the procedure had been changed -- not whether a notice had appeared in the *Federal Register* as Defendants contend.

---

[3] This is made evident by the eleven denial letters which were based on all of the proposed casinos being beyond a "commutable distance" from the established reservations. That concept was, in turn, based on the January 3, 2008 Guidance Memorandum. This newly crafted theory came despite the fact that the Interior Department's own Indian Gaming Paper of February 20, 2004 [Docket #32] did not believe that distance could be used as a factor in denying an application under IGRA or Part 151. What is presented is a very aggressive, as well as unlawful, effort by the Interior Department to ignore both IGRA and its own recognition of Congressional intent. This document specifically stated that Congress did not intend for distance to be a factor.

Issues relating to the propriety of the Interior Department's review and decision making process for off-reservation casino applications have recently come under Congressional scrutiny. On February 27, 2009, the House Resources Committee held an Oversight Hearing on the January 3, 2008 Guidance memorandum. That hearing led to the introduction by Chairman Rahall of H.R. 5608 which requires prior consultations by the Interior Department with Indian tribes where a policy effecting their interests is under consideration.

## II.    THE DEFENDANTS CONTINUE TO IGNORE STATE FARM.

As they have in the past, the Defendants continue to ignore State Farm which the Plaintiff herein has repeatedly stated is the basis for its claim that there has been final agency action. If an action could not be brought against an agency which had violated State Farm at the time of the violation (rather than waiting until actual decisions were made under the new policy or procedure) then State Farm and the D.C. Circuit cases following it (Ramaprakash, New York Cross Harbor and Owner-Operator) would be reduced to a nullity.

Similarly, the Defendants ignore the cases decided by the D.C. Circuit (General Electric, Croplife and Cement Kiln), upon which the Plaintiff has placed substantial reliance, which have held whether or not guidance memoranda or agency directives complied with the APA's rule making requirements. If the Defendants' contentions herein were correct that there cannot be final agency action until an actual decision is made on an application, then these holdings by the D.C. Circuit would be in error in that there was no final agency action in any of these cases (under the Defendants' theory) in that the Guidance memorandum or agency directive had not actually been applied to a particular individual or entity.

## III.    THE PLAINTIFF WILL SUFFER IRREPARABLE HARM ABSENT A STAY.

In its motion, the Plaintiff places substantial reliance on National Wildlife Federation v. Burford, et al., 835 F.2d 305, 325 (D.C. Cir. 1987) for the proposition that irreparable harm is suffered even though the Secretary's discretion has not actually been exercised in carrying out the agency's challenged policy decision. In their Opposition, the Defendants, once again, digress to the assertion that the Plaintiff has not suffered economic harm. Opposition at 7. However, as

previously stated, that has not been, and is not, the basis of Plaintiff's asserted irreparable injury. Instead, it is the procedural harm (the violation of State Farm and, thereafter, the Secretary's potential exercise of his discretion under the Department of the Interior's new policy of making the Part 151 decision first) which is the basis of Plaintiff's position. See National Wildlife Federation, supra at 325.

### IV. A STAY WILL NOT SUBSTANTIALLY HARM OTHER PARTIES IN THESE PROCEEDINGS AND WOULD BE IN THE PUBLIC INTEREST.

The Defendants assert that a stay will disrupt its established processes and the processing of applications submitted by the tribes. Opposition at 8. Even if that were accurate, the more salient point, ignored by the Defendants in their Opposition, is that the wiser course in furtherance of the public interest, and in the interest of all parties, is to first resolve the legal issues presented in this case relating to the Department of the Interior's new policies and procedures. In that manner, the Department of the Interior will not be required to reverse course in its review of other tribes' applications, or indeed of the Beloit application, should this Court or the D.C. Circuit Court of Appeals find the challenged policies and procedures to be invalid.

## CONCLUSION

For the reasons set forth herein and in the Plaintiff's prior memorandum, its requested stay should be granted.

Respectfully submitted,

    /s/ Robert M. Adler
Robert M. Adler, Bar #62950
Gerald H. Yamada, Bar #194092
O'CONNOR & HANNAN, L.L.P.
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
(202) 887-1400

*Attorneys for the St. Croix Chippewa Indians of Wisconsin*

Of Counsel:
Andrew Adams, III
St. Croix Chippewa Indians of Wisconsin
24663 Angeline Avenue
Webster, WI 54893

Dated: April 3, 2008