## IN THE UNITED STATES THE DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE ST. CROIX CHIPPEWA<br>INDIANS OF WISCONSIN | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civ. No. 1:07-cv-02210-RJL** |
| **v.** | ) | |
| | ) | **Next Scheduled Court Deadline:** |
| **DIRK KEMPTHORNE, et al.** | ) | **Plaintiff's Supplemental Memorandum** |
| | ) | **in Response to the Federal Defendants'** |
| **Defendants.** | ) | **Motion to Dismiss to be filed** |
| | ) | **on or before July 11, 2008** |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM
## IN RESPONSE TO THE
## FEDERAL DEFENDANTS' MOTION TO DISMISS

The St. Croix Chippewa Indians of Wisconsin ("the Plaintiff"), by and through counsel,

hereby submits its Supplemental Memorandum in response to the Federal Defendants' Motion to

Dismiss pursuant to this Court's Order of July 1, 2008.

### Background

In its First Amended Complaint, the Plaintiff challenged, inter alia, a Guidance

Memorandum issued on January 3, 2008 ("Memorandum") by then-Assistant Secretary Carl

Artman. First Amended Complaint, ¶¶ 40-51.[1]  This Memorandum made it clear, in repeated

statements, that its provisions were not simply suggestions of issues or factors which

decisionmakers might consider. Instead, it set forth requirements to be followed by the BIA

Regional Directors and the Office of Indian Gaming located in the BIA's Central Office in

Washington, D.C. before an approval could be given under Part 151 for a tribe's off-reservation

---

[1] A copy of the Guidance Memorandum was appended as Exhibit A to the Affidavit of
Robert M. Adler filed in Support of the Plaintiff's Second Motion for a Temporary Restraining
Order and Preliminary Injunction. [Docket No. 20].

155439

casino application.  See Memorandum, "Implementation of Guidance," pages 2-3, ¶ 1 (". . .the

application should be denied. . ."); and, page 4 (". . .some of the issues that need to be addressed in

the application if the land is to be taken into trust. . ").  The Memorandum established, for the first

time, a "commutable distance" standard to be utilized in determining whether an off-reservation

casino application should be approved.  The Memorandum postulated that if the proposed casino

were located more than a "commutable distance" from the established reservation, Tribal members

may be forced to move away from the reservation to take advantage of job opportunities at the

proposed casino.  In this manner, according to the Memorandum, there could be a "considerable"

negative impact on reservation life.  Memorandum, pages 3-4.  The First Amended Complaint

asserted that, on information and belief, the Interior Department had no evidence, studies or

empirical data to support the new "commutable distance" standard and its asserted negative effect

on reservation life.  First Amended Complaint, ¶¶ 47-48.

As stated, the Memorandum, by its own terms, was binding on its face for both the

Regional Directors and the Office of Indian Gaming.  First Amended Complaint, ¶ 51.  Further, the

Memorandum was applied by the Interior Department in a way which demonstrated that it was, in

fact, binding.  On January 4, 2008, the following day after the Memorandum's issuance, the

Interior Department applied the new "commutable distance" test announced in the Memorandum

and proceeded to deny eleven pending fee-to-trust applications for off-reservation gaming.  First

Amended Complaint, ¶ 51.[2]  A press release issued by the Interior Department on the same date

stated, in pertinent part, that "pursuant to the guidance, the Department of the Interior today issued

---

[2] A copy of these denial letters is appended as Exhibit B to the Affidavit of Robert M. Adler,
filed in Support of Plaintiff's Second Motion for a Temporary Restraining Order and Preliminary
Injunction.  [Docket No. 23].

22 letters to separate tribes with pending applications to take land into trust." First Amended

Complaint, ¶ 51.

Count VI of the First Amended Complaint asserted that the Memorandum promulgated a

substantive or legislative rule (as defined in 5 U.S.C. § 551(4)) as opposed to either an interpretive

rule or a general statement of policy. Count V of the First Amended Complaint further alleged in

its ¶ 71 that, despite this, the Interior Department did not follow the APA's notice and comment

rulemaking requirements. Accordingly, the Memorandum was issued in violation of the notice and

comment rulemaking requirements of 5 U.S.C. § 553(b)(c). Count VII of the First Amended

Complaint further asserted that the Interior Department's issuance of the Memorandum violated its

commitment to conduct prior consultations with Indian tribes in its efforts to "promulgate a new

rule" relating to the proposed standards and review to be used in reaching a determination as to

whether to accept land into trust. First Amended Complaint, ¶ 73. For these reasons, the First

Amended Complaint asserted in this Count that the Memorandum was invalid, unlawful and

unenforceable pursuant to 5 U.S.C. § 706(2)(A) and (D) in that it was not in accordance with law

and without observance of the procedure required by law.

