UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN,<br><br>              Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE, *et al.*,<br><br>              Defendants. | Civ. No. 07-2210 (RJL) |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, by and through counsel, hereby seeks leave of this Court to file a memorandum in reply to Defendants' Response to Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss. The proposed reply memorandum is appended hereto as Exhibit A.[1]

The Court's attention is respectfully directed to the Memorandum of Points and Authorities submitted in support of this motion.

WHEREFORE, for the premises stated, the Plaintiff respectfully requests that its motion be granted.

Dated: August 6, 2008                    Respectfully submitted,

                                                      /s/ Robert M. Adler
                                                    Robert M. Adler, Bar #62950
                                                    Gerald H. Yamada, Bar #194092
                                                    NOSSAMAN LLP/O'CONNOR & HANNAN
                                                    1666 K Street, N.W., Suite 500

---

[1] As required by LCVR 7(m), the undersigned spoke by telephone on August 5, 2008, with Kristofor Swanson, one of the Department of Justice attorneys to whom this case is assigned. The undersigned inquired as to whether there would be any opposition to the Plaintiff's filing of a reply memorandum. Mr. Swanson stated that the Government did not take a position on the matter.

156106_1.DOC

Washington, D.C. 20006-2803
Telephone: (202) 887-1400
Facsimile: (202) 466-3215
Email: Radler@nossaman.com
Email: Gyamada@nossaman.com

*Attorneys for the St. Croix Chippewa Indians of Wisconsin*


Of Counsel:

Andrew Adams, III
St. Croix Chippewa Indians of Wisconsin
24663 Angeline Avenue
Webster, WI 54893

UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ST. CROIX CHIPPEWA INDIANS
OF WISCONSIN,

          Plaintiff,

v.                                                                                    Civ. No. 07-2210 (RJL)

DIRK KEMPTHORNE, *et al.*,

          Defendants.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE ITS REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, by and through counsel, hereby submits this memorandum in support of its motion for leave to file its reply to Defendants' response to Plaintiff's supplemental memorandum to Defendants' motion to dismiss ("Defendants' Response").

In Plaintiff's supplemental memorandum in opposition to Federal Defendants' motion to dismiss, Plaintiff set forth case law from this Circuit evidencing that an agency's guidance memorandum has always been treated as a final agency action. In the Defendants' Response, they have asserted a new argument in these proceedings. That is, they now contend that the Guidance Memorandum at issue did not need to comply with the APA's notice and comment rules in that it ". . . only reiterates current regulations with no on-the-ground legal consequences." Defendants' Response at 4.

This assertion is simply incorrect. The Guidance Memorandum significantly expanded the regulation (25 C.F.R. Part 151.11(b)).[1] The Plaintiff's proposed reply memorandum provides a number of specific examples as to how the regulation was effectively changed and therefore

---

[1] This was so much the case that it led to an almost immediate oversight hearing by the House Resources Committee held on February 28, 2008.

156108_1.DOC

unlawfully modified by the Guidance Memorandum. Moreover, the Guidance Memorandum's focus on "commutable distance" as a decisional factor and its emphasis on job creation rather than creation of an income stream from the off-reservation facility to the established reservation represent a total abrogation of conclusions reached by the Department of Interior in its February 2004 Indian Gaming Paper ("Paper") (Dkt. No. 32). The Paper correctly set forth the conclusions reached by senior Interior Department officials that Congress, in its enactment of the IRA and IGRA, well understood that in order for Indian tribes located in remote areas to achieve self-determination and economic development, some substantial distances of proposed economic enterprises from the established reservations would be necessary. Although the Paper was filed in this action in January 2008, the Department of Interior has at no point taken the position that any of its conclusions were incorrect or otherwise ill founded.

The Plaintiff's proposed reply memorandum also points out the at no time have the federal defendants asserted any arguments or provided supporting case law as to why Count I (arbitrary, capricious, and abuse of discretion or otherwise not in accordance with law in violation of 5 U.S.C. § 706(2)(A)) and Count VII (failure of the Department of Interior to follow its own procedures) of the Amended Complaint should be dismissed.

The Plaintiff's challenge to the validity of the Guidance Memorandum under the APA is of tremendous importance not only to it but to other Indian tribes as well. Accordingly, Plaintiff submits that the Court should have Plaintiff's reply memorandum before it prior to deciding the Federal Defendants' pending motion to dismiss.

## Conclusion

For the foregoing reasons, Plaintiff submits that leave should be granted for it to file its proposed reply memorandum.