The Federal Defendants filed their Motion to Dismiss on December 21, 2007 -- prior to

the filing by the Plaintiff of its First Amended Complaint. [Docket No. 14]. As made clear by

their supporting memorandum [Docket No. 13], the Federal Defendants' motion was primarily

based on the contention that there had not been any "final agency action" under the APA. This

argument was directed towards the August 21, 2007 letter (the so-called Skibine letter) which

confirmed that the Interior Department would make the Part 151 determination prior to the

Section 20 (IGRA) determination. Federal Defendants' Memorandum at 8-10. The Federal

Defendants also placed substantial reliance on the assertion that the Plaintiff lacked standing to

pursue its claims because it had failed to allege any injury since any injury claim was speculative in that no action had been taken by Interior on the Beloit application. Federal Defendants' Memorandum at 12-13. Finally, the Federal Defendants asserted that the Plaintiff's claims are not ripe for review in that no determination had been made on the Beloit application. Federal Defendants' Memorandum at 15-16.

In the Federal Defendants' reply memorandum filed in support of their Motion to Dismiss [Docket No. 19], they acknowledged that the Plaintiff's First Amended Complaint, and its challenge to the Memorandum, broadened the merits of the case. Federal Defendants Reply Memorandum at 2, n.1. The Federal Defendants noted that their previously asserted "final agency action, standing and ripeness arguments still apply." Id. The Federal Defendants declined to submit a new motion addressing why additional issues raised in the First Amendment Complaint relating to the Memorandum, should be dismissed pursuant to Rule 12(b)(6). Id.

## Argument

The D.C. Circuit has decided a number of cases wherein a Guidance Memorandum, issued by a federal agency, has been challenged on the basis that it failed to comply with the APA's notice and comment (rulemaking) requirements. In none of those cases has the D.C. Circuit held that the underlying District Court action should not have properly been brought because the Guidance Memorandum had not been applied to make a decision or determination carrying out the terms or provisions of the Guidance Memorandum. Instead, the operative analysis by which "final agency action" was determined was whether the Guidance Memorandum was, by its own terms, binding. Herein, there can be no argument that it was not. The Federal Defendants have not suggested otherwise.

155439                                              4

The leading case is <u>General Electric Co. v. Environmental Protection Agency</u>, 290 F.3d 377 (D.C. Cir. 2002). It presented the issue of whether a Guidance Document published by the EPA was a "rule" pursuant to 5 U.S.C. § 551(4).[3] That, in turn, depended on whether the Guidance Document would be considered a legislative rule rather than a statement of policy or an interpretive rule. According to the Court, that issue turned on whether the agency pronouncement was considered binding as a practical matter or if it appeared on its face to be binding. <u>General Electric</u>, <u>supra</u> at 382.

Significantly, for purposes of the Federal Defendants' pending motion to dismiss herein, the EPA argued that the case was not ripe for review for, among other reasons, there had not been final agency action in that the agency would be modifying the document "as needed" and the Court's consideration would be aided by further application of the agency's position to particular facts. <u>General Electric</u>, <u>supra</u> at 380. The Court rejected these arguments. <u>Id</u>. The Court held that whether the Guidance Document was or was not a legislative rule is ". . .largely a legal, not a factual question, turning as it does in this case primarily upon the text of the Document." <u>Id</u>. The Court then held that the Guidance Document was a legislative rule ". . .because on its face it purports to bind both applicants and the Agency with the force of law." <u>Id</u>. The Court further held: "[T]he Guidance Document is final agency action because it marks the consummation of the EPA's decisionmaking process and it determines the rights and obligations of both applicants and the Agency. *See Bennett v. Spear*, 520 U.S. 154, 178, 117 S. Ct. 1154, 1168-69, 137 L.2d 281 (1997)." The Court further rejected the EPA's argument that the Guidance Document was not final because it was subject to change and the EPA had not

---

[3] The Guidance Document had been issued by the EPA without complying with the APA's notice and comment rulemaking requirements.

completed its decisionmaking process regarding the non-cancer impacts of PCBs. Id. Referring

to its earlier decision in Appalachian Power Co. v. EPA, 208 F.3d 1015, 1022 (D.C. Cir. 2000),

the Court stated that the fact that a law may be altered in the future has nothing to do with

whether it was subject to judicial review at the moment. Id.[4] The Court proceeded to vacate the

Guidance Document. General Electric, supra at 385.