2

Dated: August 6, 2008                    Respectfully submitted,

/s/ Robert M. Adler
Robert M. Adler, Bar #62950
Gerald H. Yamada, Bar #194092
NOSSAMAN LLP/O'CONNOR & HANNAN
1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
Telephone: (202) 887-1400
Facsimile: (202) 466-3215
Email: Radler@nossaman.com
Email: Gyamada@nossaman.com

*Attorneys for the St. Croix Chippewa Indians of Wisconsin*

Of Counsel:

Andrew Adams, III
St. Croix Chippewa Indians of Wisconsin
24663 Angeline Avenue
Webster, WI 54893

3

# EXHIBIT A

Case 1:07-cv-02210-RJL     Document 47-2     Filed 08/06/2008     Page 1 of 9

UNITED STATES THE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE ST. CROIX CHIPPEWA INDIANS
OF WISCONSIN,

        Plaintiff,

v.

DIRK KEMPTHORNE, *et al.*,

        Federal Defendants.

Civ. No. 07-2210 (RJL)

**PLAINTIFF'S REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff, by and through counsel, hereby submits this memorandum in reply to the above-referenced memorandum filed by the Defendants ("Defendants' Memorandum"). This memorandum raises new issues in this litigation.

The Defendants' Memorandum, in arguing that the challenged Guidance Memorandum does not constitute "final agency action," places substantial reliance on Judge Bates' decision in *Sierra Club v. Mainella*, Civ. No. 04-2012, 2005 WL 3276264 (D.D.C. Sept. 1, 2005). Defendants' Memorandum at 3. Their Memorandum relies on this decision for the proposition that "... the guidance [issued by the National Park Service] only reiterated the regulation itself." *Id.* Defendants' Memorandum at 3. Attempting to fit within *Sierra Club*, the Memorandum asserts at 4 that the Guidance Memorandum "... only reiterates current regulations with no on-the-ground legal consequences."[1] *Sierra Club* (which follows well established case law in this

---

[1] Defendants' Memorandum elsewhere claims that the Guidance Memorandum " . . . only clarifies the applicability of current regulations to an influx of applications ..." (page 3) and "... does nothing to change existing regulations." (page 4). Both of these claims are at odds with the plain language of the Guidance Memorandum.

156105_1.DOC

circuit) stated that the court's inquiry in determining whether a guidance memorandum constitutes "final agency action" turns on whether it "... creates *new* legal obligations or consequences or sets forth a *new* interpretation of law (emphasis in original). *Sierra Club* at *9.

This is a new argument asserted by the Defendants in this litigation. Previously, the Defendants' contention rested on the proposition that since there had been no decision on the Beloit application, there was no final agency action or damage to Plaintiff. *See* Defendants' Memorandum in Support of Motion to Dismiss at 2, N.1 [Dkt. No. 19].

There can be no doubt but that the Guidance Memorandum at issue herein established new legal consequences and sets forth a new interpretation of law. As a starting point, the pertinent regulation, 25 C.F.R. § 151.11(b) provides, in pertinent part, "... as the distance between the tribe's reservation and the land to be acquired increases, the Secretary shall give greater scrutiny to the tribe's justification of anticipated benefits from the acquisition."

Significantly, the Department of Interior's Indian Gaming Paper (February 20, 2004) ("Paper") [Dkt. No. 32] set forth conclusions reached by senior Interior Department officials (including those in the Solicitor's Office) and the Chairman of the National Indian Gaming Commission in a comprehensive analysis as to whether distance from the established reservation to a proposed off-reservation casino could be used as a factor to deny an application either under Section 20 (IGRA) or the Indian Reorganization Act of 1934 ("IRA") 25 C.F.R. Part 151.11(b). It concluded <u>it could not be</u> - - after an extensive review of Congressional intent and the Supreme Court's discussion in several cases of the purpose behind the IRA. The Paper explained at 8:

> By its clear language, the IRA [pursuant to which the part 151 regulations were promulgated] envisions off-reservation acquisitions that are free from state and local taxation and nowhere in the law does Congress purport to limit the exercise of that authority to lands within a fixed distance from an existing reservation."

2

The Paper also stated at 6:

> ... it is certain that if Congress had intended to limit Indian gaming on lands within established reservation borderlines or even within a specific distance from a reservation, it would have done so expressly within IGRA. It clearly did not.[2]

The Federal Defendants, in their defense of this action, have at no point taken issue with any of these conclusions reached in the Paper which was filed with this Court as early as January 29, 2008. There can be no doubt but that the Guidance Memorandum's use of a "commutable distance" rationale for denying an application is directly contrary to the conclusions reached in the Indian Gaming Paper. Accordingly, it was a "new interpretation of law" and hence was a "final agency action." Sierra Club, supra, at *31. It also demonstrates that it was arbitrary and capricious and contrary to law, as alleged in the Amended Complaint, Count I.[3] [4]

.