The D.C. Circuit's decision in General Electric demonstrably reflects that, as a matter of

law, there has been final agency action herein by Interior's issuance of the Memorandum -- and

that an actual decision by Interior on the Beloit application is irrelevant in reaching this

conclusion.[5]

In Croplife America, et al. v. Environmental Protection Agency, et al., 329 F.3d 876

(D.C. Cir. 2003), at issue was a directive issued by the EPA banning agency consideration of

"third-party" human studies in evaluating the safety of pesticides. The directive was issued in a

press release announcing that, pending further review by the National Academy of Sciences of

the ethical issues posed by EPA's studies, the agency would not consider or rely on any such

studies in its regulatory decisionmaking. Croplife America, supra at 878. The petitioners

asserted that its members would be adversely affected by the announced moratorium and

therefore sought review of the directive as contained in the press release. Id. The petitioners

---

[4] In Appalachian Power, supra at 1023, n.18, the Court rejected the EPA's assertion that the Guidance Document at issue therein was not ripe because ". . .the Court's review would be more focused in the context of a challenge to a particular permit." According to the Court: "We think there is nothing to this." The Court elaborated that whether or not EPA had properly instructed state authorities as to how to conduct the reviews in question ". . .will not turn on the specifics of any particular permit." Id.

[5] The Circuit's holding is also directly applicable to the Federal Defendants' motion to dismiss the portions of the First Amended Complaint relating to the Department of the Interior's decision to make the Part 151 determination prior to the two-part (IGRA) determination. It is beyond dispute that a final decision had been made to make the Part 151 decision first. This was the new rule -- and not just a "suggestion" to BIA decisionmakers.

further contended that the directive was unlawful because it constituted a binding regulation issued without complying with the notice and comment requirements. Id. Finally, they also asserted that the policy was arbitrary and capricious in violation of the APA. Id.

The EPA's argument before the Court centered on its assertions that the matter in dispute was not subject to judicial review, the petitioners lacked standing and the challenge was not ripe for review. Croplife America, supra at 881. However, the Court held that it had "little trouble" in determining that the directive was indeed a binding regulation. That being the case, ". . .the agency's other arguments rapidly fall by the wayside." Id. The Court proceeded to vacate the new rule. Croplife America, supra at 879.

Quite recently, in Cement Kiln Recycling Coalition v. Environmental Protection Agency, et al., 493 F.3d 207 (D.C. Cir. 2007), one of the issues presented was whether or not a guidance document was valid in that it was not promulgated pursuant to the notice and comment rulemaking procedures of the APA. Cement Kiln, supra at 215, 226. In determining whether it had jurisdiction to hear the challenge to the guidance document, the Court analyzed the issue as one turning on whether or not the guidance document was ". . .a final regulation but. . .promulgated in violation of the APA." Cement Kiln, supra at 226. That, according to the Court, turned on whether or not the challenged document was binding. Cement Kiln, supra at 227. The Court held that the document was not binding in that it was replete with statements that its provisions were "recommendations" which the permitting authorities were encouraged to consider. Id. For these reasons, the Court held that the document was not binding on its face and therefore, the Court was without jurisdiction to review it. Cement Kiln, supra at 228.

By contrast, the Memorandum at issue herein was binding on its face. There was no language contained within the four corners of this document to the effect that its provisions were

only "words of suggestion" or "recommendations" to BIA decisionmakers. <u>Cement Kiln</u>, <u>supra</u> at 227. Instead, the Memorandum served as a directive that the new "commutable distance" test must be met. This was confirmed by the eleven denials on the following day. Accordingly, the issue is ripe for determination of this point whether or not the Memorandum failed to comply with the notice and comment provisions of the APA as well as whether it was arbitrary and capricious.

## Conclusion

For the foregoing reasons and those set forth in the Plaintiff's previous memorandum submitted in opposition to the Federal Defendants' Motion to Dismiss, the Plaintiff respectfully submits that the Motion should be denied.

Respectfully submitted,


    /s/  Robert M. Adler
Robert M. Adler, Bar #62950
Gerald H. Yamada, Bar #194092
NOSSAMAN LLP/O'CONNOR & HANNAN
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
(202) 887-1400
Radler@nossaman.com
Gyamada@nossaman.com

*Attorneys for the St. Croix Chippewa
Indians of Wisconsin*


Of Counsel:
Andrew Adams, III
St. Croix Chippewa Indians of Wisconsin
24663 Angeline Avenue
Webster, WI 54893


Dated: July 11, 2008