---

[2] The Paper at 8, referring to the legislative history of the IRA and the Supreme Court's decisions in *Mescalero Apache and Morton v. Mancari,* stated that the IRA's purpose was to rehabilitate the Indian's economic life and to establish the machinery so that tribes could have a greater degree of self-government, both politically and economically.

[3] Following the *Chevron* first step analysis, the Indian Gaming Paper concluded that Congress had made it clear that distance could not be used as a determining factor under either the IRA or IGRA. However, even if the IRA and IGRA could be construed as silent or ambiguous on the issue, *Chevron's* second step is employed to determine whether the agency's decisions on the issue is a reasonable construction of the statute. *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.,* 467 U.S. 837 (1984). The Plaintiff submits that the Guidance Memorandum is in direct conflict with the conclusions reached in the Paper. This can only lead to the conclusion that the Guidance Memorandum is not a reasonable construction of the IRA and is therefore arbitrary, capricious and manifestly contrary to the IRA. *Chevron, supra,* at 843-44. See Amended Complaint, Count 1.

[4] The Amended Complaint in its Count VII asserted that by the issuance of the Guidance Memorandum, the Department of Interior failed to follow its own announced procedures of agreeing to conduct prior consultations with Indian tribes in order to "promulgate a new rule" relating to the proposed standards of review and reaching a determination of whether to accept land into trust. The Guidance Memorandum is accordingly invalid and unenforceable pursuant to 5 U.S.C. § 706(2)(a) and (d). Amended Complaint, ¶ 73. The Federal Defendants' Supplemental Memorandum did not address this claim or the arbitrary, capricious, and abuse of discretion and not in accordance with law claim under Count I of the Amended Complaint.

Quite recently, the D.C. Circuit decided an IRA case, interpreting the statute in a manner which strongly suggests that the new argument raised by the Federal Defendants has no legal basis. In *Michigan Gambling Opposition v. Kempthorne,* 525 F.3d 23 (D.C. Cir. 2008), the Court held that under the IRA ... "the Secretary is to exercise his powers in order to further economic development and self-governance among the Tribes." *Michigan Gambling, supra* at 31. *See also Michigan Gambling* at 32 ("the [Supreme] Court [in *County of Yakima*] also emphasized that through the IRA Congress '[r]eturn[ed] to the principles of tribal self-determination and self-governance which has characterized' earlier federal policy."

The Appellant's contention in *Michigan Gambling* was that the IRA was an unconstitutional delegation of authority to the Secretary because there has no intelligible standards to guide or limit the Secretary's discretion. *Michigan Gambling, supra* at 30. The Court rejected this argument, holding at 31:

> Our review of the purpose and structure of IRA confirms that, as our sister courts have held, and contrary to the view of our dissenting colleague, the statute provides an intelligible principle rather than a tautology when it authorizes the Secretary to acquire land 'for the purpose of providing land for Indians': the Secretary is to exercise his powers in order to further economic development and self-governance among the Tribes.

The dissent, however, viewed the statute as unconstitutional in that it lacked standards to guide the Secretary's exercise of his discretion. *Michigan Gambling supra* at 35. The dissent then proceeded to make direct reference to the January 3 Guidance Memorandum at issue herein. *Michigan Gambling supra* at 37. The dissent stated that if the majority was right, then it would not be proper for the BIA to proceed under the Guidance Memorandum to deny applications for far-away locations in which the benefit to Indian tribes did not outweigh the "concerns of state and local governments." *Michigan Gambling, supra.* at 37 n.1. The Plaintiff submits that the dissent correctly analyzed the majority's decision in *Michigan Gambling* as the rejection of the

4

limitations on the Secretary's discretion to take land into trust by the various mechanisms (such as "commutable distance") set forth in the Guidance Memorandum.

The Guidance Memorandum, by its own terms, cannot be viewed as the Federal Defendants urge, a "reiteration of 25 C.F.R. Part § 151.11(b). Under the guise of giving "greater scrutiny" to the benefits flowing to tribes from an off-reservation casino, the Guidance Memorandum actually creates a new set of rules, which are unfounded and flatly inconsistent with the IRA's overall purpose of taking land into trust to foster tribes' economic betterment and self-determination. We provide several examples:

- there was no "commutable distance" standard in the regulation;
- the Guidance Memorandum at 3 postulates the "general principle", which cannot be found in the regulation, that "the farther the [gaming facility] is from the reservation, the greater the potential for significant negative economic consequences on reservation life;"
- the Guidance Memorandum's standard as to whether an off-reservation casino has the "potential for negative economic consequences on reservation life" is based on job opportunities which are either too far away (at the proposed casino) and, therefore, will not be available for reservation residents who do not choose to leave; or, will attract reservation residents to move to the new casino site, thereby negatively impacting reservation life. Guidance Memorandum at 4. However, no such language, or even an intimation of it, can be found in the regulation. The Guidance Memorandum artificially ignores, or at least minimizes, the economic benefit to Indian tribes, fully consistent with the purpose of the IRA, of generating

- a revenue stream available to the tribes for services on the reservation such as tribal housing, medical and educational services;
- the Guidance Memorandum ignores the well known fact that many members of various tribes already live great distances from the reservations. Some of this is due to the (now abandoned) federal government's relocation program. Off-reservation casinos could well offer employment opportunities for those members.
- The Guidance Memorandum ignores the obvious fact that funds flowing to tribal governments from off-reservation casinos could provide funding for increased tribal housing so that its members could move back to the reservations. (It being a well known fact that many tribes, including the Plaintiff and the Bad River Band, have lengthy waiting lists of members seeking tribal housing). Accordingly, even if, for the sake of discussion, encouraging tribal members to remain on their reservations was a legitimate goal of the IRA, the Guidance Memorandum ignores the effect which increased tribal housing would have on tribal members returning to their reservations.
- A clearly stated Congressional purpose of its enactment of the IRA was to promote tribal self-determination. However, the Guidance Memorandum second-guesses the judgment of tribal governments as to the benefits and detriments of off-reservation gaming facilities to the tribes and their members. For this reason, the Guidance Memorandum is in direct conflict with the IRA. Certainly, there is no suggestion in the regulation that the Department of Interior can substitute its judgment for that of tribal governments in determining the benefits or detriments to their members of off-reservation gaming facilities.

Clearly the Guidance Memorandum is far from a simple "reiteration" of the regulation.

Plaintiff suggests that if the Guidance Memorandum was indeed a "reiteration", then it would have suggested to the BIA's Regional Directors and the Indian Gaming Office that in giving "greater scrutiny" to the increased benefits to the tribe, they <u>might</u> <u>consider</u> (by requesting/reviewing documents from the tribal applicant and conducting consultations with its representatives) a number of identified subject areas -- in addition to other areas the BIA representatives might deem relevant to the inquiry.

Finally, the Federal Defendants assert a distinction which the plaintiff believes cannot be drawn, between "should" and "must". Defendants' Memorandum at 4. "Should" is clearly a directive. In any event, the Defendants miss the point. In order to be considered binding, the Guidance Memorandum must appear on its face to be binding or is applied by the agency in a way that indicates it is binding. *General Electric Co. v. EPA*, 290 F. 3d 377, 382 (D.C. Cir. 2002). The Guidance Memorandum herein was both. Its language gave it a binding effect on its fact and its use the day following its issuance to deny eleven tribal applications reflects that it was applied by the Department of Interior in a binding fashion.

Conclusion

For the foregoing reasons and those set forth in Plaintiff's earlier memoranda in opposition to the Federal Defendants' motion to dismiss, the Plaintiff submits that the motion should be denied.

Dated: August 6, 2008                    Respectfully submitted,

/s/ Robert M. Adler
Robert M. Adler, Bar #62950
Gerald H. Yamada, Bar #194092
NOSSAMAN LLP/O'CONNOR & HANNAN

1666 K Street, N.W., Suite 500
Washington, D.C. 20006-2803
Telephone: (202) 887-1400
Facsimile: (202) 466-3215
Email: Radler@nossaman.com
Email: Gyamada@nossaman.com

*Attorneys for the St. Croix Chippewa Indians of Wisconsin*

Of Counsel:

Andrew Adams, III
St. Croix Chippewa Indians of Wisconsin
24663 Angeline Avenue
Webster, WI 54893

8

UNITED STATES THE DISTRICT COURT<br>FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE ST. CROIX CHIPPEWA INDIANS OF WISCONSIN,<br><br>        Plaintiff,<br><br>v.<br><br>DIRK KEMPTHORNE, *et al.*,<br><br>        Defendants. | Civ. No. 07-2210 (RJL) |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for Leave to File a Reply Memorandum to Defendants' Response to Plaintiff's Supplemental Memorandum in Opposition to Defendants' Motion to Dismiss, and the representation by plaintiff's counsel that counsel for the Federal Defendants takes no position on the matter, and the entire record herein, it is this _____ day of _____, 2008,

HEREBY, ORDERED that Plaintiff's motion be, and hereby is, GRANTED. The Plaintiff may proceed to file its reply memorandum.

_____
RICHARD J. LEON
United States District Judge

156107_1.DOC